IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ROBERT BOSCH, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:22-cv-370 (RDA/JFA) |
| v. | ) | |
| | ) | |
| WESTPORT FUEL SYSTEMS CANADA, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the court on Defendant Westport Fuel Systems Canada, Inc.'s ("Westport") Motion to Dismiss for Failure to State a Claim, Motion to Dismiss for Lack of Jurisdiction, or Alternatively to Transfer or Stay.  Dkt. 17.  This Court dispensed with oral argument as it would not aid in the decisional process.  *See* Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J).  The Motions are now fully briefed and ripe for disposition.  Considering the Motions, together with Westport's Memorandum in Support and the attached Exhibits (Dkt. 18), Plaintiff Robert Bosch LLC's ("Bosch") Opposition and the attached Exhibits (Dkt. 24), Westport's Reply in Support of its Motions and the attached Exhibits (Dkt. 27), and Robert Bosch LLC's related Notices (Dkt. Nos. 34; 37), this Court DENIES Westport's Motion to Dismiss for Lack of Jurisdiction, DENIES Westport's Motion to Dismiss for Failure to State a Claim, and GRANTS Westport's Motion to Transfer for the reasons that follow.

## I. BACKGROUND

### A. Factual Background

Westport owns two patents: U.S. Patent No. 6,298,829 (the "'829 patent") and U.S. Patent No. 6,575,138 (the "'138 patent").  Dkt. 1 ("Complaint") ¶ 3.  The patents cover "high pressure fuel injection valves" that are used in internal combustion engines, most commonly seen in automobiles.  *Id.* ¶ 10.  Although the patents have expired, Westport still has the "exclusive right to enforce, sue, and recover damages for past infringement."  *Id.* ¶¶ 3-4.

Westport recently asserted its patent rights, filing suit on December 15, 2021, against five Bosch Customers: Ford, Mercedes-Benz, Nissan, General Motors, and Fiat Chrysler.  *Id.* ¶ 9.  Westport alleges that those companies have infringed its patents by "making and selling products that incorporate" a Bosch product.  *Id.* ¶ 8.  In each lawsuit against those car manufacturers, Westport identified a Bosch fuel injection valve as the "Accused Instrumentalities."  *Id.* ¶ 11.  Westport further identified the Bosch CRI 3.0 Piezo Injector (Bosch p/n 0445117010) as infringing its patents.  *Id.* ¶ 15.  Westport has only identified Bosch fuel injection valves as infringing its patents.  *Id.* ¶ 16.

Notably, Westport did not sue Bosch, who sold its fuel injection valves to the car manufacturers.  Bosch claims that its products do not infringe Westport's patents.  *See id.* ¶ 26 (Bosch claiming that its products do not infringe the '829 patent); ¶ 34 (Bosch claiming that its products do not infringe the '138 patent).  Bosch also maintains that it is the "real party-in-interest" and that an actual controversy exists between itself and Westport.  *Id.* ¶¶ 16, 18.  Since Westport sued Bosch's customers instead of Bosch itself, Bosch filed the instant suit seeking a declaratory judgment that it has not infringed Westport's patents.

### B.  Procedural Background

Bosch filed suit on April 4, 2022, almost four months after Westport sued its customers. Dkt. 1.  On May 27, 2022, Westport moved to dismiss the Complaint or, in the alternative, transfer or stay the case.  Dkt. Nos. 17; 18.  Bosch opposed the motion on June 10, 2022.  Dkt. 27.  Westport filed a reply brief in support of its motion on June 16, 2022.  Dkt. 27.  Bosch moved for leave to file a sur-reply on July 21, 2022.  Dkt. 30.  Westport opposed that motion on July 27, 2022, Dkt. 32, and Bosch replied in support of its motion for leave to file its sur-reply on August 2, 2022, Dkt. 33.  Bosch filed Notices of Supplemental Authority on September 14, 2022 and January 24, 2023. *See* Dkt. Nos. 34; 37.

### II. STANDARDS OF REVIEW

### A. Rule 12(b)(1) Motions

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction over a lawsuit. Fed. R. Civ. P. 12(b)(1).  In essence, such a motion contests the "court's authority to hear the matter brought by a complaint."  *Atlantic Cas. Ins. Co. v. United Tours, Inc.*, Case No. 3:12-cv-680, 2013 WL 2389887, at *1 (E.D. Va. May 30, 2013).

There are two types of 12(b)(1) motions: facial challenges and factual challenges.  In a facial challenge, the defendant argues "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based."  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). On the other hand, a factual challenge contends that "the jurisdictional allegations are not true." *Id.*  In evaluating a facial challenge, a court takes the alleged jurisdictional facts as true and evaluates whether those facts are sufficient to establish subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  In evaluating a factual challenge, the court resolves

disputed jurisdictional facts and does not apply the "presumption of truthfulness normally accorded [to] a complaint's allegations." *Id.*

A plaintiff bears the burden to demonstrate that subject matter jurisdiction exists. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). A court should only grant a 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg, & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### B. Rule 12(b)(6) Motions

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal of the motion is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of her claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)). Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted.

4

*Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing Goldfarb, 791 F.3d at 508).

## C. Motions to Transfer

"Section 1404(a)  . . . applies to actions in which venue is proper, but it nonetheless permits a court, in its discretion, to transfer a case 'for the convenience of parties and witnesses,' among other factors, 'to any other district or division where it might have been brought.'" *Newbauer v. Jackson Hewitt Tax Serv. Inc.*, Nos. 2:18-cv-679, 2:29-cv-37, 2:29-cv-44, 2:29-cv-49, 2019 WL 1398172, *2 (E.D. Va. Mar. 28, 2019). The central question is not whether venue is *proper* in this jurisdiction, but rather whether the Court should transfer the matter because such a transfer would be convenient to the parties and witnesses, and because it would be "in the interest of justice." 28 U.S.C. §§ 1404(a) and (b).

Under Section 1404(a), "'in considering whether to transfer venue, a district court must make two inquiries: (1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum.'" *Bascom Research, LLC v. Facebook, Inc.*, No. 1:12-cv-1111, 2012 WL 12918407, *1 (E.D. Va. Dec. 11, 2012) (quoting *Adilent Tech., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 324-25 (E.D. Va. 2004)). "The party moving for a transfer of venue bears the burden of showing that the transfer is warranted." *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 623

(E.D. Va. 2002) (quoting *Beam Laser Sys., Inc. v. Cox Commc'ns. Inc.*, 117 F. Supp. 2d 515, 518 (E.D. Va. 2000)).

## III. ANALYSIS

### A. Defendant's 12(b)(1) Motion

Defendant raises two challenges to this Court's subject matter jurisdiction.  First, it argues that Plaintiff does not have standing to bring an action under 35 U.S.C. § 271.  According to Defendant, Robert Bosch LLC did not "ma[ke], use[], offer[] for sale, [sell], or import[]" the fuel injectors at issue, and thus the Court does not have subject matter jurisdiction pursuant to 35 U.S.C. § 271.  Dkt. 18 at 7.  Second, Defendant argues that Plaintiff does not have standing to bring this declaratory action because it has not taken any "affirmative acts" directed at Plaintiff to make declaratory relief appropriate.  *Id.*

"[Q]uestions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case."  *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999).  As such, Defendant's 12(b)(1) motion must be resolved before the Court addresses Westport's other motions.  *Senior Ride Connection v. ITNAmerica*, 225 F. Supp. 3d 528, 531 (D.S.C. 2016).

### 1.  Subject Matter Jurisdiction Under 35 U.S.C. § 271

Defendant argues that the Court does not have subject matter jurisdiction under 35 U.S.C. § 271.  While Plaintiff argues that Defendant is only bringing a factual challenge to jurisdiction, Dkt. 24 at 6, it is somewhat unclear whether Defendant brings a facial challenge as well.  The Court will address both whether Plaintiff has adequately pleaded subject matter jurisdiction and whether the jurisdictional facts show that the Court has jurisdiction.

The core of Defendant's 12(b)(1) argument is that the specific entity that brought suit—Robert Bosch LLC (which the Court refers to either as "Bosch" or "Robert Bosch LLC")—did not make, use, offer for sale, sell, or import the Fuel Injectors at issue.  According to Defendant, this means that Plaintiff is not subject to an infringement charge under 35 U.S.C. § 271, which means that the Court does not have subject matter jurisdiction of this declaratory action.

In this Court's view, Plaintiff's Complaint adequately alleges subject matter jurisdiction under 35 U.S.C. § 271.  Plaintiff alleges that it "use[d], [sold], offer[ed] to sell, and/or import[ed] the Accused Bosch Products into the United States."  Dkt. 1 ¶¶ 27, 35.  Under applicable precedent, this Court accepts those allegations as true in evaluating whether the Complaint, on its face, alleges the requisite jurisdictional facts.  *Kerns*, 585 F.3d at 192.  On their own, those two allegations are sufficient to bring Plaintiff's actions within the scope of  35 U.S.C. § 271, which forbids entities from, among other things, "usi[ng], offer[ing for sale], [selling]," or "import[ing]" patented products.  35 U.S.C. § 271(a).  Plaintiff's Complaint adequately pleads subject matter jurisdiction.

Defendant's central argument, however, is a factual one: Robert Bosch LLC—the specific entity that brought suit—has not "committed acts subject to an infringement charge[,]" and thus the Court does not have subject matter jurisdiction.  Dkt. 18 at 9.  Defendant argues that "many of the links in the global supply chain for the accused fuel injectors exist outside of the territorial boundaries of the United States."  *Id.* at 7.  It points out that three of the engines (manufactured by Mercedes, Ford, and FCA) that use the accused products are not manufactured in the United States. *Id.* at 8-9.  Defendant also argues that the facts show that Nissan purchased its fuel injectors from an intermediary supplier of Robert Bosch LLC, *id.* at 10, and that the Fuel Injectors used in GM vehicles are "designed and manufactured abroad" and were not purchased directly from Robert Bosch LLC, *id.* at 11-12.  According to Defendant, because there is no "direct connection" between

Robert Bosch LLC and the infringing vehicles, Plaintiff has not established subject matter jurisdiction.

In its opposition, Plaintiff attached various exhibits pertinent to Plaintiff's factual jurisdictional challenge.  Most relevantly, Plaintiff attached the declaration of Scott Goodenough, the Director of Sales at Robert Bosch LLC.  Dkt. 27-1 ("Goodenough Decl.").  In that Declaration, Mr. Goodenough stated that Robert Bosch LLC used, imported, offered for sale, and sold the Bosch CRI 3.0 Piezo Injector in the United States.  Goodenough Decl. ¶¶ 3-6.

In ruling on a 12(b)(1) motion, a court can consider both parties' evidence as it pertains to subject matter jurisdiction.  The court "weighs the evidence to determine its jurisdiction." *Adams*, 697 F.2d at 1219.  The universe of available evidence goes "beyond the allegations of the complaint" and the "presumption of truthfulness normally accorded a complaint's allegations does not apply." *Kerns*, 585 F.3d at 192.  Rather, in deciding the 12(b)(1) motion, a court "decide[s] disputed issues of fact with respect to subject matter jurisdiction." *Id.*

However, this Court need not resolve the disputed jurisdictional facts in this case.  For its actions to fall within the scope of 35 U.S.C. § 271(a), Plaintiff must have "ma[de], use[d], offer[ed] for sale, [sold], *or* import[ed]" the Fuel Injectors.  35 U.S.C. § 271(a) (emphasis added).  Defendant's factual challenge focuses on the manufacturing location of the Fuel Injectors.  *See* Dkt. 18 at 13 ("Plaintiff has not established that it is the manufacturer of the accused products.").  Westport argues that because the facts show that Robert Bosch LLC did not manufacture the Fuel Injectors in the United States, its "business activities" related to the Fuel Injectors took place outside of the United States.  *Id.* at 13-14.  In response, Plaintiff does not dispute the fact that the Fuel Injectors are manufactured outside of the United States.  Instead, Plaintiff submitted a declaration stating that it imported, offered for sale, and sold the Fuel Injectors in the United States.

8

Goodenough Decl. ¶¶ 3-6. Defendant does not dispute those assertions—indeed, it did not even address those facts in its reply brief.  Because it is undisputed that Plaintiff imported, offered for sale, and sold the Fuel Injectors, the relevant jurisdictional facts establish that the Court has jurisdiction pursuant to 35 U.S.C. § 271.

## 2. Standing

Defendant also challenges Plaintiff's standing to bring this declaratory judgment action. In short, Defendant claims that there is no Article III case or controversy because it has not engaged in any "affirmative acts" towards Robert Bosch LLC that have created a "reasonable apprehension of suit." Dkt. 18 at 14-17; Dkt. 27 at 2-3.  Defendant contends that the lack of affirmative acts by Westport towards Robert Bosch LLC, when combined with the absence of evidence of any indemnity agreements between Robert Bosch LLC and its customers that are subject to suit, means that Plaintiff does not have standing to bring this declaratory judgment action.

The propriety of a declaratory judgment action is an issue of standing.   Under the Declaratory Judgment Act, "district courts may declare the rights and other legal relations of any interested party seeking such declaration." *Carfax, Inc. v. Red Mtn. Techs.*, 119 F. Supp. 3d 404, 417 (E.D. Va. 2015) (cleaned up).  Two conditions must be satisfied for a declaratory judgment to be appropriate.   "First[,] the dispute must be a 'case or controversy'" under Article III of the Constitution—also known as "the 'constitutional' inquiry." *White v. Nat. Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 167 (4th Cir. 1990).  "Second, the trial court, in its discretion, must be satisfied that declaratory relief is appropriate," also known as "the 'prudential' inquiry." *Id.*

### a. Whether there is an Article III "Case or Controversy"

The Constitution imposes specific requirements for a declaratory action to satisfy Article III.  "For there to be a case or controversy under Article III, the dispute must be definite and

concrete, touching the legal relations of parties having adverse legal interests." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335-36 (Fed. Cir. 2008).[1]  The dispute must also be "real and substantial," and "admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 1336.  At bottom, "the question [in determining whether a declaratory judgment is appropriate] is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Mitek Sys., Inc. v. United Servs. Automobile Ass'n*, 34 F.4th 1334, 1340 (Fed. Cir. 2022) (citing *MedImmune, Inc v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

Courts are to employ a flexible standard in deciding whether a declaratory judgment is appropriate.  In *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), the Supreme Court affirmed that courts must examine whether "the facts alleged, under *all the circumstances*, show that there is a substantial controversy."  549 U.S. at 117.  In doing so, the Supreme Court eschewed a "bright-line rule for determining whether an action satisfies the case or controversy requirement." *Prasco*, 537 F.3d at 1336.  As a result, even if true, Defendant's contention that it never created a "reasonable apprehension of suit" is not dispositive of the question as to whether Plaintiff has standing.  *See Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, 708 F. Supp. 2d 527, 536 n.20 (D. Md. 2010) ("The Supreme Court's decision in *Medimmune* rejected the 'reasonable apprehension of suit' as the sole test for jurisdiction in favor of an 'all the circumstances test.'").

---

[1] Because the Article III standing issue in this case is "intimately involved in the substance of enforcement of the patent right," the Federal Circuit's law applies to this issue of standing, even though it is more properly classified as "procedural."  *Amana Refrigeration, Inc v. Quadlux, Inc.*, 172 F.3d 852, 856 (Fed. Cir. 1999).

Rather, under *Medimmune,* the Court must examine all the circumstances to determine whether Plaintiff has standing here.  *See, e.g.*, *Synopsys, Inc. v. Risk Based Sec., Inc.*, No. 3:21-cv-252, 2022 WL 107184, at *3 (E.D. Va. Jan. 11, 2022) (analyzing, among other things, the parties' relationship and communications in determining that plaintiff had standing to bring a declaratory action).

Despite *Medimmune* requiring an "all the circumstances" test, Defendant in effect urges the Court to adopt a bright-line rule here.  Defendant claims that the fact that it did not engage in any "affirmative acts" directed at Robert Bosch LLC, when combined with no evidence that Robert Bosch LLC is obligated to indemnify its customers, means that Plaintiff does not have standing. Dkt. 27 at 2-3.  According to Defendant, it does not matter that it sued Plaintiff's customers: there is a threshold requirement that the patentee engage in affirmative acts "related to the enforcement of its patents" directed towards the party seeking declaratory relief.  *Id.* at 3.

Defendant has good reason to ask the Court to adopt such a bright-line rule, as some courts appear to have imposed the requirement that Defendant suggests.  Defendant cites *Proofpoint, Inc. v. InNova Patent Licensing, LLC*, No. 5:11-cv-2288, 2011 WL 4915847 (N.D. Cal. Oct. 17, 2011), where the court held that a declaratory plaintiff's pleadings "*must* show that the patentee engaged in affirmative acts directed specifically at the party seeking declaratory judgment."  2011 WL 4915847, at *3.  That holding was rooted in the Federal Circuit's decision in *Ass'n for Molecular Pathology v. USPTO*, 653 F.3d 1329 (Fed. Cir. 2011) *vacated on other grounds sub nom Ass'n for Molecular Pathology v. Myriad Genetics*, 569 U.S. 576 (2013), which held that the only declaratory plaintiffs who had standing were those who "allege[d] affirmative patent enforcement actions directed at them by [the defendant]."  *Id.* at 1344; *see also Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010) ("[T]he fact that [the declaratory

defendant] had filed infringement suits against other parties for other products does not, *in the absence of any act directed toward* [the declaratory plaintiff] meet the minimum standard discussed in *Medimmune*." (emphasis added)).   Other courts appear to have paralleled the reasoning in *Proofpoint* and imposed a *de facto* requirement that the declaratory defendant have taken some action towards the declaratory plaintiff for standing to be appropriate.  *See, e.g.*, *JIA Jewelry Importers of America, Inc. v. Pandora Jewelry, LLC*, CCB-11-982, 2011 WL 4566118, at *3-4 (D. Md. Sep. 29, 2011) (dismissing declaratory action for lack of standing and holding that the lack of an "affirmative act" directed at plaintiff was dispositive of the standing question).

However, the Federal Circuit has recognized that there are circumstances where a lawsuit against a customer—and nothing else—can give a declaratory plaintiff standing.  Specifically, "where a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers."  *Arris Grp., Inc. v. British Telecommc'ns PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011).

Some district courts have concluded that the nature of a patentee's allegations against a customer can create declaratory standing for the supplier, even if the supplier does not have an obligation to indemnify or have liability for induced or contributory infringement.  For example, in *In re Mobile Telecommc'ns, Techs., LLC*, 247 F. Supp. 3d 456 (D. Del. 2017), the court rejected the declaratory defendant's arguments that the declaratory plaintiffs did not have standing because the defendant "ha[d] not taken any action specifically targeting the [plaintiffs]" and because neither of the two *Arris* exceptions were met.  *Id.* at 461-62.  Instead, the court held that "[a] declaratory

12

judgment supplier plaintiff may have standing to sue a patentee for non-infringement based on the nature of the patentee's accusations against the supplier's customer." *Id.* Numerous other courts have come to the same conclusion. *See, e.g.*, *SafeNet, Inc. v. Uniloc USA, Inc.*, No. 6:15-cv-97, 2015 WL 10793747, at *10 (E.D. Tex. Aug. 19, 2015) ("There is a clearly established controversy between the Uniloc and SafeNet as to the SafeNet's liability for indirect infringement based on the alleged acts of direct infringement by the SafeNet Customers."); *Microsoft Corp. v. GeoTag, Inc.*, No. 11-175, 2014 WL 4312167, (D. Del. Aug. 29, 2014) (holding that declaratory plaintiffs had standing, in part because declaratory defendant "could just as easily have asserted a claim of direct infringement against [declaratory plaintiffs]" based on the same underlying circumstances in the customer suits).

In fact, depending on the nature of the allegations, a patentee's suit against a supplier's customer may imply direct infringement by the supplier. Specifically, if a patentee accuses an entity of infringement *only* because it uses a component purchased from a manufacturer supplier, that gives the supplier declaratory standing because the patentee has impliedly asserted that the supplier infringed its patent. *See Intel Corp. v. Future Link Sys., LLC*, No. 14-377, 2015 WL 549294 (D. Del. Feb. 12, 2015) ("There could well be situations, particularly regarding a patent claim covering a product, system, or apparatus, where a patentee clearly accuses a customer of direct infringement of a claim solely due to the use or sale of a component purchased from a manufacturer supplier. Depending on the surrounding circumstances, that accusation might indeed amount to an implied assertion of direct infringement by the supplier, as it does here."). Put simply, if a declaratory defendant implies in another suit that the declaratory plaintiff could be liable for infringement, the declaratory plaintiff has standing. *UCP Int'l Co. v. Balsam Brands Inc.*, 787 F. App'x 691, 699 (Fed. Cir. 2019). That is consistent with the Supreme Court's

"insistence" in *Medimmune* "on applying a flexible totality of the circumstances test" that rejects "technical bright line rules" in determining standing in the context of a declaratory action.  *Danisco U.S. Inc. v. Novosymes A/S*, 744 F.3d 1325, 1331 (Fed. Cir. 2014).

It follows from *Medimmune* and its line of cases that this Court should refrain from applying bright-line rules in deciding whether Plaintiff has standing to bring this declaratory action.  Accordingly, contrary to Defendant's assertions otherwise, the standing analysis does not cease simply because Westport has taken no action towards Robert Bosch LLC and because there is no evidence that Robert Bosch LLC is obligated to indemnify its customers.

To be sure, such an analytical approach is not inconsistent with the precedent that, at first glance, may appear to demand a different course.  For instance, while the Court in *Proofpoint* did note that the declaratory plaintiff "failed to allege" that the declaratory defendant "engaged in any affirmative acts directed at [it,]" the *Proofpoint* court did not stop its analysis there.  2011 WL 4915847 at *3.  Instead, the *Proofpoint* court went on to analyze whether the action against customers in a different forum and subsequent indemnity requests gave the plaintiff standing.  *Id.* at *4-6.  In that case, those circumstances did not give rise to standing.  Significantly, however, the *Proofpoint* court analyzed more than just whether the patentee took some "affirmative act" towards the declaratory plaintiff.  *See also Innovative Therapies, Inc.*, 599 F.3d at 1382 (acknowledging that "prior litigation is a circumstance to be considered in assessing the *totality of circumstances*" and noting that the "specific facts of each case must be considered" in determining whether a declaratory action is appropriate (emphasis added)).  Moreover, *Ass'n for Molecular Pathology*, the case upon which *Proofpoint* relied, did not create the "affirmative act" requirement that Defendant suggests.  In *Ass'n for Molecular Pathology*, the Federal Circuit only reaffirmed its prior holding that a declaratory action "must be based on *real* and *immediate* injury or threat of

14

future injury that is *caused by defendants*."  653 F.3d at 1344 (quoting *Prasco*, 537 F.3d at 1339)

(emphasis in original).  It did not add the extra step that Defendant asks the Court to adopt here:

that a declaratory defendant's acts must be directed toward the declaratory plaintiff.[2]

Here, the nature of Westport's lawsuits against Bosch's customers contain an implied

assertion of infringement against Bosch.  In its complaints against Ford, Mercedes, Nissan, GM,

and FCA, the only identified "Accused Instrumentalities" are the same Bosch fuel injection valve.

Dkt. 1 ¶ 11.  Additionally, Westport attached claim charts to each complaint that "purport[ed] to

show how an Accused Bosch Product infringed claims of the Patents-In-Suit."  *Id.* ¶ 13.  And in

its "Infringement Contentions" in the Nissan and GM cases, Westport specifically alleged that a

Bosch part bearing a specific part number infringed its patents.  *Id.* ¶¶ 14-15.  Finally, in those

---

[2] The court in *JIA* read *Ass'n for Molecular Pathology* differently and interpreted it as mandating dismissal if there is no "affirmative act directed at the [declaratory] plaintiff."  2011 WL 4566118, at *4.  In fact, the *JIA* court explicitly held that without such an affirmative act, the court need not conduct "further consideration of the all-the-circumstances test."  *Id.*  It pointed to a line in *Ass'n for Molecular Pathology* that held that the district court erred by failing "to limit its jurisdictional holding to affirmative acts by the patentee directed at specific plaintiffs."  *Id.* at *3 (quoting *Ass'n for Molecular Pathology*, 653 F.3d at 1348).

This Court does not find the *JIA* court's interpretation of *Ass'n for Molecular Pathology* to be persuasive.  Consistent with *MedImmune*, in *Ass'n for Molecular Pathology*, the Federal Circuit considered the specific circumstances of the declaratory plaintiff and defendants in the case before it.  In doing so, it found that in that particular factual scenario, only those plaintiffs who had "affirmative acts by the patentee directed" at them had standing, denying standing to declaratory plaintiffs who allegedly had standing due to a "widespread understanding" that they may be at risk of being sued for infringement.  *Ass'n for Molecular Pathology*, 653 F.3d at 1348.  That does not foreclose standing in other cases with no "affirmative act" directed at the declaratory plaintiff.  Nor does it create a rule where the standing analysis stops if there is no affirmative act directed at the declaratory plaintiff.  Such a bright-line rule would be inconsistent with the approach directed in *Medimmune*, as the Federal Circuit has recognized since *Ass'n for Molecular Pathology*.  *See Danisco*, 744 F.3d at 1331 (noting that in *Medimmune*, the Supreme Court rejected "technical bright line rules in the context of justiciability"); *Matthews Int'l Corp v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1328 (Fed. Cir. 2012) (holding that a standing analysis "must be calibrated to the particular facts of each case").

materials, Westport did not identify any other fuel injection valves as infringing its patents.  *Id.* ¶ 16.  Each of these facts indicates that Westport accused Bosch's customers of infringement "*solely* due to the use or sale of a component purchased from a … supplier[,]" *i.e.*, the fuel injectors purchased from Bosch.  *Intel Corp.*, 2015 WL 649294 at *7 n.10.  Thus, it can be "reasonably inferred" that Westport has accused Bosch's customers of infringement solely due to their utilization of Bosch components, *id.* at *7 (quoting *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009)), which is akin to an implied assertion of patent rights against Bosch.  *See UCP Int'l Co.*, 787 F. App'x at 699 (holding that district court did not err in finding declaratory judgment standing because declaratory defendant sued declaratory plaintiff's customers in prior suit and submitted claim charts implying that plaintiff infringed its patents).

In sum, in considering "all the circumstances," as required by *Medimmune*, the Court finds that indeed there is a "case or controversy" under Article III.  While Westport does not appear to have taken any "affirmative act" towards Bosch, it has taken certain actions towards Bosch's customers.  Those actions directed against Bosch's customers have been singularly focused on their use of a Bosch product in alleging infringement, to the extent that Westport has identified a specific Bosch part number that has been used in the car manufacturer's allegedly infringing products.  It does not matter that "Westport did not approach Bosch, seek a license, or even allege infringement before filing suit" against Bosch's customers.  Dkt. 27 at 3.  The specific circumstances of this case—and, more importantly, of Westport's allegations against Bosch's customers—indicates that there is a "substantial controversy" between Bosch and Westport, that is of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Mitek*, 34 F. 4th at 1340 (cleaned up).  Bosch has met the Article III requirements to bring this declaratory judgment action.

\*     \*     \*

Accordingly, Bosch has adequately pleaded subject matter jurisdiction pursuant to 35 U.S.C. § 271. As explained above, it also has standing to bring this declaratory action under Article III. The Court also does not have any prudential concerns with Bosch's ability to bring this suit (nor did Westport raise any in its Motion to Dismiss or Reply). Therefore, the Court DENIES Westport's Motion to Dismiss pursuant to Federal Rule of Procedure 12(b)(1).

### B. Defendant's 12(b)(6) Motion

Defendant also devotes one page to its 12(b)(6) Motion to Dismiss Plaintiff's Complaint, arguing that the Complaint fails to state a claim. It claims that because "[t]he Complaint is silent as to whether Plaintiff specifically engaged in actually or potentially infringing conduct in the United States[,]" Plaintiff has not properly stated a claim. Dkt. 18 at 18. In effect, this is the same as Defendant's argument why the Court does not have subject matter jurisdiction under 35 U.S.C. § 271. However, and as explained above, even though Plaintiff has admitted it did not manufacture the fuel injectors at issue, Plaintiff has adequately alleged that it is subject to an infringement charge under 35 U.S.C. § 271. Because Plaintiff has alleged that it "use[d], [sold] offer[ed] to sell, and/or import[ed] the Accused Bosch Products into the United States," it is reasonable to infer that it faces a potential infringement charge. Dkt. 1 ¶¶ 27, 35. *See also* Part II.A.1. Therefore, the Court DENIES Westport's Motion to Dismiss pursuant to Federal Rule of Procedure 12(b)(6).

### C. Defendant's Motion to Transfer, Stay, or Dismiss

In the alternative, Defendant argues that this case should be transferred to the Eastern District of Texas, stayed, or dismissed because of the "first-to-file" rule. Defendant asks the Court to apply the "first-to-file" rule here, meaning that its own lawsuit against Plaintiff's customers should first proceed before the instant action. While Plaintiff argues that the "customer suit

exception" applies, making the application of the first-to-file rule in this case improper,  Defendant disagrees.  Defendant further argues that even if the Court declines to apply the first-to-file rule, this case should still be transferred to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a).

The first-to-file rule guides courts dealing with potentially duplicative litigation.  "[W]hen cases involving substantially overlapping issues are pending before two federal district courts, there is a strong preference to avoid duplicative litigation." *In re Google Inc.*, 588 F. App'x 988, 990 (Fed. Cir. 2014).  The general rule favors the first-filed action.  *Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005).  As such, "a district court *may* choose to stay, transfer, or dismiss [the] duplicative later-filed action." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) (emphasis added).

District courts are to use their discretion in applying the first-to-file rule.  The first-to-file rule "is not rigidly or mechanically applied" and district courts are afforded "an ample degree of discretion" in choosing how to deal with potentially duplicative litigation. *Id.*; *see also Gibbs v. Haynes Investments, LLC*, 368 F. Supp. 3d 901, 914 (E.D. Va. 2019) ("[T]he first-to-file rule is not absolute and is not to be mechanically applied." (cleaned up)).  When "considerations of judicial and litigant economy, and the just and effective disposition of disputes" requires something other than the first-to-file rule, it should not be applied. *Coyle*, 394 F.3d at 1347. Indeed, exceptions to the first-to-file rule are not rare. *Id.*

In the patent context, the most common exception to the first-to-file rule is the "customer suit exception."  The customer suit exception applies when the earlier action is an "infringement suit brought by a patent-holder against a mere customer … and the later suit is between the patent-holder and the manufacturer of the accused devices." *Heinz Kettler GMBH & Co. v. Indian Indus., Inc.*, 575 F. Supp. 2d 728, 730 (E.D. Va. 2008).  In such a case, the "patentee-manufacturer suit

18

should take precedence." *Id.*  However, just like in applying the first-to-file rule, the "guiding principles in" deciding whether to apply "the customer suit exception … are efficiency and judicial economy." *Tegic Commc's Corp v. Board of Regents of Univ. of Tx. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).

It is worth starting by making clear what is uncontested by the parties.  Westport first filed suit against Robert Bosch LLC's customers on December 15, 2021.  Dkt. 1 ¶ 9.  Robert Bosch LLC then later filed suit against Westport on April 4, 2022.  *See id.* at 11.  Both parties agree that the instant suit is duplicative of Westport's various suits against Robert Bosch LLC's customers. *See* Dkt. 18 at 20 (Defendant arguing that if this case proceeds alongside the Texas litigation, there is an "increased potential for duplicative and inconsistent proceedings"); Dkt. 24 at 17 (Plaintiff acknowledging that resolving this litigation would resolve the entire dispute).

It is not entirely clear to the Court whether the customer suit exception applies to this case. Plaintiff has admitted that it did not manufacture the fuel injectors at issue.  *See* Dkt. 24 at 5 ("[I]t is true … that the Bosch Fuel Injector [is] manufactured by another Bosch entity outside the United States.").  However, as stated by the Federal Circuit, the customer suit exception applies when the second-filed case is filed as a declaratory judgment by the manufacturer of a potentially infringing product.  *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014) ("When a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally takes precedence.").  And it would make sense to only apply the customer suit exception only to manufacturers, as the manufacturer is the "true defendant" in the dispute.  *Id.*  As a result, district courts have declined to apply the customer-suit exception to entities like Robert Bosch LLC who are importers, but not manufacturers, of potentially infringing products.  *See, e.g.*, *Unilin Beheer*

19

*B.V. v. Tropical Flooring*, No. CV-14-02209, 2014 WL 2795360, at *8 (C.D. Cal. June 13, 2014) (declining to apply the customer suit exception because the "actual manufacturer" was not a party to the lawsuit); *see also BBC Intern. Ltd. v. Lumino Designs, Inc.*, 441 F. Supp. 2d 438, 443 (E.D.N.Y. 2006) ("[I]t is not plain that the customer suit exception applies in the instant case because BBC is a importer and reseller, and not a manufacturer of the allegedly infringing goods.). *But see Rhode Gear U.S.A. v. Frank's Spoke N. Wheel, Inc.*, No. 84-886, 1985 WL 72065, at *4-*5 (D. Mass. Feb 14, 1985) (applying customer suit exception to importer who did not manufacturer items subject to potential infringement claim).

Even assuming that the customer suit exception applies to the situation at hand, the Court is not persuaded that it would demand that this suit proceed in this forum. In finding so, the Court is mindful of the "guiding principles" of the customer suit exception: "efficiency and judicial economy." *Tegic Commc's Corp.*, 458 F.3d at 1343.

The customer suit exception has two aspects: one governs the forum in which the patent dispute should be litigated, and one governs the timing as to which litigation should first proceed. As to the forum aspect, the customer suit exception is a diversion from the normal rule that the forum of the first-filed action is favored; instead, the forum of the manufacturer suit is favored. *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). The timing aspect of the customer suit exception means that a later-filed declaratory judgment filed by a manufacturer "takes precedence over an earlier-filed infringement action between a patent owner and a customer[,]" *i.e.*, that the manufacturer suit is tried first. *Gray Mfg. Co. v. Ashburn Volunteer Fire and Rescue Dep't*, No. 3:19-cv-801, 2020 WL 4673463, at *2 (E.D. Va. Aug. 12, 2020). The forum aspect is critical to the principles undergirding the customer suit exception. *Cherdak v. Stride Rite Corp.*, 396 F. Supp. 2d 602, 604 (D. Md. 2005).

The declaratory plaintiff's relation to the forum in which it filed the lawsuit is important in determining whether the customer suit exception should be applied.  One of the purposes of the customer suit exception "is to guard against forum shopping by the patent holder."  *JLC-Tech LLC v. North Am. Lighting, LLC*, No. SAAG-20-01203, 2020 WL 4925650, at *2 (D. Md. Aug. 20, 2020).  That does not mean, however, that a manufacturer who is not sued can engage in forum shopping and rely on the customer suit exception to allow its choice of forum to stand.  To be sure, the customer suit exception recognizes that the manufacturer has a "greater interest in defending against charges of patent infringement" and is therefore the "true defendant" in an infringement case.  *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989).  But to effectuate the manufacturer's presumed interest, the customer suit exception favors its choice of forum only when it files the declaratory action in its home forum, where the patentee could have originally filed suit.  To that end, numerous courts have declined to apply the customer suit exception when the declaratory plaintiff does not file for relief in its home forum.  *See, e.g.*, *Static Control Components, Inc. v. Future Graphics, LLC*, No. 1:08-cv-109, 2009 WL 10680193, at *2 n.4 (M.D.N.C. Jan. 28, 2009) (declining to apply customer suit exception in part because allowing the customer action to proceed would not deprive the manufacturer of "its right to litigate patent issues in its home forum"); *BBC Intern. Ltd.*, 441 F. Supp. 2d at 443 ("The [customer suit] exception is inapplicable because [plaintiff] did not properly file its declaratory judgment action in its home forum.").[3]  Otherwise, a manufacturer would be free to forum shop itself when filing its declaratory action.

---

[3] *See also Mycone Dental Supply Co. v. Creative Nail Design, Inc.*, No. C 12-747, 2012 WL 12899100, at *2 (N.D. Cal. May 30, 2012) (describing the customer suit exception as prioritizing a declaratory action brought by a manufacturer in its home forum); *Privasys, Inc. v. Visa Intern.*, No. C 07-03257, 2007 WL 3461761, at *3 (N.D. Cal. Nov. 14, 2007) ("[T]here is "a rebuttable presumption that a manufacturer's declaratory judgment action, *in its home forum*, at

Robert Bosch LLC's relation (or, more accurately, the lack thereof) to the Eastern District of Virginia vitiates the forum-related concerns associated with the customer suit exception. Plaintiff is not "at home" in Virginia, as it is a Delaware corporation with its principal place of business in Michigan.  Dkt. 1 ¶ 1.  The only reason that this Court has jurisdiction over Defendant is pursuant to 35 U.S.C. § 293, which provides that the Eastern District of Virginia has jurisdiction over nonresident patentees.  Because this forum is not Plaintiff's home forum, the forum-related justifications that underly the customer suit exception are not present, and even if Robert Bosch LLC is the "true defendant" in this case, it has a weak interest in litigating the case in the Eastern District of Virginia.

Moreover, the four-month delay between Westport's suit and the filing of the instant suit also weighs against this action proceeding in the Eastern District of Virginia.  A second purpose of the customer suit exception is to "avoid … imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute."  *In re Nintendo of Am., Inc.*, 756 F.3d at 1365.  For the customer suit exception to be utilized, the "true defendant" must assert its interest in litigating the case by filing a declaratory action.  The manufacturer's interest— and thus the appropriateness of applying the customer suit exception—is not as clear if it does not "promptly" file suit and assert that it is the "true defendant" who should be litigating the case.  *See Mycone Dental*, 2012 WL 12899100, at *3 (holding that a manufacturer litigation takes precedence if it is filed "*promptly* after the patentee's instigation of litigation against its customers" (emphasis

---

least if brought no later than promptly after a customer action, should take precedence over a mere customer action in a jurisdiction in which the manufacturer could not be sued.'" (quoting *Codex Corp v. Milgo Elec. Corp.*, 553 F.2d 735, 738 (1st Cir. 1977)) (emphasis added)); *Prevent Inc. v. WNCK, Inc.*, No. Civ. A. 93-4516, 1994 WL 13826, at *2 (E.D. Pa. Jan. 18, 1994) (describing the customer suit exception as prioritizing a declaratory action brought by a manufacturer in its home forum).

added)); *Privasys, Inc.*, 2007 WL 3461761, at *3 (same).  Here, Plaintiff waited almost four months after Defendant sued its customers to file this declaratory action, which weighs against applying the customer suit exception.

Finally, the goals of judicial efficiency and economy also weigh in favor transferring this case to the Eastern District of Texas.  In patent cases, the preferred forum is the "center of the accused activity" and the trier of fact "ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production."  *Cap Sec. Sys.*, 2014 WL 5334270, at *5.[4]  Here, neither the Eastern District of Texas nor the Eastern District of Virginia appear to be the "center of accused activity," and so neither forum is the preferred one.  However, there is already pending litigation occurring in the Eastern District of Texas related to the allegedly infringing products.  Those lawsuits have been consolidated into two cases.  *See* 2:21-cv-453 (E.D. Tex.), Dkt. 35 (consolidating the suits against Ford, Mercedes-Benz, and FCA); 2:21-cv-455 (E.D. Tex.), Dkt. 11 (consolidating the lawsuits against Nissan and GM).  It would be more efficient to litigate all these cases in a single forum—where they could potentially be further consolidated—rather than have three duplicative cases spread across two forums.  *See AutoMoney North, LLC v. Brown*, 0:21-cv-393, 2022 WL 507423, at *2 (D.S.C. Feb. 18, 2022) ("[I]t is more efficient to litigate the claims in a single forum where the parties are already actively litigating.").  Moreover, while it appears that the Texas cases are stayed, *see* No. 2:21-cv-455 (E.D. Tex.), Dkt. 140, it also appears to the Court that discovery and claim construction has already begun in the customer cases, meaning the Eastern District of Texas is already familiar with some of the issues related to

---

[4] This also buttresses the idea that an entity that seeks to avail itself of the customer suit exception can only do so by filing suit in its home forum.  That home forum is closer to the "center of accused activity[,]" *i.e.*, the place where infringement occurred, than a different forum that the alleged infringer may select.

litigating Westport's patent claims; it would save judicial resources to transfer this case to a district where some issues have already been decided.  *Id.*

This Court recognizes that Plaintiff's choice of forum is given preference even though the Eastern District of Texas has little connection to both parties.  However, there is no indication that the Eastern District of Virginia was more convenient in the first instance than the Eastern District of Texas, and it is now less convenient since the customer suits have already begun proceeding. Favoring the initial choice of forum is a venue principle that courts routinely follow.  *See Va. Innovation Sciences, Inc. v. Samsung Elecs. Co., Ltd.*, 928 F. Supp. 2d 863, 868 (E.D. Va. 2013) ("[A] plaintiff's choice of venue [] is given substantial weight[,] as it is well settled that a court should rarely disturb a plaintiff's choice of forum unless the balance of hardships clearly favor transfer[.]" (cleaned up)).  That principle applies with force in this case, where the alternative forum has the same minimal connection to the parties and underlying facts.[5]

While the Court transfers this case pursuant to the first-to-file rule, it would also be consistent with 28 U.S.C. § 1404 to transfer this case.  Plaintiff claims that this action could not have been brought in the Eastern District of Texas because Defendant is not subject to personal jurisdiction there, meaning that 28 U.S.C. § 1304(a) is not satisfied.  However, Westport's customer suits in the Eastern District of Texas portends it waived a personal jurisdiction defense in this case, which is related to those suits.  *See Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs. Ltd.*, 292 F.3d 1363, 1372 (Fed. Cir. 2002) (holding that party waived its jurisdictional defense to related suits in a forum where it had already voluntarily invoked the court's

---

[5] There very well may be a forum that is more convenient than the Eastern District of Texas, and the Court does not find that the Eastern District of Texas is the *most* convenient forum to hear this matter.  Rather, given the history of the instant suit and the Texas litigation, the Court only finds today that judicial economy and efficiency is served by transferring the litigation to the Eastern District of Texas from the Eastern District of Virginia.

jurisdiction); *Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp. 2d 888, 897 (D. Md. 2008) ("Many courts have concluded that personal jurisdiction may be based upon implied consent or waiver when a non-resident files a claim in the forum state that involves the same transaction.") (collecting cases).

The Section 1404 factors also weigh in favor of a transfer.  Most factors—where the "sources of proof" are; the "convenience of the parties and witnesses[;]" the cost of witness attendance; "the availability of the compulsory process[;]" and the home forum's interest in resolving the dispute—do not favor either forum.  *Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, No. 1:14-cv-1293, 2016 WL 9175601, at *2 (E.D. Va. Dec. 13, 2016) (cleaned up). And, as explained above, Robert Bosch LLC's choice of forum is not accorded much weight since it is not at home.  *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 633 (E.D. Va. 2003). However, the interests of justice favor transfer; as explained above, judicial economy and efficiency will be served by transferring this matter to the Eastern District of Texas.  *See Innovative Commc's Techs., Inc. v. Vivox, Inc.*, Nos. 2:12-cv-7, 2:12-cv-8; 2:12-cv-9, 2012 WL 4738979, at *6 (E.D. Va. Oct. 3, 2012) ("The most important factor for [a court] in considering the interests of justice is the pendency of other actions, judicial economy, and the risk of inconsistent judgments.").

To be clear, this Court finds that it would run counter to judicial economy and judicial efficiency to apply the customer suit exception and have the instant action remain in this district. The Court comes to that conclusion having considered the specific circumstances as they stand today: with customer suits in the Eastern District of Texas and this suit in the Eastern District of Virginia.  This Court does not find that applying the customer suit exception would run counter to judicial economy and efficiency in all circumstances related to this case.  Indeed, once this action

is transferred to the Eastern District of Texas, it may serve efficiency and economy to proceed with this suit and stay the customer suits.  The Court's opinion today does not address whether the customer suit exception should be applied in deciding whether this action or the related actions against Bosch's customers should proceed first.

Pursuant to the first-to-file rule and consistent with 28 U.S.C. § 1404, the Court finds that this matter should be transferred to the Eastern District of Texas.

IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss for Lack of Jurisdiction is DENIED; and it is

FURTHER ORDERED that Defendant's Motion to Dismiss for Failure to State a Claim is DENIED; and it is

FURTHER ORDERED that Plaintiff's Motion for Leave to File a Sur-Reply (Dkt. 30) is DENIED as MOOT; and it is

FURTHER ORDERED that Defendant's Motion to Transfer is GRANTED; this matter shall be transferred to the United States District Court for the Eastern District of Texas.

The Clerk is directed to effectuate transfer of this case to the Eastern District of Texas.

IT IS SO ORDERED.

Alexandria, Virginia
January 31, 2023

/s/

Rossie D. Alston, Jr.
United States District Judge