# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| ROBERT BOSCH, LLC,<br><br>    *Plaintiff / Counter-defendant,*<br><br>v.<br><br>WESTPORT FUEL SYSTEMS CANADA INC.,<br><br>    *Defendant / Counterclaim-plaintiff.* | Civil No. 2:23-cv-00038-JRG-RSP<br><br>**JURY TRIAL DEMANDED**<br><br>████████████████ |

## WESTPORT FUEL SYSTEMS CANADA INC.'S
## OPPOSED MOTION TO STRIKE CERTAIN OPINIONS OF DOUGLAS KIDDER

████████████████████████████████

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  LEGAL STANDARDS .........................................................................................1

III.  ARGUMENT.........................................................................................................3

    A.  The Court Should Exclude Mr. Kidder's Opinions And Any Related Testimony Relying On The ██████ Settlement Agreement ................................. 3

        1.  No evidence supports Mr. Kidder's efforts to convert the ████ ████ ████ settlement amount into a per unit royalty........................................... 3

        2.  The ████ agreement is not comparable................................................. 7

    B.  The Court Should Exclude Mr. Kidder's Opinions And Any Related Testimony Because He Used Bosch's Alleged Profits As A Cap On Damages .... 9

    C.  The Court Should Strike The Portions Of Mr. Kidder's Report And Exclude Any Related Testimony Relying On Untimely Produced Financial Information ....................................................................................................... 11

    D.  The Court Should Strike The Portions Of Mr. Kidder's Report And Exclude Any Related Testimony Regarding Alleged Acceptable, Non-Infringing Substitutes ...................................................................................................... 13

    E.  The Court Should Strike The Portions Of Mr. Kidder's Report And Exclude Any Related Testimony Regarding Previously Undisclosed Theories About Amplified And Non-Amplified Accused Products............................................. 14

IV.  CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012)....................................................................................8

*Baltimore Aircoil Co. v. SPX Cooling Techs. Inc.*,
2016 WL 4426681 (D. Md. Aug. 22, 2016) ...............................................................7

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993).........................................................................................1, 3, 14

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013)....................................................................................9

*EcoFactor, Inc. v. Google, LLC*,
137 F.4th 1333 (Fed. Cir. 2025) (en banc) .................................................................7

*Finesse Wireless, LLC v. AT&T Mobility, LLC*,
2022 WL 17875791 (E.D. Tex. Dec. 21, 2022)...................................................12, 13

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
355 F.3d 1327 (Fed. Cir. 2004)....................................................................................9

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
607 F. Supp. 3d 464 (D. Del. 2022) (Bryson, J.) .......................................................8

*Knight v. Kirby Inland Marine Inc.*,
482 F.3d 347 (5th Cir. 2007) .......................................................................................2

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999).....................................................................................................1

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012)........................................................................................8

*Mojo Mobility, Inc. v. Samsung Elecs. Co.*,
2024 WL 3527240 (E.D. Tex. July 24, 2024) .............................................................2

*Monsanto Co. v. Ralph*,
382 F.3d 1374 (Fed. Cir. 2004)....................................................................................9

*Moore v. Ashland Chem. Inc.*,
151 F.3d 269 (5th Cir. 1998) .......................................................................................2

*Pavo Sols., LLC v. Kingston Tech. Co.*,
2019 WL 8138163 (C.D. Cal. Nov. 20, 2019).............................................................7

*Primrose Operating Co. v. Nat'l Am. Ins. Co.*,
382 F.3d 546 (5th Cir. 2004) ...................................................................2

*Rex Medical, L.P. v. Intuitive Surgical, Inc.*,
156 F.4th 1289 (Fed. Cir. 2025) ...............................................................6

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
883 F.2d 1573 (Fed. Cir. 1989)................................................................9

*Summit 6, LLC v. Samsung Elecs. Co., Ltd.*,
802 F.3d 1283 (Fed. Cir. 2015)................................................................2

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)..............................................................10

*Whitserve, LLC v. Comp. Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012)...............................................................3, 7

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*,
609 F.3d 1308 (Fed. Cir. 2010).................................................................7

**Rules**

FED. R. CIV. P. 26(a)(2)(B) ..........................................................................2

FED. R. CIV. P. 26(e)(1)(A) ..........................................................................2

FED. R. CIV. P. 26(e)(2)................................................................................2

FED. R. CIV. P. 33(d) ....................................................................................4

FED. R. CIV. P. 37(c)(1) ...............................................................................2

FED. R. EVID. 702..........................................................................................1

███████████████████████████

## TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| Ex. A | Rebuttal Expert Report of Douglas Kidder, *Robert Bosch LLC v. Westport Fuel Systems Canada, Inc.*, No. 2:23-cv-00038-JRG-RSP (E.D. Tex. Dec. 4, 2025) |
| Ex. B | ███████████████████████████████████████████████████████ |
| Ex. C | Defendant Westport's First Set of Interrogatories (1–14) to Plaintiff Bosch |
| Ex. D | Relevant excerpts of Robert Bosch LLC's Eighth Suppl. Resp. to Def's First Set of Interrogs. (Nos. 5, 7, and 12) |
| Ex. E | Relevant excerpts of Def. Westport Fuel Systems Canada, Inc.'s R. 30(b)(6) Dep. Notice of Robert Bosch, LLC |
| Ex. F | Relevant excerpts of the Oct. 21, 2025 Dep. of Robert Bosch LLC, by and through 30(b)(6) Representative, ██████████████ |
| Ex. G | Email from Counsel for Bosch to Counsel for Westport serving documents (Nov. 19, 2025 11:05 PM CST) |
| Ex. H | Email from Counsel for Bosch to Counsel for Westport serving documents (Sept. 17, 2025 4:45 PM CDT) |
| Ex. I | Relevant excerpts of Robert Bosch LLC's First Suppl. Resp. to Def's Second Set of Interrogs. (No. 15) |
| Ex. J | Relevant excerpts of the Opening Expert Report of Dr. Richard W. Klopp, *Robert Bosch LLC v. Westport Fuel Systems Canada, Inc.*, No. 2:23-cv-00038-JRG-RSP (E.D. Tex. Nov. 6, 2025) |

██████████████████████████████████████

## I.    INTRODUCTION

On December 4, 2024, Bosch served the Rebuttal Expert Report of Douglas Kidder (Ex. A, cited herein as "Kidder ¶ __") pertaining to damages. Mr. Kidder's opinions suffer from numerous defects, including a lack of reliability that compels exclusion under *Daubert* and a reliance on late produced documents and previously undisclosed theories that compels exclusion under this Court's Local Rules, Orders, and the Federal Rules of Civil Procedure.

***First***, Mr. Kidder's affirmative opinions rely on two impermissible considerations: (1) reliance on the non-comparable ████ settlement agreement and his ill-fated efforts to calculate a per unit rate from its ███████████ ; and (2) the use of Robert Bosch LLC's alleged profits as a cap on damages. These two unreliable opinions poison the totality of Mr. Kidder's affirmative damages opinion. They also infect his purported critiques of Westport Fuel Systems Canada Inc.'s ("Westport") expert Stephen Dell's well-founded damages opinions.

***Second***, Bosch failed to comply with its discovery obligations, including production of documents and disclosure of theories. As relevant here, Mr. Kidder's opinions directly rely on documents related to Bosch's alleged ███████████ for 2015 to 2020 that Bosch inexplicably failed to produce until nearly two weeks after Mr. Dell served his opening expert report. Mr. Kidder's opinions also rely on previously undisclosed and unreliable theories related to alleged non-infringing alternatives and newly alleged distinctions between variants of Accused Products.

## II.    LEGAL STANDARDS

Mr. Kidder's proffered expert testimony is admissible only if it will assist the trier of fact and meets the other requirements of Federal Rule of Evidence 702. The testimony must be "not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). This "reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion,

████████████████████████████

the link between the facts and the conclusion, et alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). This Court "may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015). Bosch bears the burden to show that Mr. Kidder's proffered opinions are reliable. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Rule 26 requires that a "party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." FED. R. CIV. P. 26(e)(1)(A). "For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends . . . to information included in the report . . . ." FED. R. CIV. P. 26(e)(2). Failure to provide the information required in Rule 26(a), or to supplement under Rule 26(e), bars a party from using "that information or witness to supply evidence on a motion, at a hearing, or at a trial . . . ." FED. R. CIV. P. 37(c)(1). The sole exception to preventing the use of untimely disclosed information is if the failure is "substantially justified or is harmless." *Id.*

The Fifth Circuit applies a four-factor test to determine whether exclusion of expert testimony based on undisclosed information is an appropriate remedy: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563–64 (5th Cir. 2004). Bosch, as the party defending against exclusion, "carries the burden of showing its failure to comply with Rule 26 was 'substantially justified or harmless.'" *Mojo Mobility, Inc. v. Samsung*

*Elecs. Co.*, 2024 WL 3527240, at *8 (E.D. Tex. July 24, 2024).

## III. ARGUMENT

Mr. Kidder's affirmative damages opinion that Bosch and Westport would have agreed to

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

Mr. Kidder's effort to convert its ████████████████ amount into a per unit royalty rate

is unhinged from the facts of the case. Longstanding Federal Circuit precedent also forecloses

using an infringer's alleged profits as a cap on damages. Both impermissible considerations infect

Mr. Kidder's affirmative and rebuttal opinions. The Court should exclude opinions and testimony

related to both issues as unreliable under *Daubert* and its progeny.

The Court should also strike Mr. Kidder's proffered opinions related to: (1) Bosch's alleged

████████████ (2) alleged non-infringing alternatives; and (3) alleged amplified v. non-

amplified versions of Accused Products. Contrary to this Court's Local Rules, the Scheduling

Order, and Federal Rules of Civil Procedure, Bosch failed to produce documents or disclose these

theories during fact discovery. Bosch's failures are not substantially justified or harmless. The

Court should strike these opinions and exclude any related testimony for each of these issues.

### A. The Court Should Exclude Mr. Kidder's Opinions And Any Related Testimony Relying On The ████ Settlement Agreement

1. No evidence supports Mr. Kidder's efforts to convert the ██████████ amount into a per unit royalty.

Untethered from ***any*** evidence from which to reliably do so, Mr. Kidder purports to

calculate █████████████████████████████████████████████

████████████████████████. (Kidder ¶¶ 129–30.) The Court should exclude this unreliable

speculation and any opinions that rely on it. *E.g., Whitserve, LLC v. Comp. Packages, Inc.*, 694

█████████████████████████████████████████

F.3d 10, 29–30 (Fed. Cir. 2012) (holding that "multiple errors in [the damages expert's] royalty rate calculation," including reliance on non-comparable licenses, "cause[d] his ultimate opinion regarding a reasonable royalty rate to be speculative").

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████

In its first set of interrogatories served on January 18, 2024, Westport asked Bosch to identify any allegedly comparable agreements to which Bosch was a party and to provide specific details of those agreements "including identification of the payment and/or royalty terms; the patents, licensed technology, or covered products; and all documents that relate" to the identified agreements. (Ex. C at 9 (Interrogatory No. 11).) Bosch's FRCP 33(d) response included the Bates for the ████ settlement agreement along with dozens of other completely irrelevant agreements. (Ex. D at 76 (including BOSCH_WP_0075283).) Despite providing *eight* supplemental responses to this first set of interrogatories, Bosch never provided a narrative response to Interrogatory No. 11 or otherwise explained in its response how the parties to the ████ settlement agreement ████████████████████████████ (*See id.*) Bosch also never disclosed its belief that a conversion of the ████████ settlement payment to a running royalty was appropriate, preventing Westport from developing evidence on the number of units at issue in ████ In fact, Westport served a 30(b)(6) deposition notice that, among other topics, specifically sought Bosch's explanation of the nature and scope of licenses Bosch produced, including:

4

> execution of the license, the terms, nature and scope of the licenses, whether the licenses contemplate lump sum payments or running royalties, <mark>the stated or implied royalty rate</mark>, the duration of the licenses and whether the licenses are restricted in any way, whether Bosch assumed or admitted that it infringed any patents, whether Bosch assumed or admitted that any patents were valid, and whether Bosch agreed or refused to mark its products with any patent numbers;

(Ex. E at 19 (Topic No. 31.f).) Bosch designated ▮▮▮▮▮▮▮▮▮ to testify on Topic 31. (Ex. F at 9:14–10:14.) But when Westport's counsel specifically asked ▮▮▮▮▮▮▮ questions about ▮▮▮▮▮ settlement agreement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id.* at 70:21–78:13.) Although ▮▮▮▮▮▮▮▮ acknowledged he reviewed the agreement in preparing to testify on Bosch's behalf (*id.* at 71:16–19), he had no information from which to calculate a royalty rate from the lump sum amount or to otherwise apportion any of the lump sum amount to any aspect of the settlement agreement:



(*Id.* at 75:12–76:20 (objections omitted).) Westport's counsel specifically asked ▮▮▮▮▮ about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(*Id.* at 129:4–8.) There is no evidence that any diesel fuel injector was even at issue in ███. Despite this lack of evidence, Mr. Kidder opines—without cited support—████████████████████████████████████████████████ ██████████████████ (Kidder ¶ 129 (citing BOSCH_WP_0076103).) As detailed, no evidence supports his assertion. No evidence establishes ████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████ But this is ***not*** the same as an opinion that any of the ████ patents cover any specific Bosch products, the necessary—but missing—link for conducting any per-unit implied royalty analysis in view of the sales data. Thus, no evidence supports ████████████ ████████████████████████████████████ ████████████████████. This is not the first time he has attempted to use this kind of flawed methodology. *Rex Medical, L.P. v. Intuitive Surgical, Inc.*, 156 F.4th 1289, 1296–98 (Fed. Cir. 2025) (affirming exclusion of Mr. Kidder's opinions for failure to allocate license fees among licensed patents). In short, Mr. Kidder's per unit calculation is pure speculation

---

[1] ████████████████████████████████████████████████ ████████████████████████████████████████████████ None of the Accused Products have the specific geometry identified in the Patents and Bosch has not identified ***any*** Bosch products covered by ***any*** of these patents.

████████████████████████████████████████

untethered from the facts of the case and should be excluded. *E.g., EcoFactor, Inc. v. Google, LLC*, 137 F.4th 1333, 1346 (Fed. Cir. 2025) (en banc) (holding that admitting expert testimony purporting to convert a lump sum settlement into a per-unit royalty based on insufficient evidence is an abuse of discretion); *Whitserve,* 694 F.3d at 29–30; *Pavo Sols., LLC v. Kingston Tech. Co.*, 2019 WL 8138163, at *5 (C.D. Cal. Nov. 20, 2019) (excluding opinions of damages expert who attempted to convert lump-sum settlement and license agreements into a running royalty because of a lack of evidence); *Baltimore Aircoil Co. v. SPX Cooling Techs. Inc.*, 2016 WL 4426681, at *24–46 (D. Md. Aug. 22, 2016) (excluding a damages expert's reliance on lump sum settlement to calculate a running royalty where, besides "acknowledging the actual terms of the settlement agreement," the expert "offer[ed] no detail as to the litigation posture of [the parties] at the time of settlement."). Accordingly, the Court should strike paragraphs 8, 9, 112–133, 149, 189–195, 206, 207, and Exhibits DGK-3A and DGK-5 of Mr. Kidder's report and preclude any related testimony.

2. The ████ agreement is not comparable.

Opinions based on non-comparable license agreements are unreliable and should be excluded. *E.g., Whitserve*, 694 F.3d at 29–30. For a license agreement to be comparable, it needs to be both economically and technically comparable. *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010). The ████ agreement is neither and this fact provides an independent basis to strike paragraphs 8, 9, 112–133, 149, 189–195, 206, 207, and Exhibits DGK-3A and DGK-5 of Mr. Kidder's report and preclude any related testimony.

As a general proposition, settlement agreements are not comparable to license agreements outside the litigation context.

> The notion that license fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty is a logical extension of *Georgia-Pacific,* the premise of which assumes a voluntary agreement will be reached between a willing licensor and a willing licensee, with validity and infringement of the patent not being disputed.

*LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012). The ███ agreement is a prime example of this. While the parties entered into the agreement with no admission of validity or infringement (Ex. B § 3.2), public PTAB records show the '387 patent—the only asserted patent included in the license—had been substantially compromised during parallel IPR proceedings. In fact, the PTAB cancelled claims 1, 2, 4, 5, 7–10, 13–16, 18, and 19 of the '387 Patent, which ████ did not contest. █████████████████████████████ ████████████████████████████ Thus, the prospective value of a license to the '387 Patent is questionable at best.

Beyond that, ███████████████████████████████████████ ██████████████████████████. Reliance on agreements that post-date the hypothetical negotiation is "a legitimate reason to exclude" an expert's opinion. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1332 (Fed. Cir. 2012) (affirming exclusion of an agreement post-dating hypothetical negotiation by four years). That there would be some overlap in sales between the agreements does not cure this noncomparability.

Even further, ██████████████████████████████████████ ████████████████—a drastically different dynamic from this case, where both experts agree that the only parties at the negotiating table would be Westport and a single Bosch entity. *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 500–503 (D. Del. 2022) (Bryson, J.) (excluding damages expert's reasonable royalty opinions based on a license between parties different than those involved in the hypothetical negotiation).

Mr. Kidder also admits ████████████████████████████████████. (Kidder ¶ 116.) At the same time, Mr. Kidder's report acknowledges that ███████████████ ████████████████████. (*Id.* ¶ 121.) Mr. Kidder did not even attempt to explain how to account

for the ▮▮▮ Agreement's inclusion of these admittedly noncomparable patents.

**B.** **The Court Should Exclude Mr. Kidder's Opinions And Any Related Testimony Because He Used Bosch's Alleged Profits As A Cap On Damages**

Longstanding Federal Circuit precludes reliance on an accused infringer's profitability on sales of infringing products as a cap on damages. *E.g., Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013) ("[A]n infringer's net profit margin is not the ceiling by which a reasonable royalty is capped."); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004) (rejecting accused infringer's argument that the royalty was "unreasonable as a matter of law because it would have left Wal-Mart selling the accused product well below cost"); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989) ("There is no rule that a royalty be no higher than the infringer's net profit margin."). Stated another way, Bosch is not entitled to make a profit on its infringing sales. *Monsanto Co. v. Ralph*, 382 F.3d 1374, 1384 (Fed. Cir. 2004) ("[T]he law does not require that an infringer be permitted to make a profit."). Yet, that is precisely one of the foundational planks of Mr. Kidder's affirmative damages opinion (and critique of Mr. Dell's damages opinion). (*E.g.*, Kidder ¶¶ 209, 210, 233–36.) This opinion is especially pernicious here, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, Mr. Kidder inappropriately dismisses (or simply ignores) the overall profitability of the Accused Products (▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮) and fails to acknowledge that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

For his affirmative opinion, Mr. Kidder ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*

¶ 156.) ████████████████████████████████████████████████████████

██████████████████████████████████ (*Id.* ¶ 157.) Based on untimely produced

documents that this Court should strike (*see* Section III.C below), Mr. Kidder next opines ████

████████████████████████████████████████████████████████████

(Kidder ¶ 159.) He then opines:

████████████████████████████████████████████████████████

(*Id.* ¶¶ 160, 161.) ████████████████████████████████████████

████████████████████████████████████████████████████████

██████████ *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011)

("Beginning from a fundamentally flawed premise and adjusting it based on legitimate

considerations specific to the facts of the case ***nevertheless results in a fundamentally flawed***

***conclusion***." (emphasis added)).

Indeed, at Factor 13, in reliance on Dr. Klopp's opinions, Mr. Kidder opines ████████

████████████████████████████████████████████████████████

████████████████████████████ (Kidder ¶ 183.)

Mr. Kidder's summarizes the effect of his profit cap opinions under Factor 15:

████████████████████████████████████████████████████████



(*Id.* ¶ 190.) ███████████████████████████████

███████████████████████████████

█████████████ (*Id.* ¶ 191.) Mr. Kidder then uses these two points as the upper and lower bounds for the parties' negotiation and ultimately opines ███████████████

████████████████████████████. (*Id.* ¶ 195.) Mr. Kidder's improper cap on damages infects the entirety of his affirmative damages opinion.

For his rebuttal opinion, a core plank of Mr. Kidder's attack on Mr. Dell's opinion is that

███████████████████████████████

███████████████████████████████

(*Id.* ¶ 209.) For the same reasons as his affirmative opinions, Mr. Kidder's rebuttal opinion using Bosch's alleged profitability as a cap is impermissible.

Accordingly, because capping damages based on alleged profits is impermissible, the Court should strike paragraphs 8–10, 155–162, 182, 183, 189, 190, 192, 195, 206, 207, 209, 210, 233–236, and Exhibit DGK-3A of Mr. Kidder's report and preclude any related testimony.

### C. The Court Should Strike The Portions Of Mr. Kidder's Report And Exclude Any Related Testimony Relying On Untimely Produced Financial Information

Mr. Kidder's opinions contending what Bosch's ███████████████ were for 2015 through 2020 are based on documents produced ***after*** the close of fact discovery in this case and nearly two weeks ***after*** Westport served Mr. Dell's opening expert report on damages. Specifically, the close of fact discovery was October 30, 2025. (Dkt. 143.) The deadline for opening expert reports was November 6, 2025. (*Id.*) Bosch did not produce BOSCH_WP_0092027–37—██

████████████████████████████—until November 19, 2025. (Ex. G.) Such documents were plainly in Bosch's possession, custody or control well

before the close of fact discovery and should have been timely produced.

Bosch's failure to produce the alleged ███████████ documents was neither substantially justified nor harmless. Each factor courts consider weighs in favor of excluding both the documents themselves and Mr. Kidder's opinions relying thereon.

***The evidence is not important.*** Bosch will undoubtedly claim these documents are important to its damages theory—all the more reason why Bosch should have timely produced them. Bosch can rely on other timely produced documents for its damages theory, further undermining any claim of importance. For example, Mr. Kidder's Exhibit DGK-4 OEM, ███ ████████████████████████████████████████████████████ ███████████████████ ███ ███████████████████████ Bosch produced these spreadsheets on September 17, 2025, well before the close of fact discovery and depositions in this case. (Ex. H.) Accordingly, this factor weighs in favor of exclusion. *See Finesse Wireless, LLC v. AT&T Mobility, LLC*, 2022 WL 17875791, at *4 (E.D. Tex. Dec. 21, 2022) (finding late-produced documents relied upon in party's expert report not important, "especially when similar test data was timely produced").

***Bosch's failure prejudiced Westport.*** This latest incident in the string of Bosch's discovery misconduct severely prejudiced Westport's preparation of its damages case. Bosch and Mr. Kidder relied on documents produced after the close of fact discovery ***and after Westport served its opening damages report***, giving Westport "essentially no opportunity to explore the evidence." *Finesse*, 2022 WL 17875791, at *5. Bosch's discovery misconduct also prevented Westport from exploring these documents during depositions and prevented Westport's damages expert from analyzing the documents as part of his opening expert report.

***A continuance would not cure Westport's prejudice.*** Fact discovery has been closed for

██████████████████████████

weeks, the parties have already taken numerous depositions and served opening and rebuttal expert reports, and trial is rapidly approaching. Forgiving Bosch's discovery misconduct by granting a continuance would only compound Westport's prejudice, particularly because Westport would be potentially forced to seek additional Rule 30(b)(6) deposition time and issue a supplemental expert report to account for Bosch's late-disclosed documents and related opinions. Each of these events would require shifting the trial date back by multiple weeks, if not months. The Court should not force Westport to bear the burden of Bosch's misconduct.

***Bosch has proffered no explanation for its failure to timely produce the documents.*** Bosch has plainly had possession, custody, and control over documents pre-dating 2020 throughout the litigation. The Court's Discovery Order required Bosch to produce these documents "[w]ithout awaiting a discovery request." (Dkt. 66 ¶ 3.) Bosch has offered no explanation of its failure to comply with its discovery obligations. Indeed, as this Court has recognized, documents like BOSCH_WP_0092027–37 "could and should have been produced during fact discovery," and Bosch has certainly not articulated any reason why it was unable to do so. *Finesse*, 2022 WL 17875791, at *4. Accordingly, this last factor also favors exclusion.

Each of the four factors weighs in favor of excluding the ████████████ spreadsheets produced by Bosch at BOSCH_WP_0092027–37. The Court should exclude these documents, strike paragraphs 8, 9, 159–62, 183, 189, 190, 192, 195, 206, 207, 249, and Exhibit DGK-3A of Mr. Kidder's expert report and preclude any related testimony.

    **D.**    **The Court Should Strike The Portions Of Mr. Kidder's Report And Exclude Any Related Testimony Regarding Alleged Acceptable, Non-Infringing Substitutes**

As explained in Westport's contemporaneously-filed Motion to Strike Certain Opinions of Dr. Klopp, Bosch's identification of non-infringing alternatives is fatally flawed, both on the merits and because Bosch did not disclose them during fact discovery. Mr. Kidder has no

affirmative opinions of his own regarding alleged non-infringing alternatives. (*See* Kidder ¶¶ 170–176 (repeatedly citing to the Klopp Invalidity Report and Discussions with Dr. Klopp).) Instead, he relies wholly on Dr. Klopp's flawed analysis. *Id.* Accordingly, if the Court strikes Dr. Klopp's opinions regarding non-infringing alternatives, the Court should also strike Mr. Kidder's opinions and related testimony that rely on any of Dr. Klopp's excluded opinions, including paragraphs 8, 9, 170–76, 189, 194, 195, 206, 207, and Exhibit DGK-3A.

### E. The Court Should Strike The Portions Of Mr. Kidder's Report And Exclude Any Related Testimony Regarding Previously Undisclosed Theories About ▮▮▮▮▮▮▮▮▮▮▮ Accused Products

For the first time in Mr. Kidder's report, Bosch attempts to limit the royalty base ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Kidder ¶ 205.) Bosch did not disclose this damages theory during discovery. Indeed, Bosch previously represented ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. I at 14.) Bosch cannot show that its failure to disclose was substantially justified or harmless.

***Bosch's theory is not important.*** Mr. Kidder's attempt to limit the royalty base ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ accounts for roughly ▮▮ ▮▮▮ of the alleged damages in this case. Indeed, the majority of Mr. Kidder's report is dedicated to Bosch's other attempts to escape liability for its infringing conduct. To the extent the other opinions and theories comply with *Daubert* and Bosch's discovery obligations, Bosch can rely on these theories. Accordingly, this factor favors exclusion.

***Bosch's failure to disclose its damages theory prejudiced Westport.*** Bosch was not merely silent regarding any differences between the Accused Products. On the contrary, Bosch ***affirmatively represented*** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*) Bosch's attempt to hedge this statement ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████. Bosch's late disclosure of this theory prevented Westport from exploring this alleged difference with Bosch's Rule 30(b)(6) witnesses during fact discovery and prevented Westport's damages expert from accounting for such alleged differences in his opening report. This factor likewise favors exclusion.

*A continuance would not cure Westport's prejudice.* For the same reasons Westport argued in Section III.C above, a continuance would compound—not mitigate—Westport's prejudice. Accordingly, this factor likewise favors exclusion.

*Bosch has proffered no explanation for its late disclosure.* Bosch had two separate opportunities to disclose this theory but failed to do so. Westport requested Bosch's contention on whether "any portion of the financial information . . . that [Bosch] produce[s] in this matter should be excluded from any calculation of allegedly infringing units or revenues in this case (***including, for example, as part of a royalty base for damages purposes***) for any reason other than your contentions of non-infringement." (Ex. C at 10 (Interrogatory No. 14).) And Westport's Interrogatory No. 16 expressly requested ████████████████████████████ ████████████████████ (Ex. I at 14.) Bosch did not disclose this theory in response to either interrogatory. Accordingly, the Court should strike paragraphs 53, 205–07, and Exhibits DGK-3A, -3B, and -3C of Mr. Kidder's report and preclude any related testimony.

## IV. CONCLUSION

Westport respectfully requests that the Court strike the above-identified paragraphs and exhibits of Mr. Kidder's report and preclude Bosch from offering any related testimony.

15

██████████████████████████████████████████

Dated: December 8, 2025

Respectfully submitted,

/s/ David W. Higer
Miranda Y. Jones
  *Lead Counsel*
  State Bar No. 24065519
Jamie H. McDole
  State Bar No. 24082049
Phillip B. Philbin
  State Bar No. 15909020
Michael D. Karson
  State Bar No. 24090198
David W. Higer
  State Bar No. 24127850
Matthew L. Vitale
  State Bar No. 24137699
Cody M. Carter
  State Bar No. 24131091
Eugene M. Massad, III
  State Bar No. 24126247
**WINSTEAD PC**
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Tel.: 214.745.5400
Fax: 214.745.5390
Email: mjones@winstead.com
        jmcdole@winstead.com
        pphilbin@winstead.com
        mkarson@winstead.com
        dhiger@winstead.com
        mvitale@winstead.com
        ccarter@winstead.com
        emassad@winstead.com

Claire A. Henry
Texas Bar No. 24053063
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Tel.: (903) 757-6400
Fax: (903) 757-2323
Email  claire@millerfairhenry.com

*Attorneys for Defendant and Counterclaim-Plaintiff Westport Fuel Systems Canada Inc.*

16

███████████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that, on December 8, 2025, I electronically submitted the foregoing document with the clerk of the United States District Court for the Eastern District of Texas, using the electronic case management CM/ECF system of the Court which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ David W. Higer*
David W. Higer

## CERTIFICATE OF CONFERENCE

I certify that counsel for Westport Fuel Systems Canada, Inc. has complied with the meet and confer requirement of Local Rule CV-7(h). On December 8, 2025, lead and local counsel for Bosch and Westport conferred to attempt to resolve the issues raised herein. Miranda Jones (lead counsel), David Higer, and Clair Henry (local counsel) attended the conference on behalf of Westport. Bas De Blank (lead counsel) and Eric Findlay (local counsel) attended the conference on behalf of Bosch. Bosch indicated it would oppose the relief Westport seeks herein. Accordingly, the parties have reached an impasse and this Motion is opposed.

*/s/ David W. Higer*
David W. Higer