**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

ROBERT BOSCH LLC,

              Plaintiff,

    v.

WESTPORT FUEL SYSTEMS CANADA, INC.,

           Defendant.

Case No. 2:23-cv-00038-JRG-RSP

**Jury Trial Demanded**

**PLAINTIFF ROBERT BOSCH LLC'S MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT**

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION | SHORT CITATION |
|---|---|---|
| 1 | Expert Report of Michael Leshner Regarding Infringement | Leshner Inf. Rpt. |
| 2 | U.S. Patent 6,298,829 | '829 Patent |
| 3 | U.S. Patent 6,575,138 | '138 Patent |
| 4 | Robert Bosch LLC And Mercedes-Benz USA, LLC's Petition For Inter Partes Review of U.S. Patent No. 6,298,829 | '829 Petition |
| 5 | Robert Bosch LLC And Mercedes-Benz USA, LLC's Petition For Inter Partes Review of U.S. Patent No. 6,575,138 | '138 Petition |
| 6 | Westport Fuel Systems Canada, Inc.'s Inter Partes Review No. IPR2023-00292, Patent No. 6,298,829, Patent Owner's Response | '829 Patent Owner Response |
| 7 | Westport Fuel Systems Canada, Inc.'s Inter Partes Review No. IPR2023-00293, Patent No. 6,575,138, Patent Owner's Response | '138 Patent Owner Response |
| 8 | Westport Fuel Systems Canada, Inc.'s Inter Partes Review No. IPR2023-00292, Patent No. 6,298,829, Patent Owner's Preliminary Response | '829 Preliminary Response |
| 9 | Westport Fuel Systems Canada, Inc.'s Inter Partes Review No. IPR2023-00293, Patent No. 6,575,138, Patent Owner's Preliminary Response | '138 Preliminary Response |
| 10 | Declaration of Dr. Christopher Atkinson in Inter Partes Review No. IPR2023-00292, Patent No. 6,298,829 | Atkinson '829 Patent Decl. |
| 11 | Declaration of Dr. Christopher Atkinson Inter Partes Review No. IPR2023-00293, Patent No. 6,575,138 | Atkinson '138 Patent Decl. |
| 12 | Westport Fuel Systems Canada, Inc.'s, Patent Owner's Sur-Reply to Petitioners' Reply, Inter Partes Review No. IPR2023-00292, Patent No. 6,298,829 | '829 Patent Sur-Reply |
| 13 | Westport Fuel Systems Canada, Inc.'s, Patent Owner's Sur-Reply to Petitioners' Reply, Inter Partes Review No. IPR2023-00293, Patent No. 6,575,138 | '138 Patent Sur-Reply |
| 14 | Record of Oral Hearing Held November 14, 2024 (IPR2023-00292 and IPR2023-00293) | Record of Oral Hearing |
| 15 | Westport Fuel Systems Canada, Inc.'s Patent Owner's Demonstratives (IPR2023-00292 and IPR2023-00293) | Westport Hearing Slides |
| 16 | Decision Denying Institution of Inter Partes Review No. IPR2023-00292, Patent No. 6,298,829, | '829 Patent Institution Denial |
| 17 | Decision Denying Institution of Inter Partes Review No. IPR2023-00293, Patent No. 6,575,138, | '138 Patent Institution Denial |

i

| 18 | Decision Granting Petitioner's Request for Rehearing and Granting Institution of Inter Partes Review (IPR2023-00292 and IPR2023-00293) | Institution Decision |
|---|---|---|
| 19 | Final Written Decision, Inter Partes Review No. IPR2023-00292, Patent No. 6,298,829, | '829 Final Decision |
| 20 | Final Written Decision, Inter Partes Review No. IPR2023-00293, Patent No. 6,575,138 | '138 Final Decision |
| 21 | Robert Bosch LLC Petitioners' Request for Rehearing, Inter Partes Review No. IPR2023-00292, Patent No. 6,298,829 | '829 Patent Rehearing Request |
| 22 | Robert Bosch LL Petitioners' Request for Rehearing Inter Partes Review No. IPR2023-00293, Patent No. 6,575,138 | '138 Patent Rehearing Request |
| 23 | Petitioner's Reply, Inter Partes Review No. IPR2023-00292, Patent No. 6,298,829, | '829 Patent Reply |
| 24 | Petitioner's Reply, Inter Partes Review No. IPR2023-00293, Patent No. 6,575,138 (July 26, 2024) | '138 Patent Reply |
| 25 | Corrected Preliminary Infringement Contentions (Patent No. 6,298,829) | Corrected '829 Infringement Contention |
| 26 | Corrected Preliminary Infringement Contentions (Patent No. 6,575,138) | Corrected '138 Infringement Contention |
| 27 | █████████████████ | BOSCH_WP_0018897 |
| 28 | █████████████████ | BOSCH_WP_0073760 |
| 29 | █████████████████ | BOSCH_WP_0023982 |
| 30 | █████████████████ | BOSCH_WP_0025066 |
| 31 | Rebuttal Expert Report of Dr. Richard W. Klopp served December 4, 2025 | Klopp Rebuttal Rpt. |

████████████████████████████████████████████████████

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF ISSUES | 1 |
| III. | STATEMENT OF UNDISPUTED MATERIAL FACTS | 2 |
| | A. During The Parties' IPRs, Westport Disclaimed An Injector Where The Hydraulic Fluid Will, During Actuation, Redistribute To Fill The Changed Shape Of The Chamber. | 2 |
| | B. ███████████████████████████████████ | 4 |
| IV. | LEGAL STANDARD | 6 |
| V. | ARGUMENT | 6 |
| | A. During The IPRs, Westport Repeatedly Argued That A Hydraulic Fluid Layer That "Will Redistribute To Fill The Changed Shape Of [A] Chamber" Does Not Act "Substantially Solid" And Does Not Have A "Substantially Constant Thickness." | 7 |
| | 1. In Its Patent Owner Response, Westport Distinguished The Prior Art By Arguing That If During Actuation The Hydraulic Fluid Flows To Fill A Differently Shaped Chamber It Is Not Substantially Solid And Does Not Have Substantially Constant Thickness. | 8 |
| | 2. The Patent Office Instituted The IPRs Relying On Westport's Disclaimer That If During Actuation The Hydraulic Fluid Flows To Fill A Differently Shaped Chamber It Is Not Substantially Solid And Does Not Have A Substantially Constant Thickness. | 11 |
| | 3. Westport Continued To Argue That If During Actuation The Hydraulic Fluid Flows To Fill A Differently Shaped Chamber It Cannot Be Substantially Solid And Cannot Have Substantially Constant Thickness. | 14 |
| | 4. Westport's Sur-Reply Repeated Its Disclaimer. | 16 |
| | 5. Westport's Repeated Its Disclaimer During Oral Argument. | 17 |
| | 6. In Light Of Westport's Disclaimer, The Patent Office Confirmed The Claims. | 19 |
| | B. ███████████████████████████████████ | 20 |
| | C. As A Matter Of Law, Westport Cannot Argue The Accused CRI3 Injectors Infringe. | 25 |
| VI. | CONCLUSION | 28 |

████████████████████████████████████████████

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aylus Networks, Inc. v. Apple Inc.*,
    856 F.3d 1353 (Fed. Cir. 2017) ............................................................................... 26

*Grober v. Mako Prods., Inc.*,
    686 F.3d 1335 (Fed. Cir. 2012) ................................................................................. 6

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ......................................................................... 26, 27

*Ticaret A.S. v. United States*,
    833 F.3d 1356 (Fed. Cir. 2016) ................................................................................. 6

**Other Authorities**

Fed. R. Civ. P. 56(a) ..................................................................................................... 6

U.S. Patent 6,298,829 ........................................................................................... *passim*

U.S. Patent 6,575,138 ........................................................................................... *passim*

██████████████████████████████████████████████████████

Plaintiff Robert Bosch LLC ("Bosch") respectfully moves for summary judgment that the accused CRI3 injectors do not infringe the Asserted Claims of U.S. Patent Nos. 6,298,829 and 6,575,138 (the "'829 patent" and "'138 patent," respectively; collectively, the "Asserted Patents").

## I.    INTRODUCTION

All Asserted Claims require "a hydraulic link assembly comprising a passive hydraulic link having a hydraulic fluid thickness through which said opening and closing forces are transmitted, whereby said hydraulic fluid acts substantially as a solid with said thickness being substantially constant while said actuator assembly is [actuated/activated]…."  In an effort to avoid invalidity during the parties' IPR proceedings, Westport repeatedly and unambiguously represented that if during actuation the hydraulic fluid "will redistribute to fill the changed shape of [a] chamber" then it cannot "act[] substantially as a solid during actuation, in addition to not maintaining substantially the same thickness."  The Patent Office accepted Westport's argument and confirmed the validity of the Asserted Claims.

Thus, prosecution disclaimer precludes Westport from now arguing that an injector whose hydraulic fluid will redistribute to fill the changed shape of a chamber infringes any Asserted Claim.  ██████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████  it necessarily does not infringe and Westport is estopped from arguing otherwise.  Thus, Bosch is entitled to summary judgement of non-infringement.

## II.    STATEMENT OF ISSUES

Because there is no genuine dispute that the accused fluid thickness in the CRI3 injectors' Amplification module will, during actuation, redistribute to fill the changed shape of the chamber, Bosch is entitled as a matter of law.  The doctrine of prosecution disclaimer precludes Westport

from even alleging infringement.

### III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    Westport asserts claims 1-3, 6, 14-15 and 18-19 of the '829 Patent and claims 1-3, 6, 13-14, 19-21, and 26-27 of the '138 Patent (collectively, the "Asserted Claims").  Ex. 1 (Expert Report of Michael Leshner Regarding Infringement ("Leshner Inf. Rpt."), ¶ 48.

2.    Claim 1 of the '829 Patent and claim 1 of the '138 Patent are the only asserted independent claims.  *See* Ex. 2 ('829 Patent) at 17:1-43; Ex. 3 ('138 Patent) at 17:17-53.

3.    Claim 1 of the '829 Patent (and thus, all Asserted Claims that depend from it) requires "a hydraulic link assembly comprising a passive hydraulic link having a hydraulic fluid thickness through which said opening and closing forces are transmitted, whereby said hydraulic fluid acts substantially as a solid with said thickness being substantially constant while said actuator assembly is activated."  Ex. 2 ('829 Patent) at 17:32-37.

4.    Claim 1 of the '138 Patent (and thus, all Asserted Claims that depend from it) requires "a hydraulic link assembly comprising a passive hydraulic link having a hydraulic fluid thickness through which said opening and closing forces are transmitted, whereby said hydraulic fluid acts substantially as a solid with said thickness being substantially constant while said actuator assembly is actuated."  Ex. 3 ('138 Patent) at 17:42-47.

### A.    **During The Parties' IPRs, Westport Disclaimed An Injector Where The Hydraulic Fluid Will, During Actuation, Redistribute To Fill The Changed Shape Of The Chamber.**

5.    On December 14, 2022, Bosch filed petitions for *Inter Partes* Review ("IPR") asking the Patent Office to invalidate all Asserted Claims.  Exs. 4 ('829 Petition) and 5 ('138 Petition).  Bosch argued, in part, that the Asserted Claims were obvious over the combination of two prior art references – Wirbeleit and Klügl.  In its Petitions, Bosch explained that Klügl includes an "intermediate transmission module [that] includes a 'pressure chamber 5' that can be filled with

2

'transmission medium' such as 'a hydraulic fluid, which has low compressibility.'" Ex. 4 at 36. Bosch argued that "[t]he hydraulic fluid is completely captured, contained, and sealed within the transmission module." *Id.* Because Bosch argued that Klügl's chamber 5 did not change shape during actuation, Bosch argued the fluid in chamber 5 was a "hydraulic fluid [that] acts substantially as a solid with said thickness being substantially constant while said actuator assembly is [activated/actuated]." *Id.* at 34-39.

6.      Westport argued that Klügl's membrane 6 will flex (bulge) during actuation and, thus, Klügl's hydraulic fluid will "will redistribute to fill the changed shape of chamber." Ex. 6 ('829 Patent Owner Response) at 39; Ex. 7 ('138 Patent Owner Response) at 40.

7.      Westport repeatedly argued that if during actuation the hydraulic fluid flows into a chamber with a different shape then the hydraulic fluid does not act substantially as a solid and the hydraulic fluid thickness is not substantially constant. *See, e.g.¸* Exs. 8 ('829 Preliminary Response) at 30 and 9 ('138 Preliminary Response) at 30; Ex. 10 (Atkinson '829 Patent Decl.) at ¶52-53; Ex. 11 (Atkinson '138 Patent Decl.) at ¶52-53; Ex. 6 ('829 Patent Owner Response) at 32, 39-41 and 46; Ex. 7 ('138 Patent Owner Response) at 33, 40-42 and 47; Ex. 12 ('829 Patent Sur-Reply) at 13 and 16; Ex. 13 ('138 Patent Sur-Reply) at 13 and 16; Ex. 14 (Record of Oral Hearing) at 37:22-24, 38:1-5, 53:16-21; Ex. 15 (Westport Hearing Slides) at slides 28-34 and 72.

8.      Westport and its expert argued that "[e]ven a small deflection or deformation of the pliable, flexible membrane will be critical as the lift commonly generated in these applications is very small, usually less than 100 microns (about the thickness of a piece of paper)." Ex. 10 (Atkinson '829 Patent Decl.) at ¶53; Ex. 11 (Atkinson '138 Patent Decl.) at ¶53; *see also* Ex. 14 (Record of Oral Hearing) at 53:16-21; Ex. 15 (Westport Hearing Slides) at slide 72.

3

9.     The Patent Office accepted Westport's argument that if during actuation the hydraulic fluid flows into a chamber with a different shape then the hydraulic fluid does not act substantially as a solid and the hydraulic fluid thickness is not substantially constant. *See, e.g.*, Ex. 16 ('829 Patent Institution Denial) at 15-17 and 17 ('138 Patent Institution Denial) at 19-22; Ex. 18 ('829 and '138 Institution Decision) at 6-8; Ex. 19 ('829 Final Decision) at 13-16; Ex. 20 ('138 Final Decision).



Ex. 1 (Leshner Rpt) ¶ 157.

13.    Westport disclaimed during the IPR any argument that the claims could be met if there is a "small" change in the fluid thickness by repeatedly arguing that "[e]ven a small deflection or deformation" means the thickness is not substantially constant. *See, e.g.*, Ex. 10 (Atkinson '829

5

Patent Decl.) at ¶53; Ex. 11 (Atkinson '138 Patent Decl.) at 53; Ex. 14 (Record of Oral Hearing) *Id.* at 53:16-21; Ex. 15 (Westport Hearing Slides) at slide 72.

## IV.    LEGAL STANDARD

"[A]n entry of summary judgment is appropriate against" a party "who fails to make a showing sufficient to establish the existence of an essential element to its case, and on which it will bear the burden of proof at trial." *Zafer Taahhut Insaat ve Ticaret A.S. v. United States*, 833 F.3d 1356, 1362-63 (Fed. Cir. 2016) (citation omitted).

During the parties' IPRs, to preserve the validity of its claims Westport argued that if a hydraulic fluid "will redistribute to fill the changed shape of [a] chamber" during actuation then it cannot meet the claims because (i) it does not act substantially solid and (ii) its thickness is not substantially constant.  As a matter of law, the doctrine of prosecution disclaimer prohibits Westport from now arguing that the ██████████████████████████████ ████████████████████████████████) infringes. "When a patentee makes a clear and unmistakable disavowal of scope during prosecution, a claim's scope may be narrowed under the doctrine of prosecution disclaimer." *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1341 (Fed. Cir. 2012).  Thus, Bosch is entitled to summary judgment of noninfringement. Fed. R. Civ. P. 56(a).

## V.    ARGUMENT

All Asserted Claims require a hydraulic fluid that "acts substantially as a solid with said thickness being substantially constant while said actuator assembly is [activated/actuated]."  To preserve the validity of its claims during the parties' IPR, Westport argued a hydraulic fluid that "will redistribute to fill the changed shape of [a] chamber" during actuation cannot meet the claims. The Patent Office accepted Westport's argument and, thus, confirmed the validity of the Asserted Claims.  Because there is no genuine dispute that, ████████████████████████████

6

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████, as a matter of law Westport is precluded from arguing that they infringe.

### A.    During The IPRs, Westport Repeatedly Argued That A Hydraulic Fluid Layer That "Will Redistribute To Fill The Changed Shape Of [A] Chamber" Does Not Act "Substantially Solid" And Does Not Have A "Substantially Constant Thickness."

In the parties' IPRs, the primary question was whether a prior art reference called "Klügl" disclosed a hydraulic fluid layer that acted substantially as a solid and had a substantially constant thickness during actuation.  Westport argued that during actuation Klügl's membrane would "bulge."  According to Westport, this bulge changed the shape of the chamber holding the hydraulic fluid and Klügl's hydraulic fluid would flow into this new shape.  Westport argued that if the hydraulic fluid flows into a new shape during actuation, it is not "substantially solid" (because solids do not flow) and its thickness is not "substantially constant" (because the thickness changes with the change in shape of the chamber containing the hydraulic fluid).

Bosch and the Patent Office agreed.  Thus, the IPR question was simply whether in the Klügl embodiment relied upon by Bosch the hydraulic fluid was redistributed into a differently shaped chamber during actuation.  Westport said it was (and therefore that it could not meet the claims), Bosch said it was not (and thus it could meet the claims), and the Patent Office ultimately agreed with Westport.

Thus, the Asserted Claims cannot be infringed by an injector whose hydraulic fluid is redistributed into a new shape during actuation.  The claims' requirements that the fluid must act "substantially as a solid" and must have a "substantially constant thickness" dictate that result.  And, as a matter of law, because Westport repeatedly argued that a hydraulic fluid that changes shape during actuation cannot meet the claims, the doctrine of prosecution disclaimer prohibits Westport from now arguing that a hydraulic fluid that changes shape during actuation can infringe.

7

### 1. In Its Patent Owner Response, Westport Distinguished The Prior Art By Arguing That If During Actuation The Hydraulic Fluid Flows To Fill A Differently Shaped Chamber It Is Not Substantially Solid And Does Not Have Substantially Constant Thickness.

On December 14, 2022, Bosch filed IPR petitions asking the Patent Office to invalidate all Asserted Claims. Exs. 4 ('829 Petition) and 5 ('138 Petition). Bosch argued, in part, that the Asserted Claims were obvious over the combination of two prior art references – Wirbeleit and Klügl. *Id.* Wirbeleit disclosed most of the claim limitations, including a "hydraulic transmission element" corresponding to the claimed "hydraulic link assembly." *Id.* But Bosch relied on Klügl for "the remainder of what this limitation requires." Ex. 4 at 35.

As Bosch explained, Klügl includes an "intermediate transmission module [that] includes a 'pressure chamber 5' that can be filled with 'transmission medium' such as 'a hydraulic fluid, which has low compressibility.'" *Id.* at 36. Bosch argued that "[t]he hydraulic fluid is completely captured, contained, and sealed within the transmission module." *Id.* In the IPR, Bosch annotated Figure 1 of Klügl to show how it disclosed the claimed hydraulic link:



8

*Id.* at 37.  During actuation "the dimensions of chamber 5—including its thickness—remain constant so that the movement of the actuator results in the same amount of movement of the piston." *Id.*  Because chamber 5 did not change shape during actuation, Bosch argued the fluid in chamber 5 was a "hydraulic fluid [that] acts substantially as a solid with said thickness being substantially constant while said actuator assembly is [activated/actuated]." *Id.* at 34-39.

On March 23, 2023, Westport filed Preliminary Responses arguing that Klügl's "membrane 6 (black) will tend to deform inward where it contacts the drive piston 3 (yellow) and bulge outward into the annular area between the drive piston and the sleeve 11 (blue) when a force (purple arrow) is applied."  Exs. 8 ('829 Preliminary Response) at 30 and 9 ('138 Preliminary Response) at 30.  Westport prepared a figure that it argued illustrated how this alleged behavior causes the chamber holding Klügl's hydraulic fluid to change shape during actuation:



Westport's argument was that because the membrane allegedly deformed during actuation, Klügl's hydraulic fluid would flow into a new shape with a different thickness.  *Id.*at 31 ("Because the membrane 6 will flex during actuation, the fluid behind the membrane will tend to flow away

9

from the area of the membrane in contact with the drive piston and the layer of fluid will not maintain a constant thickness.").  As Westport's expert explained, "[t]his deformation will result in the movement of the fluid resident within the confines of the zone bounded by the membrane even as the injector is undergoing actuation."  Ex. 10 (Atkinson '829 Patent Decl.) at ¶52; Ex. 11 (Atkinson '138 Patent Decl.) at ¶52.

Westport's argument – and its disclaimer – was clear and unambiguous.  *Any* change in the shape of the hydraulic fluid, no matter how small, means it is not acting substantially as a solid and does not have a substantially constant thickness:

> Even a small deflection or deformation of the pliable, flexible membrane will be critical as the lift commonly generated in these applications is very small, usually less than 100 microns (about the thickness of a piece of paper).

*Id.* ¶ 53.  Thus, because, according to Westport, the chamber holding Klügl's hydraulic fluid changed shape during actuation (and the hydraulic fluid flows into this new shape), "**Klügl does not teach a hydraulic fluid that acts 'substantially as a solid with said thickness being substantially constant while said actuator assembly is activated….'**"  Exs. 8 ('829 Preliminary Response) at 31 and 9 ('138 Preliminary Response) at 31 (original emphasis).

On June 20, 2023, the Patent Office issued a decision denying institution of Bosch's IPRs.  Exs. 16 ('829 Inst. Den.) and 17 ('138 Inst. Den.).  The Patent Office expressly accepted and relied upon Westport's arguments that the Asserted Claims did not cover a hydraulic fluid layer that changed shape during actuation.  *Id.* at 15-16 (repeating Westport's arguments and reproducing Westport's images (above) showing the "bulge" change in the shape of the chamber holding Klügl's hydraulic fluid during actuation); *id*. at 17 ("Westport's expert explains that 'membrane [6] will tend to deform inward where it contacts the drive piston and bulge outward where unconstrained in the annular area between the edge of the drive piston and the wall of the transmission module in order to accommodate the volume of the fluid contained therein.'").

10

Because the Patent Office concluded Bosch's Petitions did not prove that Klügl's chamber had a "unchanging shape," the hydraulic fluid it contained could not meet the claims:

> Neither Figure 1 nor the cited passage in Klügl's column 1 teaches that the fluid in chamber 5 moves through a cylindrical space of "constant width" and "unchanging shape," or that the fluid maintains a constant thickness throughout actuation. *See* [Klügl], Fig. 1, 1:41-42, 3:23-29. Likewise, the cited passage from Klügl's column 3 teaches that "pressure is exerted on the drive piston 3 via the first membrane 6[.]" *See id.* at 3:23–29. Absent from these cited passages is any mention of constant width, unchanging shape, or fluid thickness. If anything, the cited passage from Klügl's column 3 supports that the exertion of pressure on drive piston 3 leads to flexing of membrane 6.

*Id.* at 16-17.

This is a classic example of prosecution history disclaimer. Westport argued Klügl's chamber 5 was defined, on one side, by a membrane that Westport contended would "bulge" during actuation. Westport argued that the Asserted Claims could not be met if the chamber holding the hydraulic fluid changed shape during actuation and the fluid flows into this new shape because such a fluid layer (i) does not act as a substantially solid and (ii) does not have a substantially constant thickness. And the Patent Office accepted Westport's argument and distinguished the prior art on that basis,

**2.      The Patent Office Instituted The IPRs Relying On Westport's Disclaimer That If During Actuation The Hydraulic Fluid Flows To Fill A Differently Shaped Chamber It Is Not Substantially Solid And Does Not Have A Substantially Constant Thickness.**

But the IPRs did not stop there. Bosch requested rehearing and asked the Patent Office to reconsider its decision not to institute the IPRs. Ex. 21 ('829 Patent Rehearing Request); Ex. 22 ('138 Patent Rehearing Request). Bosch did not dispute that if – as Westport had argued and the Patent Office found – the hydraulic fluid flows into a new shape while the actuator assembly is actuated it is not substantially solid and does not have a substantially constant thickness. *Id.* at 2 ("The Board concluded that membrane 6 in Klügl's first embodiment would deform during injector

11

actuation resulting in a substantial change in hydraulic fluid thickness.  This—as Patent Owner itself concedes—would in turn cause Klügl's injector piston to move by an amount less (*i.e.*, different) than its actuator.") (citations omitted).

Bosch argued that the Patent Office has misunderstood the prior art and that Bosch was relying on Klügl's Figure 1 embodiment where the hydraulic fluid did not flow into a new shape. *Id.* at 7 ("Klügl itself teaches, however, that the embodiment of Figure 1 operates ***without*** stroke translation, which means that it ***cannot operate*** in the manner described by Patent Owner.") (original emphasis).  Bosch illustrated the difference in the embodiment "without stroke translation" upon which it relied (where the the chamber containing the hydraulic fluid does not change shape while the actuator assembly is actuated) and the embodiment "with stroke translation" (where the membrane bulge would change the chamber's shape and, thus, as Westport argued and the Patent Office found, the hydraulic fluid did not act substantially as a solid and did not have a substantially constant thickness):



The top figures show Klügl's teaching of operation "***without stroke translation***," where the thickness (t) of the hydraulic fluid between the transmission module and the piston remains constant such that the piston and actuator move by the same amount (x).  The bottom figures show the effect of Patent Owner's erroneous interpretation on operation where the deformation of the membrane creates a different shaped space, causing the thickness of the hydraulic fluid (t) to be reduced by Δ such that it becomes t - Δ.  As a consequence, while the actuator still moves x, the piston movement is reduced to x - Δ, resulting in ***stroke translation***.

████████████████████████████████████████

*Id.* at 11-12.

In light of Bosch's argument that the chamber holding the hydraulic fluid in Klügl's Figure 1 embodiment did not change shape during actuation (because that embodiment did not have stroke translation), the Patent Office reconsidered its decision and instituted the IPRs.  Ex. 18 ('829 and '138 Institution Decision).  Critically, however, this was to apply Westport's disclaimer (that if the chamber holding the fluid changes shape during actuation the hydraulic fluid cannot meet the claims) and consider whether Klügl's Figure 1 embodiment relied upon by Bosch satisfied the claims in light of Westport's disclaimer.  The Patent Office was clear that it continued to accept and apply Westport's argument that the Asserted Claims do not cover a hydraulic fluid that flows into a differently shaped chamber during actuation because that fluid layer would not be substantially solid or have a substantially constant thickness:

> In the Decision, ***we were persuaded by Patent Owner that the fluid in Klügl's pressure chamber 5 does not possess "a thickness being substantially constant while the actuator assembly is activated," as required by claim 1(e), because membrane 6 is flexible***.  Dec. 16–17, 18–22 (analyzing an annotated version of Klügl's Figure 1 provided on page 34 of the Petition).  We found that Patent Owner's expert, Dr. Christopher Atkinson, considered that the portion of membrane 6 that does not bear against a drive piston would experience pressure from the fluid within pressure chamber 5.  *Id*. at 22.  We were persuaded by Dr. Atkinson that this portion of membrane 6 would "bulge outward where unconstrained in the annular area between the edge of the drive piston and the wall of the transmission module."  *Id.* (citing Ex. 2004 ¶ 52); *see also id*. at 20 (Patent Owner illustrated in three drawings, each based on Figure 1 of Klügl, that deformation of Klügl's membrane 6 during actuation would result in changes in the thickness of fluid within pressure chamber 5.).

*Id.* at 6-7 (emphasis added).  Despite this disclaimer, the Patent Office instituted the IPRs to consider whether in the embodiment relied upon by Bosch (without stroke translation) Klügl's hydraulic fluid changed shape during actuation (and thus did not act substantially as a solid and did not have substantially the same thickness) or whether the chamber containing the hydraulic fluid had a constant shape (and thus the hydraulic fluid could be substantially solid and could have

13

a substantially constant thickness). *Id.* at 8 (Patent Office "persuaded" by Bosch's argument "that, in the embodiment shown in Klügl's Figure 1, 'the thickness of Klügl's hydraulic fluid 5 ***must*** remain substantially constant' because Klügl explicitly discloses that the first embodiment performs 'without stroke translation,' such that 'the piston moves by the same amount as the actuator.'") (original emphasis).

### 3. Westport Continued To Argue That If During Actuation The Hydraulic Fluid Flows To Fill A Differently Shaped Chamber It Cannot Be Substantially Solid And Cannot Have Substantially Constant Thickness.

On May 3, 2024, Westport filed its Patent Owner's Responses to the IPRs. Ex. 6 ('829 Patent Owner Response); Ex. 7 ('138 Patent Owner Response). Once again, Westport asserted that if the chamber containing the hydraulic fluid deforms or changes shape during actuation then the hydraulic fluid in that chamber cannot satisfy the claims. *Id.* at 31 ("Petitioners and Dr. Quinlan wrongly conclude Klügl teaches a 'substantially constant thickness' based on implausible and unsupported interpretations of Klügl, including that Klügl's flexible membrane does not flex."). According to Westport, if the chamber containing the hydraulic fluid changes shape then any argument that the hydraulic fluid within it has a substantially constant thickness "necessarily fails." *Id.* at 32. And Westport argued "without a rigid barrier, [the] transmission medium would ***not*** act 'substantially as a solid' during actuation." *Id.* at 33 (Westport's emphasis). Thus, once again, Westport repeated its argument – reemphasizing its disclaimer – that if during actuation the hydraulic fluid "will redistribute to fill the changed shape of chamber" it cannot be substantially solid and cannot have a substantially constant thickness:

> Relatedly, Petitioners assert that Klügl's transmission medium "acts as a solid (*i.e.*, does not flow or change thickness) during actuation." (Pet. 2-3.) But because flexible membrane 6 deforms, the incompressible transmission medium will redistribute to fill the changed shape of chamber 5, thereby not acting substantially as a solid during actuation, in addition to not maintaining substantially the same thickness. Petitioners acknowledge that ***only if*** flexible membrane 6 does ***not*** flex

14

> when actuated could Figure 1's embodiment theoretically achieve a 1:1 movement between the actuator and piston.  (Pet. 39; Paper 9.)

*Id.* at 39 (Westport's emphasis).

Westport's disclaimer could hardly have been clearer.  Westport told the Patent Office that the "crux of the dispute" is whether Klügl's "membrane 6 flexes during actuation" because the parties and the Patent Office all agreed that Westport's claims did not cover a hydraulic fluid that would flow into a new shape during actuation:

> ***When*** membrane 6 flexes as Klügl teaches, then chamber 5 necessarily changes shape.  (Ex. 2022, ¶¶78-79.)  Petitioners appear to ***disagree*** with the predicate (*i.e.*, that membrane 6 flexes during actuation), but ***agree*** with the consequent (*i.e.*, that chamber 5 would change shape).  (Paper 9, 13-14.)  Similarly, ***when*** chamber 5 changes shape during actuation, Klügl's transmission medium will not "maintain substantially the same thickness during actuation."  (*Id.*, 7.)  Again, Petitioners disagree with the predicate (*i.e.*, chamber 5 changes shape during actuation) but do not disagree with the consequent (*i.e.*, Klügl's transmission medium will not "maintain substantially the same thickness" during actuation).  (*Id.*)  Thus the crux of the dispute for the Board to resolve is whether membrane 6 flexes during actuation.

*Id.* at 40 (Westport's emphasis); *see also id.* at 41 (because Westport believes Klügl's membrane 6 is flexible, Bosch's invalidity argument fails).  For a third time in as many pages, Westport made clear that it was disclaiming any argument that the Asserted Claims encompass a hydraulic fluid thickness that flows into a new shape during actuation:

> In sum, a POSITA would ***not*** interpret Klügl to teach that its flexible membrane 6 is inflexible in view of Klügl's numerous teachings that its membrane 6 is flexible.  (Ex. 2022, ¶¶53-87.)  Because Klügl's membrane 6 is flexible, there will be deformation of the membrane during actuation such that the transmission medium in chamber 5 does not act "substantially as a solid with said thickness being substantially constant while said actuator assembly is actuated."  (*Id.* ¶¶87-88.)  Accordingly, the challenged claims are patentable.

*Id.* at 41.

A few pages later, Westport repeated its disclaimer and unambiguously argued once again that the Asserted Claims do not cover a hydraulic fluid that "will redistribute" during actuation:

15

Klügl also does not teach a hydraulic fluid that has "a thickness being substantially constant" while the actuator assembly is actuated. (Ex. 2022 ¶88.) For all of the reasons discussed in Section VIII, Klügl teaches a flexible membrane. Because Klügl's membrane 6 is flexible, the incompressible transmission medium contained by membrane 6 will cause it to deform during actuation, causing the space in pressure chamber 5 to change. (*Id*., ¶¶81-82.) ***Klügl's transmission medium will redistribute*** within pressure chamber 5 by flowing from the higher pressure nearest the contact surface between membrane 6 and piston 3 toward the lower pressure unsupported annular areas of membrane 6. (*Id*., ¶¶78-80.) Because Klügl does not teach the second requirement of Claim 1(e), Petitioners fail to show any challenged claim would be obvious under either Ground 1 or 2.

*Id.* at 46 (emphasis added).

### 4.    Westport's Sur-Reply Repeated Its Disclaimer.

On July 26, 2024, Bosch replied to Westport's IPR responses. Ex. 23 ('829 Patent Reply); Ex. 24 ('138 Patent Reply). Consistent with Westport's disclaimer, Bosch did not argue that a hydraulic fluid that flows into a differently shaped chamber during actuation could satisfy the Asserted Claims. Instead, Bosch continued to argue that even with this disclaimer Klügl's hydraulic fluid layer was substantially solid and had a substantially constant thickness while the actuator assembly was actuated because in the embodiment relied upon by Bosch "membrane 6 does not substantially flex during actuation. It follows that Klügl's 'hydraulic link' maintains a substantially constant thickness as the claims here require." *See, e.g.*, *id.* at 6.

On September 6, 2024, Westport filed Sur-Replies. Ex. 12 ('829 Patent Sur-Reply); Ex. 13 ('138 Patent Sur-Reply). Westport made clear the dispute was whether Klügl's "fluid ***does not*** flow… during actuation" (Bosch's position) or Klügl's "fluid ***does flow*** during actuation" (Westport's position). *Id.* at 13 (Westport's emphasis). This was the dispute because Westport, Bosch, and the Patent Office agreed the claims could not cover a hydraulic fluid thickness that flows during actuation because it would not act substantially as a solid and would not have a substantially constant thickness. *Id.* at 16 ("If a POSITA would select a flexible membrane, in accordance with Klügl's express teaching, such a membrane would deform during actuation such

16

that the hydraulic fluid would not act 'substantially as a solid with said thickness being substantially constant while said actuator assembly is activated' as Claim 1(e) requires.").

### 5.    Westport's Repeated Its Disclaimer During Oral Argument.

Because the claims and issues in both Asserted Patents are substantially identical, the Patent Office conducted a single, consolidated IPR hearing on November 14, 2024. Ex. 14 (Record of Oral Hearing).  During that hearing, Westport repeatedly relied upon its disclaimer argument that the Asserted Claims cannot cover a hydraulic fluid that will flow (or change shape) during actuation because (i) it would not act "substantially as a solid" and (ii) it would not have a "substantially constant thickness."

For example, Westport presented a series of slides arguing that because Westport believed "Klügl's 'Transmission Medium' Flows During Actuation" it "is Not 'Substantially Solid' or a 'Substantially Constant' Thickness during Actuation":



Ex. 15 (Westport Hearing Slides) at slides 28-34.

Further, Westport's attorney explained that to prove Klügl's hydraulic fluid does not meet the claim, "we will show that Klügl's flexible transmission medium must flow during actuation." Ex. 14 at 37:22-24.

> *Because transmission medium flows* and flexible membrane 6 flexes, figure 1's actuator movement will only be partially transmitted to drive piston 3. Stated *in terms of the challenged claims, Klügl does not teach a transmission medium that is substantially solid or substantially constant thickness during actuation*.

*Id.* at 38:1-5 (emphasis added). And Westport cited its own expert, Dr. Atkinson, to make clear that "even a small" change in fluid thickness was outside the scope of the claims:

> But Dr. Atkinson, if we slide go to slide 72 specifically talks about that the thickness is not substantially constant and explains specifically why if you look at the box on the right that says, "Even a small deflection or deformation of the pliable, flexible membrane will be critical as the lift commonly generated in these applications is very small, usually less than 100 microns, about the thickness of a piece of paper."

*Id.* at 53:16-21. In slide 72 (discussed in quote, above), Westport nicely summarizes a number of instances where Westport had argued that if the hydraulic fluid "will redistribute" because "the space in pressure chamber 5" changes during actuation, then the hydraulic fluid "Thickness is Not Substantially Constant":



Ex. 15 (Westport Hearing Slides) at slide 72.

18

████████████████████████████████████████████████████████

**6.      In Light Of Westport's Disclaimer, The Patent Office Confirmed The Claims.**

On February 3, 2025, the Patent Office issued Final Written Decisions confirming the challenged claims.  Ex. 19 ('829 Final Decision); Ex. 20 ('138 Final Decision).  In those decisions, the Patent Office expressly acknowledged and relied upon the fact that Westport had argued (and thus disclaimed) that if the hydraulic fluid flows during actuation it cannot be substantially solid or have a substantially constant thickness:

> Westport responds that the hydraulic fluid within Klügl's pressure chamber 5 neither "acts substantially as a solid" nor has a "thickness being substantially constant," as required by claim element 1(e).  *See* PO Resp. 46 (referencing back to "Section VIII" of the response).  Rather, according to Westport, Klügl teaches that membrane 6 is "flexible" and will "deform" inwardly and outwardly during operation—
>
> > Because Klügl's membrane 6 is flexible, the incompressible transmission medium contained by membrane 6 will cause it to deform during actuation, causing the space in pressure chamber 5 to change…. Klügl's transmission medium will redistribute within pressure chamber 5 by flowing from the higher pressure nearest the contact surface between membrane 6 and piston 3 toward the lower pressure unsupported annular areas of membrane 6.
>
> *Id*. (emphasis added) (citations omitted).  And because flexible membrane 6 deforms, Westport contends that "the incompressible transmission medium will redistribute to fill the changed shape of chamber 5, thereby not acting substantially as a solid during actuation, in addition to not maintaining substantially the same thickness." *Id.* at 39.

Ex. 19 ('829 Final Decision) at 13; *see also id.* at 14-15 (relying on Westport's diagrams and noting Westport's argument that because membrane 6 bulges nothing in Klügl supports Bosch's position that the hydraulic fluid layer will have a "substantially constant thickness during actuation.").

The Patent Office expressly stated "[w]e agree with Westport" (*id.* at 15) and accepted Westport's arguments and disclaimer that the Asserted Claims cannot cover a hydraulic fluid thickness that flows during actuation because the would mean it does not "act[] substantially as a solid with said thickness being substantially constant."

19

███████████████████████████████████████████████████████████████

Because membrane 6 is "flexible" and "is moved in" or "pushed in" by contact with the drive piston 3, as Klügl expressly teaches (and Westport's expert confirms), we find that *the hydraulic fluid in Klügl's chamber 5 necessarily changes shape and thickness* due to deflection of the flexible membrane during operation of actuator 1. Ex. 1006, 3:63–4:10, 7:45–46, 8:46. *In this way, Klügl better supports Westport's position that Klügl does not satisfy the claim 1(e) limitation that the hydraulic fluid "acts substantially as a solid with said thickness being substantially constant."*

*Id.* at 16 (emphasis added).

**B.**

All Asserted Claims require that the claimed injection valve include a passive hydraulic link having a hydraulic fluid thickness that "acts substantially as a solid with said thickness being substantially constant while said actuator assembly is [actuated/activated]." Ex. 2 ('829 Patent) and 3 ('138 Patent). Westport alleges that "[t]he claimed 'hydraulic link assembly comprising a passive hydraulic link' in the Accused Products is the amplifier module with the hydraulic coupler." Ex. 1 (Leshner Rpt) ¶ 157. The CRI3 injectors do not infringe because ████████████████

████████████████████████████████████████████████████

████████ But the Court need not even resolve that issue because there is no genuine dispute that the ████████████████████████████████████████

████████████████████████████████████████

21

22

23

24

█████████████████████████████████████████████████████████████████

**C.      As A Matter Of Law, Westport Cannot Argue The Accused CRI3 Injectors Infringe.**

Thus, this motion is straightforward.  During its IPRs, Westport argued that an injector could not meet the Asserted Claims if, during actuation, its hydraulic fluid redistributes into a new shape.  That makes sense.  If the fluid is able to flow from one shape to another, it does not "act substantially as a solid."  And because the thickness of the hydraulic layer will depend on the shape of the chamber, that thickness is not "substantially constant" if the fluid flows between differently shaped chambers (such as those with differing diameters).

But the Court need not address that because to the extent the claims could ever have been understood to encompass such a changing fluid layer, Westport disclaimed that before the Patent Office.  It is irrelevant this disclaimer occurred during the parties' IPRs rather than the patents' original prosecution.  *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017).  The Federal Circuit did this to prevent precisely the situation here.  "Extending the prosecution disclaimer doctrine to IPR proceedings will ensure that claims are not argued one way in order to maintain their patentability and in a different way against accused infringers."  *Id.*

All that is required is that the IPR statements giving rise to prosecution disclaimer were "clear and unmistakable."  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1326 (Fed. Cir. 2003).  Westport's repeated arguments that if during actuation the hydraulic fluid "will redistribute to fill the changed shape of chamber" it cannot be substantially solid and cannot have a substantially constant thickness means that Westport cannot allege that an injector (such as accused CRI3 injectors) where the hydraulic fluid flows into a differently shaped chamber during actuation infringes.  This is essentially identical to *Omega Eng'g* where the Federal Circuit held that repeated arguments that the claimed invention did not cover a feature (there, affecting temperature

26

████████████████████████████████████████████████

measurement; here the hydraulic fluid changing shape) precludes the patent owner from later arguing that embodiment's with that feature infringes:

> [D]uring the prosecution of the application that issued as the '880 patents, Omega repeatedly insisted that its invention differed from the prior art by precluding appreciable heat from entering the energy zone and affecting the temperature of the energy zone.  By insisting that its invention directs energy in a way that does not affect temperature measurement, the patentee has rejected the examiner's broad assessment of the claim scope and stated in a public record what his invention could not be.  That statement is a deliberate surrender of claim scope, unmistakable in its effect because it is not suitable to multiple interpretations….  There is only one possible interpretation of this clear statement: The inventions covered by claims 1 and 3 have significantly reduced effect on temperature measurement.

*Omega Eng'g*, 334 F.3d at 1327.  Similarly, here, the "only one possible interpretation" of Westport's repeated clear statements that if the hydraulic fluid changes shape during actuation it does not act substantially as a solid and does not have a substantially constant thickness is that an injector ████████████) with a hydraulic fluid that changes shape during actuation cannot infringe.

In its Infringement Contentions, Westport alleged that the ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

27



Were the Court to consider the issue, however, Bosch is entitled to summary judgment that CRI3 injectors ███████████████ do not infringe.  Westport concedes that in ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████  ███████████████████████████████

████████████████████████████████████████████████

And, Westport disclaimed during the IPR any argument that the claims could be met if there is even a "small" change in the fluid thickness by repeatedly arguing that "[e]ven a small deflection or deformation" means the thickness is not substantially constant.  *See, e.g.*, Ex. 10 (Atkinson '829 Patent Decl.) at ¶53; Ex. 11 (Atkinson '138 Patent Decl.) at ¶53; Ex. 14 (Record of Oral Hearing) *Id.* at 53:16-21; Ex. 15 (Westport Hearing Slides) at slide 72.

## VI.    CONCLUSION

For the foregoing reasons, Bosch respectfully requests summary judgment that the accused CRI3 injectors do not infringe any Asserted Claim.

---

[1] ████████████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

Dated: December 8, 2025

      /s/ *Eric H. Findlay*
Bas de Blank (CA State Bar No. 191487)
basdeblank@orrick.com
Harrison Geron (CA State Bar No. 339851)
hgeron@orrick.com
**Orrick, Herrington & Sutcliffe, LLP**
1000 Marsh Road
Menlo Park, CA
94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

Michael C. Chow (CA State Bar No. 273912)
mchow@orrick.com
**Orrick, Herrington & Sutcliffe, LLP**
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
Telephone: +1 949 567 6700
Facsimile: +1 949 567 6710

Angela Colt (NY State Bar No. 5153465)
acolt@orrick.com
**Orrick, Herrington & Sutcliffe, LLP**
51 West 52nd Street
New York, NY 10019
Telephone: +1 212-506-5000
Facsimile: +1 212-506-5151

Eric H. Findlay (Texas State Bar No. 00789886)
efindlay@findlaycraft.com
Brian Craft (Texas State Bar No. 04972020)
bcraft@findlaycraft.com
**Findlay Craft, P.C.**
7270 Crosswater Avenue, Suite B
Tyler, Texas 75703
Telephone: +1 903-534-1100
Facsimile: +1 903-534-1137
*Attorneys for Plaintiff Robert Bosch LLC*

29

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 8, 2025, the foregoing was filed electronically with the clerk of the United States District Court for the Eastern District of Texas and served on all counsel of record through the Court's CM/ECF system.

/s/ Eric H. Findlay
Eric H. Findlay