██████████████████████████████████

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| ROBERT BOSCH LLC, | ) | |
| | ) | |
| *Plaintiff / Counter-defendant,* | ) | Civil No. 2:23-cv-00038-JRG-RSP |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| WESTPORT FUEL SYSTEMS CANADA INC., | ) | ███████████████████████ |
| | ) | |
| | ) | |
| *Defendant / Counterclaim-plaintiff.* | ) | |

### WESTPORT FUEL SYSTEMS CANADA INC.'S SEALED OPPOSITION IN RESPONSE TO PLAINTIFF ROBERT BOSCH LLC'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (DKT. 188)

████████████████████████████████

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................1

II.     RESPONSE TO THE STATEMENT OF ISSUES ..........................................................2

III.    RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUMF").....2

IV.     LEGAL STANDARD.................................................................................................6

V.      ARGUMENT..............................................................................................................7

       A.      Bosch Cannot Win Summary Judgment of Non-Infringement by Ignoring the Actual Claim Language. ........................................................................................ 8

       B.      Even if "During Actuation" is Related to Claim Language, Competing Expert Opinions Raise A Fact Issue that Precludes Summary Judgment. ......................... 9

       C.      The Plain and Ordinary Meaning of the Claim Phrases "While Said Actuator Assembly is [Activated/Actuated]" as Applied to the Infringing Products, is as Westport's Expert Opined. ................................................................................ 12

       D.      Bosch Mischaracterizes The IPR Decisions; No Disclaimer Occurred that Would Preclude Westport's Infringement Theory................................................. 16

              1.      Westport distinguished the prior art because it included a flexible membrane.......................................................................................... 16

              2.      Bosch's attempted use of "stroke translation" to differentiate its injectors is misplaced. .................................................................... 18

              3.      Any potential hydraulic fluid leakage does not "substantially" change the hydraulic fluid thickness. .................................................... 19

VI.     CONCLUSION.........................................................................................................20

VII.    OBJECTIONS TO BOSCH'S EVIDENCE .................................................................21

████████████████████████████████████████

## TABLE OF AUTHORITIES

**Cases**

*Aventis Pharm. Inc. v. Amino Chems. Ltd.*,
715 F.3d 1363 (Fed. Cir. 2013) ........................................................................ 7

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
295 F.3d 1277 (Fed. Cir. 2002) ........................................................................ 9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)........................................................................................... 6

*Cioffi v. Google, Inc.*,
No. 2:13-cv-00103-JRG-RSP, 2017 WL 275386 (E.D. Tex. Jan. 9, 2017) ...................... passim

*Conoco, Inc. v. Energy & Env't Int'l, L.C.*,
460 F.3d 1349 (Fed. Cir. 2006) ...................................................................... 10

*Cybor Corp. v. FAS Techs., Inc.*,
138 F.3d 1448 (Fed. Cir. 1998) (en banc) ................................................... 6, 8

*Estech Sys., Inc. v. Target Corp.*,
No. 2:20-cv-00123-JRG-RSP, 2021 WL 11962564 (E.D. Tex. Aug. 20, 2021)........................ 6

*Fisk Elec. Co. v. DQSI, L.L.C.*,
894 F.3d 645 (5th Cir. 2018) ............................................................................ 6

*Genuine Enabling Tech. LLC v. Nintendo Co.*,
29 F.4th 1365 (Fed. Cir. 2022) ......................................................................... 7

*Headwater Rsch. LLC v. AT&T Inc.*,
No. 2:23-cv-397-JRG-RSP, 2025 WL 3030762 (E.D. Tex. July 11, 2025) ...................... passim

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014) ........................................................................ 7

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
175 F.3d 985 (Fed. Cir. 1999) .......................................................................... 7

*Music Choice v. Stingray Dig. Grp. Inc.*,
No. 2:16-cv-00586-JRG-RSP, 2019 WL 8110069 (E.D. Tex. Nov. 19, 2019)........................ 9

*N. Am. Container, Inc. v. Plastipak Packaging, Inc.*,
415 F.3d 1335 (Fed. Cir. 2005) ..................................................................... 6, 8

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ........................................................................ 7

*Phenix Longhorn LLC v. AU Optronics Corp.*,
No. 2:23-cv-477-RWS-RSP, 2025 WL 3499046 (E.D. Tex. Aug. 18, 2025) .......................... 10

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................................. 7

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
404 F. Supp. 3d 1021 (E.D. Tex. 2019) ..................................................................... 6

*Renwick v. PNK Lake Charles, L.L.C.*,
901 F.3d 605 (5th Cir. 2018) ................................................................................. 6

*Salazar v. AT&T Mobility LLC*,
No. 2:20-cv-00004-JRG, 2021 WL 11703427 (E.D. Tex. July 28, 2021) .......................... 1, 10

*SB IP Holdings, LLC v. Vivint, Inc.*,
No. 4:20-CV-00886, 2023 WL 6601415 (E.D. Tex. Oct. 10, 2023) ................................. 7

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
No. 2:21-cv-00246-JRG, 2022 WL 822029 (E.D. Tex. Mar. 17, 2022) ............................ 10

*Warren v. Fed. Nat'l Mortg. Ass'n*,
932 F.3d 378 (5th Cir. 2019) ................................................................................. 6

*Zenith Lab'ys, Inc. v. Bristol-Myers Squibb Co.*,
19 F.3d 1418 (Fed. Cir. 1994) ............................................................................... 9

**Rules**

FED. R. CIV. P. 56 .............................................................................................. 6, 21

FED. R. EVID. 802 ................................................................................................... 21

████████████████████████████████████████████

## I.      INTRODUCTION

Robert Bosch LLC ("Bosch") seeks summary judgment of non-infringement based on the phrase "during actuation"—language entirely absent from the Patents-in-Suit. (Dkt. 188 ("Motion").) Bosch's Motion is premised on its argument that "[a]s a matter of law, ***the doctrine of prosecution disclaimer*** prohibits Westport from now arguing that the hydraulic fluid in the Bosch CRI3 injectors ████████████████████████████████ ██████████ infringes." (Mot. at 6 (emphasis added).) The Court should reject the Motion.

*First*, the foundation of Bosch's motion is that its products allegedly do not behave in a particular way "during actuation." But because the phrase "during actuation" is not claim language, the entire logic of Bosch's motion fails as irrelevant to infringement and the Court should deny it.

*Second*, even if there were underlying merit to a distinction between the scope of the relevant claim phrase "while said actuator assembly is [activated/actuated]"[1] and Bosch's preferred term "during actuation"—there is not—it would amount to a fact dispute that is not amenable to summary judgment. There is no dispute that the Court did not construe the claim phrase "while said actuator assembly is [activated/actuated]." Thus, those phrases are governed by their plain and ordinary meaning. *E.g.*, *Headwater Rsch. LLC v. AT&T Inc.*, No. 2:23-cv-397-JRG-RSP, 2025 WL 3030762, at *3 (E.D. Tex. July 11, 2025); *Salazar v. AT&T Mobility LLC*, No. 2:20-cv-00004-JRG, 2021 WL 11703427, at *2 (E.D. Tex. July 28, 2021). And that means that the parties' experts are "permitted to opine on what that meaning is." *Headwater Rsch.*, 2025 WL 3030762, at *3; *Salazar*, 2021 WL 11703427, at *2; *Cioffi v. Google, Inc.*,

---

[1] This limitation appears in claim 1 of both U.S. Patent No. 6,298,829 ("the '829 Patent") and U.S. Patent No. 6,575,138 ("the '138 Patent"). The last word of this phrase in claim 1 of the '829 Patent is "activated," (Dkt. 188-4 (Ex. 2) at WFS383169 (17:35–37)), while the last word of this phrase in claim 1 of the '138 Patent is "actuated." (Dkt. 188-5 (Ex. 3) at WFS383186 (17:45–47).)

No. 2:13-cv-00103-JRG-RSP, 2017 WL 275386, at *6 (E.D. Tex. Jan. 9, 2017). While experts are permitted to so opine, experts are not permitted to *sua sponte* apply a special legal claim construction based on the doctrine of prosecution history estoppel, as Bosch's expert did here. Ultimately, this expert dispute highlights a genuine dispute as to a material fact issue that forecloses summary judgment of non-infringement.

## II.    RESPONSE TO THE STATEMENT OF ISSUES

Bosch's presentation of the statement of issues misses the mark for the same reason its argument fails. It is based on the phrase "during actuation." But the phrase "during actuation" never appears in the Patents-in-Suit, let alone the claims. So any analysis of the infringing products "during actuation" is irrelevant. Bosch also has not established a "clear disavowal" necessary to support its allegation of "prosecution disclaimer." To the extent the Court gets past these preliminary deficiencies, the issue is whether a genuine dispute of material fact exists that precludes summary judgment when the parties' experts disagree on the appropriate meaning of the claim phrase "while said actuator assembly is [activated/actuated]." The answer is *yes*.

## III.    RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUMF")

1–4.    Paragraphs 1–4 of Bosch's SUMF are undisputed.

5.    It is undisputed that Bosch filed petitions for *Inter Partes* Review ("IPR") related to the '829 Patent and the '138 Patent on December 14, 2022 and accurately quoted its petitions. The cited portion of Klügl, however, does not state whether "[t]he hydraulic fluid is completely captured, contained, and sealed within the transmission module." (*See* Ex. C at 1:60–2:4.) Although it is undisputed that Bosch made the arguments quoted, it is also immaterial because Bosch continues to ignore—or account for in any way—the fact that Klügl discloses a flexible membrane not a solid structure for "containing" its transmission medium.

6.    Disputed insofar as this quote does not accurately capture Westport's argument. In

the IPR proceedings, Westport argued (and the PTAB ultimately agreed), that Klügl's Figure 1, on which Bosch relied, teaches that membrane 6 is flexible. (Dkt. 188-8 (Ex. 6) at 39–40, Dkt. 188-9 (Ex. 7) at 40.) Westport also argued that Klügl further teaches that the flexible membrane 6 would flex (and thus deform) when the actuator was actuated. (Dkt. 188-8 at 39–40, Dkt. 188-9 at 40.) Bosch *admitted* that "[t]he only way the dimensions of chamber 5 could 'remain constant' is if flexible membrane 6 . . . does *not* flex *when actuated*." (*See* Dkt. 188-8 at 40 (emphasis added); Dkt. 188-9 at 41.) Thus, Bosch itself did not dispute that, *while actuated*, the dimensions of Klügl's chamber 5 would *not* remain constant.

7.    Disputed. The evidence Bosch cites does not support its statement. Rather, it reaffirms that Westport argued Klügl's membrane is flexible and its deformation while the injector is actuated results in a hydraulic fluid thickness that would not be substantially constant.

8.    It is undisputed that the quote is accurately reproduced. But Bosch presented no evidence of the size of any "deflection or deformation" from which Westport (or the PTAB) could evaluate whether such deflection or deformation was substantial. (Dkt. 188-22 (Ex. 20) at 49–50 ("Dr. Quinlan and Petitioner also fail to persuasively account for the entire structure of Klügl's transmission module 2, e.g., membrane 6, and how that structure functions with a flexible membrane."); *id.* at 41 (noting that Dr. Quinlan had not "explain[ed] what meaningful flexing entails").) Further, Westport's expert also explains that the flexible membrane also does not change in a constant manner. For example, Westport's expert offered the following opinions in the IPR immediately following the cited portion of paragraph 53:

> 54.    Over time, a POSITA would expect the membrane to be susceptible to failure, including pulling away from points of attachment and leakage. A POSITA would also understand that the stiffness of a membrane would likely change depending on the temperature of the operating environment and the differential pressure across the membrane.

███████████████████████████████████████

55.    In the opposing direction, if operated for a high-pressure fuel system, the membrane 5 would be subjected to forces from the pressurized fuel pushing upwards and potentially deforming the membrane in the opposing direction. A POSITA would further understand the deformations in both directions to pose even greater integrity concerns over time.

(Dkt. 188-12 (Ex. 10) ¶¶ 54–55.) As such, each use of the injector described in Klügl could, and would, result in different and varied deformations.

9.    It is undisputed that the PTAB rejected Bosch's analysis of Klügl. Bosch mischaracterizes the "argument" that the PTAB "accepted." (Mot. at 4.) The PTAB found that the membrane in Klügl Fig. 1 was flexible, unconstrained, and subject to the influence of an incompressible fluid while the actuator is actuated, and that Bosch failed to show that Klügl Fig. 1's fluid thickness would be substantially constant in view of these findings. (Dkt. 188-21 (Ex. 19) at 15 ("We agree with Westport . . . because Bosch's argument that Klügl's hydraulic fluid maintains substantially constant thickness is premised on the erroneous belief that Klügl's membrane 6 will *not* flex"); Dkt. 188-22 at 33–37.)

10.    It is undisputed that the infringing Bosch CRI3 fuel injectors have a hydraulic coupler that Bosch sometimes refers to as an "███████████." ████████████████████████ ████████████████████████████████████████ ██████████████████████ (Ex. A ¶ 63). The infringing products include a "hydraulic coupler," which Westport contends is the claimed ████████████████████████ ████████████ (Dkt. 188-3 (Ex. 1) ¶ 157.)

11.    Disputed to the extent to which the cited graphic is representative of the hydraulic fluid thickness in Bosch's actual Accused Products. It is undisputed that the ████████████ ████████████████████. Westport disputes that ████████████ occurs "while said actuator is [activated/actuated]." The paragraph of Mr. Leshner's expert report cited by Bosch ████████ ████████████████████████████████████████

4



The other citations are taken from other sections of Mr. Leshner's report (e.g., Dkt. 188-3 ¶¶ 110 █████████ 141 (███████), 223 (████████████ and 229 (████████████ None of those support SUMF ¶ 11.

12.    Disputed. It is undisputed that some leakage occurs while the actuator is activated/actuated. Mr. Leshner states: ████████████████████████

(Dkt. 188-3 ¶ 180 (Mr. Leshner ██████

13.    Disputed. In the IPR, Westport's expert stated that "[e]ven a small deflection or deformation *of the pliable, flexible membrane* will be critical as the lift commonly generated in these applications is very small, usually less than 100 microns (about the thickness of a piece of paper)." (Dkt. 188-12 ¶ 53; Dkt. 188-13 (Ex. 11) ¶ 53.) Westport acknowledged that "Klügl's Throttle is Designed to Limit Flow Through It During Actuation" (Dkt. 188-17 (Ex. 15) at slide 32), but was pointing out that Bosch (through its expert Dr. Quinlan) was taking a position that was in express contradiction to what the reference itself said, when he stated "Klügl explains that fluid does not flow." (*Id.* at slide 34.) This problem was exacerbated by Bosch's refusal to acknowledge that the membrane was flexible (*id.* at slides 51–52), much less that it would flex while the actuator was actuated (*id.* at slides 49-70), and its inability to show the effect of flexing while the actuator was actuated. Instead, Bosch attempted to shift the burden to Westport "to quantify how much membrane flexing purportedly occurs *when Klügl's injector is actuated.*" (*Id.* at slide 70 (emphasis added)). The last quote demonstrates that the parties were, in fact, focused on flexing *when actuated—not* a different period of time, as Bosch now suggests. Westport did

5

not disclaim anything (much less make a "clear disavowal") while discussing Klügl in the IPRs.

## IV.    LEGAL STANDARD

Summary judgment is warranted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ince the movant bears the burden on summary judgment, the movant's failure to wholly foreclose the existence of genuine disputes of material fact will preclude summary judgment." *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F. Supp. 3d 1021, 1037 (E.D. Tex. 2019) (citing *Warren v. Fed. Nat'l Mortg. Ass'n*, 932 F.3d 378, 382 (5th Cir. 2019)). A material fact is one which would affect the outcome of the case, and a genuine dispute is one such that, upon considering the evidence, a reasonable jury could return a verdict for the non-moving party. *Id.* ("[M]aterial factual disputes that are readily apparent from the underlying . . . exhibits of record, of which the patents-in-suit are considered, will preclude summary judgment."); *see Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018). "Evidence at the summary judgment stage must be viewed in the light most favorable to the non-moving party, and reasonable inferences must be drawn in that party's favor." *PPS Data*, 404 F. Supp. 3d at 1037 (citing *Fisk Elec. Co. v. DQSI, L.L.C.*, 894 F.3d 645, 650 (5th Cir. 2018)).

The "[i]nfringement analysis is a two-step process." *Estech Sys., Inc. v. Target Corp.*, No. 2:20-cv-00123-JRG-RSP, 2021 WL 11962564, at *2 (E.D. Tex. Aug. 20, 2021) (quoting *N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1344 (Fed. Cir. 2005)). "First, the court determines the scope and meaning of the patent claims asserted . . . [and secondly,] the properly construed claims are compared to the allegedly infringing device." *N. Am. Container*, 415 F.3d at 1344 (quoting *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc)).

6

Claim terms are generally given their ordinary and customary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc); *see Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014); *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). "When a claim term has its plain and ordinary meaning, parties may present evidence to the jury of what the plain and ordinary meaning of the term is in the context of the patent." *SB IP Holdings, LLC v. Vivint, Inc.*, No. 4:20-CV-00886, 2023 WL 6601415, at *9 (E.D. Tex. Oct. 10, 2023). A dispute as to the plain and ordinary meaning of a claim term is a quintessential fact issue precluding summary judgment. *Headwater Rsch.*, 2025 WL 3030762, at *2–3 (finding a genuine dispute of material fact existed as to the plain and ordinary meaning to the unconstrued term "during particular time windows" in the face of competing expert opinions); *Cioffi*, 2017 WL 275386, at *6 (finding a colorable infringement issue for the jury to resolve in the face of competing expert opinions about the meaning of a claim term). Prosecution history disclaimer is a matter of claim construction; the party asserting a disclaimer has the burden of proving it. *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1374 (Fed. Cir. 2022). A disclaimer must be "'so clear as to show reasonable clarity and deliberateness,' and 'so unmistakable as to be unambiguous evidence of disclaimer.'" *Id.* (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003)).

## V.     ARGUMENT

Bosch's assertion that Westport argued and disclaimed the theory that "a hydraulic fluid that 'will redistribute to fill the changed shape of [a] chamber' during actuation" is covered by the claims fails. (Mot. at 6.) *First*, Bosch's Motion is premised on the phrase "during actuation," which appears nowhere in either Patent-in-Suit. Thus, Bosch has fundamentally failed in the infringement analysis, as it has not compared the language of the claims of the Patents-in-Suit to the infringing

7

CRI3 diesel fuel injectors to find a missing claim limitation. *Second*, Bosch has not met—and cannot meet—its burden of proving any disclaimer occurred. *Third*, even if the phrase "during actuation" bears any relation to the unconstrued claim language, "while said actuator assembly is [activated/actuated]," the parties' experts have different views of the plain and ordinary meaning of those phrases, which precludes summary judgment. The Court should deny Bosch's Motion.

### A.    Bosch Cannot Win Summary Judgment of Non-Infringement by Ignoring the Actual Claim Language.

The asserted claims of the Patents-in-Suit do not use the phrase "during actuation." Instead, the actual claim limitations are:

- "a hydraulic link assembly comprising a passive hydraulic link having a hydraulic fluid thickness through which said opening and closing forces are transmitted, whereby said hydraulic fluid acts substantially as a solid with said thickness being substantially constant *while said actuator assembly is activated*," (Dkt. 188-4 at WFS383169 (17:32–37) (emphasis added)); and

- "a hydraulic link assembly comprising a passive hydraulic link having a hydraulic fluid thickness through which said opening and closing forces are transmitted, whereby said hydraulic fluid acts substantially as a solid with said thickness being substantially constant *while said actuator assembly is actuated*," (Dkt. 188-5 at WFS383186 (17:42–47) (emphasis added)).

Throughout its Motion, Bosch pays mere lip service to this claim language and instead focuses on its preferred language "during actuation." Indeed, the phrase "during actuation" appears roughly 90 times in Bosch's Motion. (Mot. at 1–11, 13–20, 24–28.) In sharp contrast, the actual language of claim 1 of the '829 Patent, "while said actuator assembly is activated," only appears three times (*id.* at 2, 10, 17), and the actual language of claim 1 of the '138 Patent, "while said actuator assembly is actuated," only appears twice (*id.* at 2, 15).

In the second step of the infringement analysis, "the properly construed claims are compared to the allegedly infringing device." *N. Am. Container*, 415 F.3d at 1344 (quoting *Cybor Corp.*, 138 F.3d at 1454). Bosch's Motion fails at this step because it has fundamentally failed to

███████████████████████████████████████████

compare the claim language—which in this case is unconstrued[2]—to the infringing CRI3 diesel fuel injectors. The Federal Circuit has explained that, in an infringement analysis, "the only proper comparison is with the claims of the patent." *Zenith Lab'ys, Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994); *see Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002). Usually, that admonition arises when a party compares an accused product to an embodiment in a patent specification, instead of the claims. *E.g.*, *Catalina Lighting*, 295 F.3d at 1286. Other times, it arises when a party compares an accused product to an allegedly embodying product. *E.g.*, *Zenith Lab'ys*, 19 F.3d at 1286. Here, Bosch takes these erroneous analyses to another level when it relies on a phrase—"during actuation"—***that cannot be found anywhere in the Patents-in-Suit***. As Mr. Leshner explained, ██████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████ (Ex. B ¶ 90.)

### B. Even if "During Actuation" is Related to Claim Language, Competing Expert Opinions Raise A Fact Issue that Precludes Summary Judgment.

As noted in Section V.A above, the Patents-in-Suit do not use the phrase "during actuation" anywhere, let alone in the claims. But even if the Court treats Bosch's use of "during actuation" as a short-hand reference to the actual claim language, "while said actuator assembly is [activated/actuated]," Bosch's Motion still necessarily fails, because there are fact disputes that preclude summary judgment.

---

[2] Bosch has waived any prosecution history disclaimer argument by not raising it with the Court when the case was unstayed following the IPRs and before the *Markman* hearing at, for example, the March 21, 2025 Status Conference. *Cf. Music Choice v. Stingray Dig. Grp. Inc.*, No. 2:16-cv-00586-JRG-RSP, 2019 WL 8110069, at *3 (E.D. Tex. Nov. 19, 2019).

███████████████████████████████████████████████

No party asked the Court to construe the phrases "while said actuator assembly is [activated/actuated]" and, accordingly, the Court did not construe them. Thus, those phrases are governed by their plain and ordinary meanings. *E.g.*, *Headwater Rsch.*, 2025 WL 3030762, at *3; *Salazar*, 2021 WL 11703427, at *2. The parties' experts are "permitted to opine on what that meaning is." *Headwater Rsch.*, 2025 WL 3030762, at *3; *Salazar*, 2021 WL 11703427, at *2; *Cioffi*, 2017 WL 275386, at *6. Here, however, by advancing its prosecution disclaimer argument in connection with "during actuation," Bosch effectively admits that its technical expert applies a construction that is tethered in an alleged disclaimer (a legal theory) ***as opposed to*** the "plain and ordinary" meaning of the claim language to a POSITA.[3]

Mr. Leshner, however, offered an opinion ████████████████████████████████

████ This raises a fact issue for the jury to resolve and precludes an award of summary judgment of non-infringement against Westport. *E.g.*, *Headwater Rsch.*, 2025 WL 3030762, at *2–3; *Cioffi*, 2017 WL 275386, at *6. As this Court made clear in *Headwater Research*, "expert opinions are, in and of themselves, evidence." 2025 WL 3030762, at *2. In that case, the mere fact that one of the experts opined as he did was "sufficient to render summary judgment inappropriate." *Id.* Likewise, in *Cioffi*, because the parties disputed the plain and ordinary meaning of an unconstrued

---

[3] The Court could, of course, construe the claim phrases "while said actuator assembly is [activated/actuated]" in the Patents-in-Suit. *E.g.*, *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) (noting that "a district court may engage in claim construction during various phases of litigation, not just in a *Markman* order"). But that would likely require briefing and delay that is not warranted here, especially in view of the rapidly approaching March 2026 trial date. (Dkt. 164.) The Court could also simply reject Bosch's and Dr. Klopp's disclaimer argument without further claim construction, which would also resolve the dispute. *See, e.g.*, *Phenix Longhorn LLC v. AU Optronics Corp.*, No. 2:23-cv-477-RWS-RSP, 2025 WL 3499046, at *10 (E.D. Tex. Aug. 18, 2025) (citations omitted); *United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 2:21-cv-00246-JRG, 2022 WL 822029, at *14, 16, 18 (E.D. Tex. Mar. 17, 2022) (citations omitted). If this Motion is denied, Westport requests an instruction that Bosch is not to raise its prosecution history disclaimer-based construction ("during actuation" and "actuat***ing***/activat***ing***") at trial.

10

claim term, "a colorable infringement issue remain[ed] for the jury to resolve" which precluded summary judgment. 2017 WL 275386, at *6. ***So too here***.

Mr. Leshner has ███████████████████████████████████

███████████████████████████████████████████████████

████████████████ (*E.g.*, Ex. A ¶¶ 167–81, 270–84.) In fact, he ██████████████

██████████████████████████████████████████████



██ ██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████

11



To the extent that Dr. Klopp's opinion is admissible despite his reliance on an alleged-but-unproven disclaimer,[4] Mr. Leshner has presented a competing opinion that is in and of itself evidence. *Headwater Rsch.*, 2025 WL 3030762, at *2. To the extent that Dr. Klopp's opinion is inadmissible, then Mr. Leshner's opinion stands unrebutted. Either way, summary judgment of non-infringement is inappropriate.

**C.    The Plain and Ordinary Meaning of the Claim Phrases "While Said Actuator Assembly is [Activated/Actuated]" as Applied to the Infringing Products, is as Westport's Expert Opined.**

As noted in Section V.A above, the main parts of the relevant claim limitations are: "while said actuator assembly is [activated/actuated]," with the last word dependent on which of the two Patents-in-Suit is under scrutiny. *See* Footnote No. 1 above. So the infringement question becomes, comparing the plain and ordinary meaning of the claim language to Bosch's CRI3 diesel fuel injectors, do the CRI3 diesel fuel injectors meet those limitations? The answer is *yes*.

Mr. Leshner explained in his opening report

---

[4] Westport also has moved to strike Dr. Klopp's unreliable claim construction opinions regarding the phrase "during actuation." (Dkt. 187 at 15.)





Within the context of the claim language ("while said actuator assembly is [activated/actuated]"), *only* the "activated/actuated" period is relevant for determining whether the "hydraulic fluid acts substantially as a solid with said thickness being substantially constant." (Dkt. 188-4 at WFS383169 (17:35–27); Dkt. 188-5 at WFS383186 (17:45–47).) The other periods—including transition periods—are irrelevant to whether the limitation is met.

Bosch, on the other hand, invokes the language "during actuation" and exploits new-found

14

ambiguity in order to ensnare the "activat*ing*/actuat*ing*" period in addition to the "activat*ed*/actuat*ed*" period. It does so because, in Bosch's view, the hydraulic fluid is not acting substantially as a solid with a substantially constant thickness during the "activat*ing*/actuat*ing*" period. But the plain language of the claims, "activated" and "actuated" appearing in the past tense, disproves Bosch's argument. Hence, it relies on the euphemistic "during actuation," which does not appear in any asserted claim or any of the Patents-in-Suit.

The testimony of Bosch's expert, Dr. Klopp, is inherently unreliable and Bosch's argument should fail. Dr. Klopp failed to consider or apply the actual claim language, rendering his opinions inherently unreliable. (*See* Dkt. 187 at 13–15.) But even if the Court indulges Dr. Klopp's malapropism "during actuation" and treats it as short-hand for the actual claim language, "while said actuator assembly is [activated/actuated]," Dr. Klopp's opinion is still unreliable because it is at odds with the past tense of the verbs "activat*ed*" and "actuat*ed*" to include periods when the actuator assembly is, using the present participle, "activat*ing*" or "actuat*ing*." But, at an absolute minimum and even if the Court permits Dr. Klopp to present his unreliable opinions to the jury, Mr. Leshner's opinions that are based on the plain and ordinary meaning of the claim language preclude summary judgment of non-infringement. *E.g.*, *Headwater Rsch.*, 2025 WL 3030762, at *2–3; *Cioffi*, 2017 WL 275386, at *6.

Bosch may argue that Westport has used the phrase "during actuation" too. It is true that Westport used the phrase "during actuation" in its infringement contentions to help explain its theory of infringement with respect to the claim language "while said actuator assembly is [activated/actuated]." (Dkt. 188-27 (Ex. 25) at 8; Dkt. 188-28 (Ex. 26) at 7.) But Westport only ever used the phrase "during actuation" in the context of the actual claim language, indicating that Westport understood the phrase "during actuation" to refer to the same time period as "while said

actuator assembly is [activated/actuated]." (*Id.*) In fact, Westport stated in its contentions that the hydraulic fluid in Bosch's infringing CRI3 diesel fuel injectors "behaves substantially as a solid and is substantially constant *during actuation*" and contrasted that in the very next sentence with a description of what happens "[w]hen the actuator is *not activated*, . . . ." (Dkt. 188-27 at 8; Dkt. 188-28 at 7.) Westport used the phrase as a short-hand for the claim language "when the actuator is [*activated*/*actuated*]," not "when the actuator is [activating/actuating]," as Bosch does based on its prosecution disclaimer theory. Similarly, as discussed in Section V.D below, Westport used the term "during actuation" in the IPRs, but "during actuation" does not *necessarily* have the meaning that Bosch now asserts.

### D.    Bosch Mischaracterizes The IPR Decisions; No Disclaimer Occurred that Would Preclude Westport's Infringement Theory

Bosch recounts at length the history and process of the IPR proceedings to support its ill-fated Motion and its reliance on a term that appears nowhere in the claims. While Bosch's Motion fails for the reasons listed above, Westport is obliged to respond to Bosch's recantation to correct the record (much in the same way as Westport was obliged to entertain Bosch's use of "during actuation" in the IPRs despite its inapplicability to the issues). While Westport used the phrase "during actuation" in the IPR papers, it did not use it as Bosch now does (as explained further below) and did not make any disclaimer. Bosch's dependence on its mischaracterizations of the IPR decisions underscores Bosch's improper basis for summary judgment.

1.    <u>Westport distinguished the prior art because it included a flexible membrane.</u>

The PTAB confirmed the patentably of the asserted claims in the IPRs and distinguished the Patents-in-Suit from Klügl because the latter expressly taught a membrane 6 that was flexible *at all times*. Westport argued that, because Klügl's membrane was flexible, the hydraulic fluid would not maintain "'a thickness being substantially constant' while the actuator assembly is

16

actuated." (*See* Dkt. 188-8 at 46; Dkt. 188-17.) The PTAB agreed, stating that "because Klügl's membrane 6 flexes when transmission module 2 is unactuated, it follows that membrane 5 will also flex when transmission module 2 *is actuated*." (*See* Dkt. 188-21 at 15 (emphasis added).) "In this way, Klügl better supports Westport's position that Klügl does *not* satisfy the claim 1(e) limitation that the hydraulic fluid 'acts substantially as a solid with said thickness being substantially constant.'" (*See id.* at 16.)

While Westport explained in the IPRs that Klügl's membrane will flex "during actuation," Westport only engaged in this debate for two reasons. *First*, as mentioned previously, Bosch's Petitions in the IPRs discussed the behavior of the actuator assembly "during actuation." (*See generally* Dkt. 188-6 (Ex. 4); Dkt. 188-7 (Ex. 5).) Westport was obliged to dispute all arguments Bosch presented in the IPRs or face potential invalidation of the Patents-in-Suit. Thus, Westport merely parroted the language Bosch itself used. *Second*, Westport described the behavior and properties of the membrane as flexible to demonstrate the flexible membrane would cause the hydraulic fluid thickness to *not* act substantially constant while said actuator assembly is actuated. The following portion of the PTAB's Decision, which Bosch conveniently omits from its Motion, provides its prevailing conclusion:

> Thus, based on the entire record, we find that Bosch fails to demonstrate why one skilled in the art, reading Klügl's disclosure of a *flexible* membrane 6 for pressure chamber 5, would have understood that the hydraulic fluid within Klügl's pressure chamber 'acts substantially as a solid with said thickness being substantially constant *while said actuator assembly is actuated*,' as required by claim 1.

(*See* Ex. G at 22 (emphasis added).) In the IPR proceedings, Westport used "during actuation" as a short-hand for the claim language, and Bosch never expressly accorded it a different meaning, including the meaning Dr. Klopp now applies in his report (i.e., to mean the transition periods when the actuator is activat*ing* or actuat*ing*).

17

███████████████████████████████

The flexible membrane in Klügl caused the hydraulic fluid thickness to change while the actuator assembly was activated/actuated. No flexible membrane exists in the CRI3 injectors' amplifier module. Without such a flexible membrane, Bosch's comparison falls apart.

2. Bosch's attempted use of "stroke translation" to differentiate its injectors is misplaced.

Bosch's Motion also details its argument during the IPRs that Klügl allegedly invalidated the Patents-in-Suit because Klügl taught two embodiments, one with "stroke translation" and one without "stroke translation." (*See* Mot. at 12.) Bosch specifically equated the "stroke translation" in Klügl to "amplification" in the Patents-in-Suit. (*See* Ex. E at 9; Ex. F at 9.) Now, Bosch brings up "stroke translation" again to support its Motion. Bosch's reliance on "stroke translation" for support is misplaced for two reasons.

*First*, the PTAB's IPR Decision found no reason to distinguish between Klügl's two embodiments (with and without stroke translation) because both embodiments contain a flexible membrane. (*See* Dkt. 188-21 at 15 ("Westport's expert confirms that '[i]n all embodiments shown, Klügl only ever specifies and describes membrane 6 as a 'flexible' membrane.'").) According to Bosch, in the embodiment "without stroke translation," the hydraulic fluid did not "flow" in the actuator; therefore, the hydraulic fluid thickness remained substantially constant. (*See* Ex. G at 22–23; Dkt. 188-22 at 42–43.) The PTAB disagreed because Klügl teaches that the hydraulic fluid flows in both embodiments with and without stroke translation. (*See* Ex. G at 23 ("Klügl's disclosure expressly provides that fluid flow and pressure differences do, in fact, occur for the embodiment of Figure 1 during operation."); Dkt. 188-22 at 43–44.) Regardless of "stroke translation," all embodiments in Klügl suffer from the same distinguishable characteristic—a flexible membrane.

*Second*, Bosch erroneously conflates "stroke translation" with "amplification" (an

18

argument with which Westport previously dispensed in the IPRs). Bosch uses "stroke translation" to mean "the chamber containing the hydraulic fluid does not change shape while the actuator assembly is actuated." (*See* Mot. at 12.) Klügl establishes that "stroke translation" actually refers to different principles of power transmission and not the changing shape of a chamber caused by the flexible membrane. (*E.g.*, Ex. H ¶¶ 73–76; Ex. I ¶¶ 73–76.) Bosch's effort to sow confusion is rooted in its poor translation of Klügl from German to English translating the single German word—"Hubübersetzung"—to have three inconsistent meanings: "stroke translation," "stroke ratio," and "stroke transmission." (*See* Dkt. 188-17 at slide 9.) Despite this, Bosch did not use the three separate translated terms from Klügl as synonyms, implying that the one German word meant three different things. (*See id.*at slide 79.) Bosch unilaterally interpreted "without stroke translation" to refer to "without amplification," which it then unilaterally interpreted to refer to a one-to-one ratio in the moving pistons in Klügl. (*See id.* at slide 74; Ex. G at 22–23.)

During the IPRs, Westport demonstrated why Bosch's interpretations were incorrect making clear that "stroke translation" did not mean the same thing as "amplification." (*See* Dkt. 188-17 at slides 74–80.) The PTAB disregarded the argument because neither Bosch nor its expert could explain the difference between the different translations of "Hubübersetzung," nor did Bosch's expert offer any opinion as to what "amplification" meant in the context of Klügl. (*See* Dkt. 188-22 at 32; Dkt. 188-17 at slide 78.).

### 3. Any potential hydraulic fluid leakage does not "substantially" change the hydraulic fluid thickness.

Bosch also argues that hydraulic fluid leakage causes the thickness of the hydraulic fluid to no longer be "substantially constant." (Mot. at 28.) For support, Bosch erroneously contends that Westport's expert, Mr. Leshner, admits the hydraulic fluid in the actuator assembly changes thickness due to "small leakage." (*Id.*) Bosch's argument fails for two reasons.

19

████████████████████████████████

*First*, as has become rote, Bosch's argument is based on evaluating the state of the actuator assembly "during actuation." Bosch points to its own document which confirms Bosch considers the leakage to occur "during actuation." (Mot. at 28 (citing Dkt. 188-32 at BOSCH_WP_0025103).) Bosch's definition for "during actuation" is irrelevant to the infringement evaluation because it is not in the claim language. The appropriate timeframe to consider is "while said actuator assembly is [activated/actuated]." Whether there is any potential hydraulic fluid leakage "during actuation" does not matter for Westport's infringement claim.

*Second*, Bosch willfully omits the entirety of Mr. Leshner's opinions that provide additional context and defeats Bosch's argument. In full, Mr. Leshner states:



(Dkt. 188-3 ¶ 180 (emphases added).) Mr. Leshner also pointed out that ████████████
████████████████████████████████ (Ex. A ¶ 179 (emphasis added).
Mr. Leshner's analysis clearly ████████████████████████████
████████████████████████████████
████████████████ Bosch's argument that leakage of the hydraulic fluid "during actuation" *substantially* changes the thickness of the hydraulic fluid "while said actuator assembly is actuated" is misplaced and simply irrelevant to consideration of Bosch's infringement.

## VI.   CONCLUSION

Bosch's entire argument is based on applying a term ("during actuation") that finds no basis in, and indeed directly contradicts, the claim language of the Patents-in-Suit ("while said

████████████████████████████████████████████

actuator assembly is [activated/actuated]"). Rather, the term "while said actuator assembly is [activated/actuated]" is to be interpreted with its plain and ordinary meaning and not according to Bosch's pseudo claim construction. This alone proves fatal to Bosch's Motion.

Moreover, Mr. Leshner offers a competing view of ██████████████████████ ████████████████████████████ Competing expert opinions on the plain and ordinary meaning of a claim term creates a fact issue that defeats summary judgment.

Lastly, Bosch's mischaracterizations of the IPR proceedings for the Asserted Patents only emphasize the weakness of its Motion. Nothing in the IPR proceedings can be taken as Westport's disclaiming its infringement theory based on applying the appropriate timeframe to the infringement evaluation process or conceding that certain Bosch injectors do not infringe.

Accordingly, not only has Bosch failed to satisfy its burden to wholly foreclose the existence of genuine disputes of material fact, but Westport has demonstrated the existence of several genuine disputes of material fact that unequivocally preclude summary judgment. Bosch's Motion should be denied in its entirety.

## VII.    OBJECTIONS TO BOSCH'S EVIDENCE

Westport objects to Exhibits 4–5 and 21–24 to Bosch's Motion as inadmissible hearsay. FED. R. CIV. P. 56(c)(4); FED. R. EVID. 802. These exhibits are Bosch's own out-of-court statements. Bosch has not demonstrated that any exception to hearsay applies to them.

Westport objects to Exhibits 27–30 to Bosch's Motion as inadmissible hearsay. FED. R. CIV. P. 56(c)(4); FED. R. EVID. 802. These exhibits are documents produced by Bosch. Bosch has not demonstrated that any exception to hearsay applies to them.

Westport objects to Exhibit 31 to Bosch's Motion as inadmissible hearsay. FED. R. CIV. P. 56(c)(4); FED. R. EVID. 802. Dr. Klopp has not sworn under penalty of perjury to testify consistent with his report and Mr. Chow's declaration does not demonstrate otherwise.

21

███████████████████████

Dated: December 22, 2025                    Respectfully submitted,

                                           /s/ Michael D. Karson
                                           Miranda Y. Jones
                                             *Lead Counsel*
                                             State Bar No. 24065519
                                           Jamie H. McDole
                                             State Bar No. 24082049
                                           Phillip B. Philbin
                                             State Bar No. 15909020
                                           Michael D. Karson
                                             State Bar No. 24090198
                                           David W. Higer
                                             State Bar No. 24127850
                                           Matthew L. Vitale
                                             State Bar No. 24137699
                                           Cody M. Carter
                                             State Bar No. 24131091
                                           Eugene M. Massad, III
                                             State Bar No. 24126247
                                           **WINSTEAD PC**
                                           2728 N. Harwood Street, Suite 500
                                           Dallas, Texas 75201
                                           Tel.: 214.745.5400
                                           Fax: 214.745.5390
                                           Email:  mjones@winstead.com
                                                   jmcdole@winstead.com
                                                   pphilbin@winstead.com
                                                   mkarson@winstead.com
                                                   dhiger@winstead.com
                                                   mvitale@winstead.com
                                                   ccarter@winstead.com
                                                   emassad@winstead.com

                                           Claire A. Henry
                                           Texas Bar No. 24053063
                                           **MILLER FAIR HENRY PLLC**
                                           1507 Bill Owens Parkway
                                           Longview, Texas 75604
                                           Tel.: (903) 757-6400
                                           Fax: (903) 757-2323
                                           Email  claire@millerfairhenry.com

                                           *Attorneys for Defendant and Counterclaim-Plaintiff Westport Fuel Systems Canada Inc.*

22

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 22, 2025, I electronically submitted the foregoing document with the clerk of the United States District Court for the Eastern District of Texas, using the electronic case management CM/ECF system of the Court and caused the service of the same sealed documents on all counsel of record through electronic mail.

*/s/ Michael D. Karson*
Michael D. Karson

*/s/ Michael D. Karson*
Michael D. Karson

23