# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| ROBERT BOSCH LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>WESTPORT FUEL SYSTEMS CANADA, INC.,<br><br>          Defendant. | Case No. 2:23-cv-00038-JRG-RSP<br><br>**Jury Trial Demanded**<br><br>████████████ |

**PLAINTIFF ROBERT BOSCH LLC'S OPPOSITION
TO WESTPORT'S FUEL SYSTEMS CANADA INC'S MOTION
TO STRIKE CERTAIN OPINIONS OF DOUGLAS KIDDER**

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION | SHORT CITATION |
|---|---|---|
| 1 | Excerpts from the December 4, 2025 Rebuttal Expert Report of Douglas Kidder Regarding Damages | Kidder Expert Report |
| 2 | Excerpts from the June 27, 2025 Bosch Second Supplemental Response to Defendant's First Set of Interrogatories (Nos. 11 and 14) | 6/27/2025 Rog Response at 37-39 |
| 3 | Excerpts from the December 18, 2025 Deposition Transcript of Douglas Kidder | Kidder Depo. Tr. |
| 4 | Excerpts from the June 6, 2025 Bosch First Supplemental Response to Defendant's First Set of Interrogatories (Nos. 1-5,8,10,11,14) | Supplemental Response To Interrogatory No. 5 (6/6/2025) |
| 5 | Excerpts from the October 29, 2025 Westport Supplemental Objections and Answers to Bosch's First Set of Interrogatories (Nos. 1-12) | Supplemental Response To Interrogatory No. 10 (Oct. 29, 2025) |
| 6 | Westport's Corrected Infringement Contentions, Ex. A ('829 patent) | Corrected '829 Infringement Contention |
| 7 | Westport's Corrected Infringement Contentions, Ex. B ('138 patent) | Corrected '138 Infringement Contention |
| 8 | Excerpts from the November 5, 2025 Motion Hearing Transcript | 11/05/2025 Hrg. Tr. |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   LEGAL STANDARD ............................................................................................... 1

III.  ARGUMENT ............................................................................................................. 1

     A.    Westport's Challenges To Mr. Kidder's Opinions On The ▉▉▉▉ ▉▉▉▉▉▉ Agreement Go To Weight, Not Admissibility. .................................... 1

     B.    Westport's Challenges To Mr. Kidder's Use Of Bosch LLC's Profits Go To Weight, Not Admissibility. ............................................................................. 7

     C.    Bosch Complied With Its Discovery Obligations. ................................................. 9

IV.   CONCLUSION ......................................................................................................... 15

█████████████████████████████

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Comm'cns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012)................................................................................2

*Affinity Labs of Texas, LLC v. Ford Motor Co.*,
  No. 1-12-CV-580, 2014 WL 12638158 (E.D. Tex. Aug. 22, 2014)...........................4

*AstraZeneca AB v. Apotex Corp.*,
  782 F.3d 1324 (Fed. Cir. 2015)................................................................................5

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
  967 F.3d 1353 (Fed. Cir. 2020)................................................................................5

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
  576 F.3d 1348 (Fed. Cir. 2009)................................................................................8

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013)................................................................................8

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*,
  927 F.3d 1292 (Fed. Cir. 2019)................................................................................5

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014)................................................................................2

*Finesse Wireless, LLC v. AT&T Mobility, LLC*,
  No. 221CV00316JRGRSP, 2022 WL 17875791 (E.D. Tex. Dec. 21, 2022).........................11

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970).........................................................................8

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
  355 F.3d 1327 (Fed. Cir. 2004)................................................................................9

*Headwater Rsch. LLC v. Samsung Elecs. Co.*,
  No. 2:22-CV-00422-JRG-RSP, 2024 WL 4730474 (E.D. Tex. Nov. 8, 2024).........................6

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
  274 F.3d 1371 (Fed. Cir. 2001)................................................................................8

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  607 F. Supp. 3d 464 (D. Del. 2022)..........................................................................6

*Monsanto Co. v. Ralph,*
382 F.3d 1374 (Fed. Cir. 2004)....................................................................9

*Primrose Operating Co. v. Nat'l Am. Ins. Co.,*
382 F.3d 546 (5th Cir. 2004) ...........................................................1, 10, 12

*Promethean Insulation Tech. LLC v. Sealed Air Corp.,*
No. 2:13-CV-1113-JRG-RSP, 2015 WL 11027038 (E.D. Tex. Oct. 13, 2015) ..................4, 14

*State Indus., Inc. v. Mor-Flo Indus., Inc.,*
883 F.2d 1573 (Fed. Cir. 1989).....................................................................9

*T-Rex Property AB v. Regal Entertainment Group,*
No. 6:16-CV-927-JDK-KNM, 2019 WL 4940763 (E.D. Tex. July 16, 2019).....................3, 4

*Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.,*
425 F.3d 1366 (Fed. Cir. 2005).....................................................................8

*United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty.,*
*State of Miss.,* 80 F.3d 1074 (5th Cir. 1996).............................................1

*Viterbo v. Dow Chem. Co.,*
826 F.2d 420 (5th Cir. 1987) ........................................................................1

**Other Authorities**

Fed. R. Civ. P. Rule 33(d)..............................................................................13

Fed. R. Civ. P. Rule 37 ..................................................................................10

Fed. R. Civ. P. Rule 37(c)(1) .........................................................................10

Fed. R. Evid. Rule 702...................................................................................1

██████████████████████████████████████████

## I.   **INTRODUCTION**

Westport seeks to exclude various opinions of Bosch LLC's damages expert, Douglas Kidder.  Westport's motion begins with challenges to the weight, not the admissibility, of his opinions.  Westport's motion concludes with a grab bag of arguments that Bosch did not comply with its discovery obligations but cannot show any prejudicial failure to disclose.  The Court should deny the motion.

## II.   **LEGAL STANDARD**

An expert witness may provide opinion testimony only "if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702.

"[I]n determining the admissibility of expert testimony," a court "should approach its task 'with proper deference to the jury's role as the arbiter of disputes between conflicting opinions.'" *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996).  "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."  *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).  "It is the role of the adversarial system, not the court, to highlight weak evidence." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

## III.   **ARGUMENT**

### A.   **Westport's Challenges To Mr. Kidder's Opinions On The ████████ Agreement Go To Weight, Not Admissibility.**

Mr. Kidder appropriately relies on a ██████ agreement between licensees Bosch LLC,

██████████████████████████████████████████

███████████████████████████████████████████ along with a follow-on agreement between the Bosch and ████████ entities, in forming his opinions. Ex. 1 (Kidder Rep.), at § 7.2.1-7.2.3. The ████████ ███████████ involving "███████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████. Mr. Kidder uses the ███████████ agreement as an input to the hypothetical negotiation to make an upward adjustment—that is, an adjustment in favor of Westport—on the negotiating range for the hypothetical negotiation.

Mr. Kidder showed that the ███████████ is both economically and technologically comparable to the hypothetical negotiation. *See* Ex. 1 (Kidder Rep.), at ¶¶ 119-121 (relying on Dr. Klopp for technological comparability); *id.* at ¶¶ 125-131, 190-196 (evaluating and adjusting for economic comparability). Having shown the requisite comparability, Westport's challenges to the ███████████ go to weight, not admissibility. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) ("[T]he fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility."); *ActiveVideo Networks, Inc. v. Verizon Comm'cns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("The degree of comparability of the [ ] license agreements as well as any failure on the part of [the] expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion." (citation omitted)).

**1.** Westport first challenges Mr. Kidder's analysis converting the ███████████ ███████████████████████████████████████████. Mot. 3-7. Mr. Kidder explained that he arrived at his per-unit rate by looking at sales data from ███████████████████████ ███████████████████████████████████████████" and



identified "████████████████████████████████████." Ex. 1 (Kidder Rep.), at ¶ 129. This "███████████████████████████████████████████ *Id.* Taking ████████████████████████████████████████████████ ████████████████████████████████████████████████████████. *Id.,* at ¶ 130 & n.183.

Westport challenges only Mr. Kidder's identification of the number of units sold under the license. The ████████████ itself defines the licensed products: ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████

Mr. Kidder thus used the number of Bosch injectors sold during the relevant period (namely, from ██████████████████████) to the expiration of the last-to-expire of the licensed ████ patents on ██████████) as the licensed products. This accounted for both the accused injectors and the number of licensed products covered by the ████████████ There is no requirement to link specific Bosch part numbers to ██████████ patents—particularly here, because (1) ██████ itself identified the accused products through the litigation and (2) the agreement is not limited to ██████████████████████████. Mr. Kidder used his expertise to identify an appropriate royalty base of injectors sold during the period of the license.

Mr. Kidder's explanation for his per-unit royalty is in line with other cases evaluating whether an expert sufficiently explained how to convert a lump-sum agreement into a running royalty. For example, in *T-Rex Property AB v. Regal Entertainment Group*, the expert looked at

the amount of the lump sum, the "gross revenues for the entire period" of the license, and calculated "an effective royalty rate." No. 6:16-CV-927-JDK-KNM, 2019 WL 4940763, at *7 (E.D. Tex. July 16, 2019). That analysis "provided a sufficient explanation as to 'how [the lump-sum license agreement] appl[ies] to the facts of the case'" and was admissible. *Id.* (citation omitted); *see also Affinity Labs of Texas, LLC v. Ford Motor Co.*, No. 1-12-CV-580, 2014 WL 12638158, at *3 (E.D. Tex. Aug. 22, 2014) (admitting testimony where expert "provided a chart as part of her expert report detailing her conversion of the Apple lump-sum royalty to per-unit royalty"). Mr. Kidder's analysis is more than a sufficient explanation. Ex. 1 (Kidder Rep.), at ¶¶ 129-130. If Westport believes that Mr. Kidder used the wrong inputs into his opinion on the implied per-unit royalty, that is a basis for cross-examination, not exclusion. *Id.* ("The issues that Affinity raises regarding Ms. Davis's calculations are a matter of weight for the jury to determine, rather than a matter of exclusion.").

2. Westport's other complaint about the per-unit royalty is a discovery issue, not a *Daubert* challenge. Mot. 4-5. Westport asserts that Bosch's interrogatory responses "never disclosed its belief that a conversion of the ▮▮▮▮▮▮▮▮ payment to a running royalty was appropriate," and thus Mr. Kidder's opinions should be excluded. Mot. 4-5. Westport's interrogatory called for expert opinion, not facts, and Bosch appropriately objected on that basis. Ex. 2 (6/27/2025 Rog Response), at 37-39). Westport did not move to compel a further response, and since a "party is not entitled to obtain early disclosure of expert opinions via interrogatory," this is no basis for striking Mr. Kidder's opinions. *Promethean Insulation Tech. LLC v. Sealed Air Corp.*, No. 2:13-CV-1113-JRG-RSP, 2015 WL 11027038, at *2 (E.D. Tex. Oct. 13, 2015). Westport also asked Bosch's 30(b)(6) deponent questions about the ▮▮▮▮▮▮, and he answered to the best of his knowledge. *See* Mot. 6. It was not the 30(b)(6) deponent's job to

4

calculate a royalty rate from a lump sum; that was Mr. Kidder's purview.

**3.** Westport also asserts that the ████████████ is not economically comparable to the hypothetical negotiation. Mot. 7-8. Westport does not challenge technological comparability. Once an expert meets "a showing of 'baseline comparability,'" the degree of comparability of license agreements is a "factual issue[ ] best addressed by cross examination and not by exclusion." *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1374 (Fed. Cir. 2020). None of Westport's challenges rise to the level of exclusion.

As for economic comparability, Westport argues that "[a]s a general proposition, settlement agreements are not comparable to license agreements outside the litigation context." Mot. 7. But the Federal Circuit has "previously explained that prior settlements can be relevant to determining damages." *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1299 (Fed. Cir. 2019). Numerous cases thus permit reliance on settlement agreements, provided the expert acknowledges and accounts for that circumstance in his analysis. *See, e.g., AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1335 (Fed. Cir. 2015). Here, Mr. Kidder expressly addressed the nature of the settlement and how that would affect its influence on the hypothetical negotiation, including that "the parties would recognize that the ████████████████ represents both an overestimate and an underestimate. It is an overestimate because my calculation of ██████ ████ does not include sales of injectors by Robert Bosch GmbH that were subsequently imported into the U.S., and it is an underestimate because [for purposes of the hypothetical negotiation exercise] the Patents-in-Suit are assumed to be valid and infringed." *See* Ex. 1 (Kidder Rep.), at ¶¶ 192-193.

Westport also argues that the ██████ agreement is not comparable because it was entered into in ████. Mot. at 8. But Mr. Kidder specifically accounts for this time difference, explaining

that the ██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 1 (Kidder Rep.), at ¶ 128. Westport's

disagreement with that conclusion can be explored through cross-examination, not exclusion. *Headwater Rsch. LLC v. Samsung Elecs. Co.*, No. 2:22-CV-00422-JRG-RSP, 2024 WL 4730474, at *2 (E.D. Tex. Nov. 8, 2024) ("There is also no doubt that Dr. Ugone extensively considers the differences between the hypothetical negotiation and the settlement agreements, in an effort to establish the proper economic comparability. As such, Headwater's argument amounts only to a disagreement with Dr. Ugone's inputs and analysis. Such disagreements are best addressed through vigorous cross-examination.").

Westport's other challenges are about the entities to the ██████████████ versus hypothetical negotiation and the number of patents at issue. Mr. Kidder acknowledged and addressed those differences, *see* ¶ 126 (discussing number of asserted patents and parties to the ████████████), and the law requires nothing more to demonstrate comparability. *Headwater*, 2024 WL 4730474, at *2. Even Westport's cited cases confirm that "a license need not be 'perfectly analogous' in order to be comparable" so long as the expert "account[s] for any differences between the license and the royalty agreement that would be expected to flow from a hypothetical negotiation involving the patents in suit." *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 501 (D. Del. 2022) (excluding license for failure to apportion).

**4.** Westport's requested relief is not justified. Mr. Kidder relies on *both* the ██████ ██████ and Bosch LLC's profits to arrive at his royalty rate, so exclusion of one (or the other)

does not require exclusion of his ultimate opinion. And much of Mr. Kidder's opinion is separate from the ████████████; for example, the *form* of the royalty is based on "[t]he variance in the prices of the accused prices [sic, products]" as between aftermarket sales and sales to car makers. Ex. 1 (Kidder Rep.), at ¶ 186. Westport does not make any challenges to Mr. Kidder's analysis of the royalty base. And his opinion about the royalty *rate* considers either or both of Bosch LLCs profits and the ████████████, among other evidence. *Id.,* at ¶¶ 189-195. Moreover, exclusion of the ████████████ would only lower Mr. Kidder's ultimate opinion on damages because the per unit rate derived from █████ provides Mr. Kidder's upper end of the bargaining range. Ex. 3 (Kidder Depo. Tr.), at 142:25-144:17. Without the █████ comparison, Mr. Kidder's conclusion would be a per-unit royalty rate████████████ based on Bosch LLC's actual profits. *See id.*; *see also* Ex. 1 (Kidder Rep.), at ¶¶ 8, 190. Accordingly, exclusion of the ████████████would not mean that Mr. Kidder's ultimate opinion on damages should be excluded.

B. <u>**Westport's Challenges To Mr. Kidder's Use Of Bosch LLC's Profits Go To Weight, Not Admissibility.**</u>

Westport argues that Mr. Kidder used Bosch LLC's profits as a cap on damages. He did not; Bosch LLC's profits are one input into his analysis and nowhere in his report does he treat profits as a cap. Mr. Kidder was well within the reasonable royalty and hypothetical negotiation framework in considering Bosch LLC's profits.

First, Mr. Kidder did not use profits as a cap, either in his affirmative opinion or in his rebuttal opinion. Mr. Kidder confirmed in his deposition "that [it is] not my opinion" that "if Robert Bosch, LLC, made no profit on sales of accused products, it would owe no royalty for its patent infringement." Ex. 3 (Kidder Depo. Tr.), at 73:24-74:3. Westport's own motion shows that Mr. Kidder treated Bosch LLC's profits a data point on which "the parties would have focused." Ex. 1 (Kidder Rep.), at ¶ 157; Mot. 10. And Westport goes on to acknowledge the other inputs to

7

Mr. Kidder's analysis, including the ██████████, technological apportionment, and the *Georgia-Pacific* factors. Mot. at 10-11. Mr. Kidder is explicit in relying on multiple inputs to his analysis. For example, he opines that the parties "█████████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████).

Second, under *Georgia-Pacific* factor 8, "The established profitability of the product made under the patent; its commercial success; and its current popularity," Bosch LLC's profits are relevant to the hypothetical negotiation. *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). The Federal Circuit has explained that "an actual infringer's profit margin can be relevant to the determination of a royalty rate in a hypothetical negotiation." *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001). Thus, the Federal Circuit has affirmed awards where "the district court properly permitted the jury to consider damages evidence about [infringer's] profits." *Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1378 (Fed. Cir. 2005), overruled on other grounds by *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348 (Fed. Cir. 2009). Westport also suggests it was error to "start[] with Bosch LLC's purported profits," but cites no case supporting any blanket prohibition on using profits to "start" the hypothetical negotiation. Mot. at 10.

Third, none of Westport's cases support excluding an expert who considers a parties' profits as an input to the hypothetical negotiation. Instead, one of Westport's cited cases faults the factfinder for treating an infringer's profits as an absolute cap on damages—a case in which the factfinder felt bound to "ensur[e] the ongoing royalty rate it awarded would 'leave some room for profit' by [infringer] at its current prices," *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013). Others simply reject the infringer's argument that its own profits

must set the upper bound of a reasonable royalty—a proposition that the Federal Circuit has rejected because "[t]he determination of a reasonable royalty … is based not on the infringer's profit margin, but on what a willing licensor and licensee would bargain for at hypothetical negotiations on the date infringement started." *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *see also Monsanto Co. v. Ralph*, 382 F.3d 1374, 1384 (Fed. Cir. 2004) (rejecting argument that jury's award should be vacated for exceeding infringer's expected profits); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004) (rejecting argument that damages award was "unreasonable as a matter of law because it would have left [infringer] selling the accused product well below cost."). And that willing licensor and licensee framework is exactly the analysis that Mr. Kidder undertook in his opinions. Mr. Kidder's opinions are thus admissible and helpful to the factfinder.

### C. Bosch Complied With Its Discovery Obligations.

Westport complains that Bosch LLC did not timely produce three categories of documents. Bosch complied with all of its discovery obligations, and Westport's requests for relief are not justified in any event.

**Bosch's** ███████████████ Bosch produced the spreadsheet BOSCH_WP_0092027–37 within the deadline set by the Court. Bosch first produced other responsive financial information to address Westport's interrogatories. Ex. 4 (Supplemental Response To Interrogatory No. 5 (6/6/2025)) (identifying the spreadsheets BOSCH_WP_0075315 and BOSCH_WP_0075080). Westport then moved to compel additional responses to certain interrogatories. Dkt. 155. At the hearing on Westport's motion to compel, ███████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████ The Court granted-in-part Westport's motion to compel and set a deadline of November 19, 2025 for Bosch's additional responses. Pursuant to the Court's order and Westport's representations at the hearing about what further information it needed, Bosch produced BOSCH_WP_0092027–37 (the document Westport now claims was produced too late) on November 19, 2025. Mot. at 11. Bosch's production on November 19, 2025 was therefore timely, or at least substantially justified as it complied with the Court's order ████ ██████████████████████████████████████████ on what discovery it felt was missing from Bosch's prior responses. Fed. R. Civ. P. 37(c)(1). If Westport believed the Court's deadline was prejudicial or required some change to the expert discovery schedule, it should have objected at that time, not now.

Even if the Court considers Bosch's production untimely under Rule 37, the *Primrose* factors do not justify exclusion. *Primrose*, 382 F.3d at 563. First, the failure to disclose was substantially justified—Bosch reasonably believed its original disclosures were sufficient, as explained in its opposition to Westport's motion to compel further responses and at the hearing on the motion. *See* Dkt. 157. The Court agreed-in-part with Westport, order substantially narrower responses than what Westport was originally requesting, and Bosch then fully complied with the Court's order to supplement once it understood what Westport was truly requesting. Dkt. 163. Any late disclosure is also justified because Mr. Dell's expert report was Westport's first disclosure of a damages theory that turns on ███████s. *See* Ex. 5 (Supplemental Response To Interrogatory No. 10 (Oct. 29, 2025)) at 39.

Second, the evidence is important to Bosch's responsive damages theory. ██████████ ████████████████████████████████████████████████ As explained in Bosch's *Daubert* motion to exclude Mr. Dell (Dkt. 180), Bosch believes this is improper because

Bosch **LLC**, not Bosch **GmbH**, is the accused infringer and agreed-upon party to the hypothetical negotiation. Indeed, Westport agrees: "both experts agree that the only parties at the negotiating table would be Westport and a single Bosch entity," i.e., Robert Bosch LLC. Mot. 8. If the Court denies Bosch's *Daubert* motion and allows Mr. Dell to testify about Bosch GmbH's █████, then Bosch LLC must be able to contrast that evidence with evidence about Bosch LLC's ██ t ████. Indeed, █████████████████████████████████████████ ██████████ is one reason Mr. Kidder's rebuttal report uses ████████ in his analysis. And it highlights that this evidence is not duplicative of other evidence in the record—it is evidence specific to Bosch LLC and to █████████████████ margins as in the two documents Westport identifies as equivalent (BOSCH_WP_0075456A.xlsx and BOSCH_WP_0075457A.xlsx). Put differently, Westport has endorsed a damages analysis that relies on ████████, and Bosch LLC simply responded with its own ████████████. Mr. Kidder could not use █████████████ to respond to an analysis about ████████ That makes this evidence highly relevant to Bosch's response to Westport's expert's damages theory— a theory which was not disclosed until his report—and weighs in favor of permitting consideration of the ████████

Third, there is minimal prejudice to Westport. Westport was still able to depose Mr. Kidder about the ████████ and his opinions on BOSCH_WP_0092027–37. Ex. 3 (Kidder Depo. Tr.), at 121:16-132:18. Westport also could have mitigated any prejudice by (1) disclosing earlier its damages theory that turns entirely on ████████ (2) moving to compel earlier in the case, or (3) asking for an extended schedule for expert discovery once it succeed on its motion to compel.

Fourth, Westport "asserts it will suffer prejudice regardless of whether the information is added, or trial is delayed," making this factor "neutral." *Finesse Wireless, LLC v. AT&T Mobility,*

*LLC*, No. 221CV00316JRGRSP, 2022 WL 17875791, at *5 (E.D. Tex. Dec. 21, 2022).

In sum, the four *Primrose* factors support permitting consideration of the ████████ from Bosch LLC.

Finally, as with its other requests, Westport's requested relief is not justified. As explained above, Mr. Kidder relies on both ████████ and the ████████████ to arrive at his ████ per unit royalty. Excluding only one of the two inputs would not justify exclusion of his entire or ultimate opinion, and Westport does not contend otherwise. Therefore, Ex. 1 (Kidder Rep.), at ¶¶ 8, 9, 189, 190, 192, 195, 206, and 207 and Exhibit DGK-3A should not be struck. Bosch agrees that ¶¶ 159-62, 183, and 249 depend on the ████████

**Noninfringing alternatives:** Westport recycles its arguments from its motion to strike opinions of Dr. Klopp, Bosch's technical expert. Mot. 13-14. As explained in Bosch's opposition to Westport's motion to strike Dr. Klopp, Dr. Klopp's opinions on noninfringing alternatives were properly disclosed and are appropriate to present to the jury. *See* Opp. to Klopp at § II.B. In any event, Westport's request is not justified. Paragraphs 8, 9, 195, 206, and 207 and Exhibit DGK-3A do not even mention noninfringing alternatives. Paragraphs 174-176, 189, and 194 rely at least in part on Bosch's interrogatory response on noninfringing alternatives, not solely on Dr. Klopp's opinions, and therefore should not be struck. Bosch agrees that paragraphs 170-173 rely on Dr. Klopp's opinions on noninfringing alternatives.

**Amplified versus non-amplified accused products:** Mr. Kidder identifies the number of accused products that are considered "non-amplified" injectors. Ex. 1 (Kidder Rep.), at ¶ 205. Mr. Kidder's quantification of non-amplified injectors is proper for three reasons.

First, Westport cites Bosch's *first* supplemental response to Westport's Interrogatory No. 16. Mot. at 14. But Bosch's *second* supplemental response (9/24/2025) to Westport's

Interrogatory No. 16 identified "documents pursuant to Federal Rule of Civil Procedure 33(d) from which the burden of deriving or ascertaining responsive information will be substantially the same for Westport as it would be for Bosch."  See Robert Bosch LLC's Third Supplemental Response To Defendant's Second Set Of Interrogatories (No. 15).



Thus, when considering Bosch's complete responses to Westport's interrogatories, the differences between amplified and non-amplified injectors was properly disclosed.

Second, Westport's interrogatory improperly called for premature expert opinion. "A party is not entitled to obtain early disclosure of expert opinions via interrogatory." *Promethean*, 2015 WL 11027038, at *2. To determine whether "differences in the structure or operation of any of the Accused Fuel Injectors … are, or may be, material to the infringement issues in this litigation," Bosch's technical expert needed to examine the accused devices and prepare his opinions. Those opinions were included in his expert report, Ex. 1 (Klopp Rep.), at ¶¶ 112-113, 156-157, 253-257, and therefore were timely disclosed.

Third, ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████ Bosch initially understood that all accused CRI3 series injectors contained the accused ████████████ and responded accordingly in its original

interrogatory response. Mot. at 14. Bosch later learned that a small number of newer ███ injectors have a different configuration. Bosch thus supplemented its response and provided the Bates numbers of documents and drawings showing the difference. *Supra* 13-14.

Mr. Kidder appropriately quantified both the ████████████████████████████ ████████████████████████ in his damages analysis. Westport cannot fault Bosch for ████████████████████████████████████████████████████ ████████ providing the jury with information needed to determine the number of accused infringing units. Mr. Kidder's analysis is thus consistent with Bosch's response to Westport's Interrogatory No. 14, which asked Bosch to identify any unit "excluded from any calculation of allegedly infringing units or revenues in this case (including, for example, as part of a royalty base for damages purposes) *for any reason other than your contentions of non-infringement*." Ex. I at 10 (emphasis added).

Finally, Westport's request to strike is not justified. For example, Westport asks to strike paragraph 53 of Mr. Kidder's report, but that paragraph does not quantify the ████████████ ████████████, it merely refers to Dr. Klopp's opinion that there are different types of hydraulic couplers. There is nothing improper or late in referring to Dr. Klopp's infringement opinions. Likewise, paragraphs 205–07, and Exhibits DGK-3A, -3B, and -3C of Mr. Kidder's report should not stricken in their entirety because they also include Mr. Kidder's calculations of all accused products, which Westport has not moved to strike.

## IV. <u>CONCLUSION</u>

The Court should deny Westport's motion to exclude the opinions of Mr. Kidder.

Dated: December 22, 2025

**Respectfully submitted,**

 /s/ *Eric H. Findlay*
Bas de Blank (CA State Bar No. 191487)
basdeblank@orrick.com
Harrison Geron (CA State Bar No. 339851)
hgeron@orrick.com
**Orrick, Herrington & Sutcliffe, LLP**
1000 Marsh Road
Menlo Park, CA
94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

Michael C. Chow (CA State Bar No. 273912)
mchow@orrick.com
**Orrick, Herrington & Sutcliffe, LLP**
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
Telephone: +1 949 567 6700
Facsimile: +1 949 567 6710

Angela Colt (NY State Bar No. 5153465)
acolt@orrick.com
**Orrick, Herrington & Sutcliffe, LLP**
51 West 52nd Street
New York, NY 10019
Telephone: +1 212-506-5000
Facsimile: +1 212-506-5151

Eric H. Findlay (Texas State Bar No. 00789886)
efindlay@findlaycraft.com
Brian Craft (Texas State Bar No. 04972020)
bcraft@findlaycraft.com
**Findlay Craft, P.C.**
7270 Crosswater Avenue, Suite B
Tyler, Texas 75703
Telephone: +1 903-534-1100
Facsimile: +1 903-534-1137
*Attorneys for Plaintiff Robert Bosch LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 22, 2025, the foregoing was filed electronically with the clerk of the United States District Court for the Eastern District of Texas and served on all counsel of record via electronic mail.

*/s/ Eric H. Findlay*
Eric H. Findlay

