IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ROBERT BOSCH LLC, | § |
| *Plaintiff*, | § |
| | § |
| v. | § Case No. 2:23-cv-00038-JRG-RSP |
| WESTPORT FUEL SYSTEMS | § |
| CANADA INC., | § |
| *Defendant*. | § |
| | § |

## MEMORANDUM ORDER

Before the Court is Plaintiff Robert Bosch LLC's Daubert Motion Regarding Opinions of Stephen Dell. **Dkt. No. 180**. Having considered the motion, and for the reasons discussed below, the motion is **DENIED.**

## I.   BACKGROUND

Bosch has filed a declaratory judgment action against Westport Fuel Systems Canada Inc for non-infringement of U.S. Patent Nos. 6,298,829 ("'829 Patent") and 6,575,138 ("'138 Patent") (together, the "asserted patents"). The asserted patents are generally directed to a fuel injection valve for use in combustion engines. Dkt. No. 1 at 1-2. Westport counterclaims and seeks infringement damages, based on Bosch's CRI3 fuel injectors.

## II.   LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

1

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme

Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## III.    ANALYSIS

### A.    Royalty Rate

In its motion, Bosch argues that Mr. Dell's analysis improperly adds Robert Bosch GmbH, a "non-party," to his hypothetical negotiation analysis. Dkt. No. 180 at 7. Bosch argues that Mr. Dell has provided "no basis" to justify inclusion of Robert Bosch GmbH. Bosch contrasts its relationship with Robert Bosch GmbH's with the "holding company" relationship in *Union Carbide Chemicals & Plastics Technology Corp. v. Shell Oil Co.*. 425 F.3d 1366, 1378 (Fed. Cir. 2005). There, the Federal Circuit found inclusion of the parent company relevant, based on the "reality that the economic impact on the [parent corporation] would weigh heavily in all decisions." *Id.* Bosch argues that because Mr. Dell has failed to explain the relevance of Robert Bosch GmbH's relationship with Bosch, there is no basis for its inclusion.

Bosch's Motion also argues that regardless of whether Robert Bosch GmbH's relationship is properly included in the hypothetical negotiations, Mr. Dell's report is nonetheless unreliable because he failed to consider the unique characteristics of Robert Bosch GmbH's "supplier" relationship with Bosch. *Id.* at 10. Bosch cites its own damages expert, Douglas Kidder, to support its position. In his report, Mr. Kidder analogizes Bosch's relationship with Robert Bosch GmbH to Best Buy and Apple, where "The gross profit to Apple from selling iPhone[s] has nothing to do with the gross profit to BestBuy for selling an iPhone." *Id.* at 10-11. Bosch argues that because

Mr. Dell "fails to acknowledge the different economic positions of the two entities," Mr. Dell improperly relied on Robert Bosch GmbH's profits in his royalty rate calculation.

In its response, Westport cites to ¶ 69 of Mr. Dell's report, where Mr. Dell identifies Bosch, not Robert Bosch GmbH as the party "negotiating opposite Westport." Dkt. No. 205 at 5. Westport argues, however, that Robert Bosch GmbH's profits are relevant to Mr. Dell's analysis, because the two companies work "hand-in-glove to commercialize and profit from the accused products." *Id.* at 6, 10. Westport adds that prior licensing agreements negotiated by Bosch cover "its affiliates" – such as Robert Bosch GmbH. *Id.* (Dynamotive License). Westport argues that because this license agreement demonstrates that Bosch would consider its corporate parent in license negotiations, this close corporate integration is directly analogous to *Union Carbide*.[1] Westport argues that Bosch and Robert Bosch GmbH's "consolidated" financial statements demonstrate close economic integration. *Id.* at 11. Westport distinguishes Bosch's cited "non-party" caselaw, because the parties there did not exist at the time of the hypothetical negotiations, were "different companies with different interests," or the wrong parties entirely were named.

The Court is persuaded by Westport's reliance on *Union Carbide* and finds Bosch's cited caselaw sufficiently distinguishable. Robert Bosch GmbH is economically integrated with Bosch, as evidenced by their shared financial statements and inclusion in each other's licensing agreements. While not directly analogous to *Union Carbide*, where the parent company was merely a holding company, the Court is of the opinion that shared financial statements, inclusions in each other's contracts, and other indicia of shared *economic* integration sufficiently demonstrates the parent's economic relevance in a hypothetical negotiation. Unlike Best Buy and Apple, two legally and financially distinct entities, who at times compete for sales, the inclusion

---

[1] In *Union Carbide*, the Court noted that consideration was proper because "the holding company would not enter any negotiation without considering the competitive position of its corporate parent." 425 F.3d at 1378.

of Bosch's parent company, Robert Bosch GmbH's profit figures, is directly relevant to the calculation of a reasonable royalty rate for Bosch. Therefore, Robert Bosch GmbH's profit figures are sufficiently relevant, and Mr. Dell's report is sufficiently reliable for admission.

Because Mr. Dell properly considered Robert Bosch GmbH's profit figures to calculate the royalty rate, this royalty rate is sufficiently reliable for admission. Therefore, the Court will not strike Mr. Dell's royalty rate.

### B.    Royalty Amount

In its Motion, Bosch argues that Mr. Dell's calculated royalty rate is unreliable, because it results in a greater dollar amount than his estimated per unit profit for Bosch. Bosch argues that this figure is unreliable, because it excludes relevant evidence with "zero explanation," insofar as it ignores Bosch's profits and mistakenly relies on Robert Bosch GmbH's profits. Dkt. No. 180 at 11.

Westport argues that because "the law does not require Bosch to profit from its infringement," Bosch's profits are not a "ceiling" on a reasonable royalty estimate. Dkt. No. 205 at 13. Westport contends that because Bosch's parent-subsidiary relationship with Robert Bosch GmbH "controls" Bosch's profits, Bosch's apparent economic loss does not represent the alleged infringement's "total economic value" to Bosch. *Id.* Westport adds that courts routinely find such "profit-split methodology," as "sufficiently tied to the facts of the case." *Id.* at 14.

The court is not persuaded by Bosch's arguments regarding Mr. Dell's calculated royalty amount. The Federal Circuit has repeatedly held that "an infringer's net profit margin is not the ceiling by which a reasonable royalty is capped." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013) (*citing Golight, Inc. v. Wal–Mart Stores, Inc.*, 355 F.3d 1327,

1338 (Fed.Cir.2004)). Therefore, Bosch's objection to Mr. Dell's negative profit calculation cannot be sustained.

Mr. Dell properly explains why his profit calculations relied on Robert Bosch GmbH's profits – because of its unique economic relationship with Robert Bosch LLC. Given that this court routinely allows such parent-subsidiary profit-split methodology, Mr. Dell's royalty amount calculations are sufficiently reliable for admission.

## IV.    **CONCLUSION**

For the reasons discussed above, Bosch's motion is **DENIED**.

**SIGNED this 2nd day of March, 2026.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE