## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ROBERT BOSCH LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:23-cv-00038-JRG-RSP |
| WESTPORT FUEL SYSTEMS | § | |
| CANADA INC., | § | |
| *Defendant*. | § | |
| | § | |

### MEMORANDUM ORDER

Before the Court is Defendant Westport Fuel Systems Canada Inc's Motion to Strike Certain Opinions of Dr. Richard W. Klopp. **Dkt. No. 187**. Having considered the Motion, and for the reasons discussed below, the Motion is **GRANTED** as to the defenses of Obviousness-Type Double Patenting ("ODP") and enablement/indefiniteness of the "fluid passage" term. The Motion is otherwise **DENIED.**

### I.    BACKGROUND

Bosch has filed a declaratory judgment action against Westport Fuel Systems Canada Inc. for non-infringement of U.S. Patent Nos. 6,298,829 ("'829 Patent") and 6,575,138 ("'138 Patent") (together, the "asserted patents"). The asserted patents are generally directed to a fuel injection valve for use in combustion engines. Dkt. No. 1 at 1-2. Westport counterclaims and seeks infringement damages, based on Bosch's CRI3 fuel injectors.

### II.    LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product

1

of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while

exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## III.   ANALYSIS

### A.   Invalidity Theories

#### 1.   *Obviousness-Type Double Patenting (ODP)*

Westport seeks to strike portions of Dr. Klopp's report that discuss ODP, because the Court ruled Bosch's ODP theories "untimely." Dkt. No. 187 at 7. Bosch's response seeks relief coextensive with its objections to the Court's ruling. Dkt. No. 212 at 5. Because Bosch's ODP theories are untimely, they are not part of this case.[1] Therefore, the Court grants Westport's Motion to strike the portions of Dr. Klopp's report that discuss ODP.

#### 2.   *"fluid passage" Term – Indefiniteness and Enablement*

In its Brief, Westport argues that the portions of Dr. Klopp's report that opine on indefiniteness and enablement of the "fluid passage" term are untimely. *Id.* at 2-3. Westport argues that this term is missing from any of Bosch's enablement-related invalidity contentions, and its indefiniteness theory was not briefed or argued in claim construction. *Id.*

Bosch argues that Local Patent Rule 3-6(a)(3)(A) permits amendments to invalidity contentions within 50 days of the Court's Markman order. Dkt. No. 212 at 4. Bosch argues that because the claim construction is not yet "final," they are merely waiting to amend. *Id.*

---

[1] On March 1, 2026, Judge Gilstrap overruled Bosch's Objections to the Order.  Dkt. No. 317.

Bosch's arguments are not persuasive. Because a magistrate judge's non-dispositive order becomes final upon signing, and not when objections are sustained or overruled, the 50-day window has long since passed. Furthermore, Bosch's different position at claim construction waived any indefiniteness arguments to the "fluid passage" term. Therefore, Bosch's indefiniteness and enablement theories as to the "fluid passage" term are untimely. Because Bosch cannot introduce these theories, the portions of the report of Bosch's expert, Dr. Klopp, that discuss indefiniteness and enablement theories as to the "fluid passage" term likewise cannot be introduced. Therefore, the Court grants Westport's motion to strike these portions.

### B.    Amesim and Amerun Models

In its Motion, Westport argues that because Bosch untimely disclosed the Amesim models, any use by Dr. Klopp should be stricken. Dkt. No. 187 at 10. Westport asserts they first obtained the Amesim model on October 24, 2025, days before the close of discovery, and the model's data on December 19, 2025, after the close of discovery. Dkt. No. 238 at 3. Westport adds that at "least as early as June 2025, however, Bosch knew that Dr. Klopp intended to rely on an Amesim model, but failed to disclose it to Westport in Bosch's June 2025 supplement." *Id.* Westport argues that because of these belated disclosures, the Court should strike the portions of Dr. Klopp's report that rely on the Amesim and Amerun Models.

Bosch asserts that Bosch made available the Amesim models more than two months prior to the close of fact discovery, something they argue Westport's reply concedes. Dkt. No. 251 at 1; *See also* Dkt. No. 238 at 3 ("… Bosch's CRI3-20 Amesim model in *September*…") (emphasis added). Bosch adds that the October disclosure was merely the model for the "non-amplified" CRI3 injector, which they argue was a timely response to Westport (later) accusing the non-amplified CRI3 Injector. In its sur-reply, Bosch argues that Westport cannot make timeliness

arguments to the "raw data," because the raw data is merely the model's results that Westport's experts could have obtained on the provided Amerun software. *Id.* at 1-2.

The Court is not persuaded that Bosch was untimely in disclosing the Amerun and Amesim models, given all of the circumstances. While Bosch first knew in June 2025 that Dr. Klopp planned to rely on these models, its September disclosure for the amplified, and October disclosure for the non-amplified, CRI3 Injectors was timely because the amplified CRI3 Injectors model was disclosed long prior to the close of discovery, and because the non-amplified CRI3 Injector model was timely disclosed in response to new accusations. Finally, Westport's "raw data" arguments are unpersuasive. Westport had the access to the Amerun software, from which it could have obtained the same "raw data" once it received the Amesim model. Therefore, the Court will not strike the portions of Dr. Klopp's report that rely on Amerun and Amesim models.

## C.  Non-Infringing Alternatives

### 1.  Timeliness

Westport argues that because Bosch failed to properly disclose its non-infringing alternative (NIA) theories in discovery, Dr. Klopp's NIA theories should be excluded. Dkt. No. 187 at 9-10. Westport argues that because Bosch "never identified" a "modified CRI3 injector" in discovery, Dr. Klopp's NIA opinions should be stricken. *Id.*

In its reply, Bosch cites to two disclosures in its interrogatory responses that sufficiently identify the NIA theories in Dr. Klopp's report. Dkt. No. 212 at 5. Bosch argues that prior caselaw does not require that it identify its NIA as a product. *See Empire Tech. Dev. LLC v. Samsung Elecs. Co.*, 2025 WL 1669060, at *3 (E.D. Tex. June 12, 2025) ("[plaintiff] does not cite any authority for its proposition that an expert must identify specific products as NIAs").

The court finds Dr. Klopp's NIA opinions were sufficiently disclosed. Like *Empire Technology*, Westport fails to cite authority that requires Bosch to identify specific products as NIAs. Instead, Bosch's interrogatory responses identified two[2] NIA examples, which they argue map to Dr. Klopp's report.[3] Regardless of their reliability, the NIA theories in Dr. Klopp's report were adequately disclosed.

### 1. Reliability

Westport argues that Dr. Klopp has failed to identify any acceptable or available NIAs, because he (1) impermissibly included the accused product in his NIA, and (2) because he included an invention patented at the time of the hypothetical negotiations. Dkt. No. 187 at 12-13. Westport argues because "It is well-established that an instrumentality accused of infringement cannot be used as a non-infringing alternative," a modified CRI3 Injector is not an acceptable NIA. *Citing CLO Virtual Fashion Inc. v. Zhejiang Lingdi Digital Tech. Co.*, 2025 WL 1888626, at *2 (E.D. Tex. July 8, 2025). Westport cites to *AstraZeneca AB v. Apotex Corp.* to argue that because U.S. Patent No. 5,779,149 ("Hayes Patent") was in force at the time of the 2005 hypothetical negotiations, it cannot be properly considered as an available alternative. *Id.*; 782 F.3d 1324, 1340 (Fed. Cir. 2015).

Bosch first notes that Dr. Klopp does not use the accused product as an NIA. Dkt. No. 212 at 8. Bosch argues that Dr. Klopp's NIA modifies the accused injector to specifically avoid the "elongated valve needle" present in the asserted patents. *Id.* As to timing, Bosch argues that

---

[2] "(1) 'fuel injectors with the features identified in the Background section of the Asserted Patents, including the fuel injectors disclosed in U.S. Patent Nos. … ,5,779,149 [Hayes]…' and (2) 'a fuel injector with a valve component that is configured to cooperate with a valve seat so as to seal and unseal that is not elongated would be a non-infringing alternative as to the '829 patent. As non-limiting examples, if the length of the valve component in the fuel injector is not significantly longer than its width or if the length of the valve component is less than or equal to its width, then the fuel injector would be a non-infringing alternative.'" Dkt. No. 212 at 5.

[3] "Dr. Klopp's NIA opinions at paragraphs 136-143 correspond with (1) and his NIA opinions at paragraphs 143-1453 correspond with (2)." Dkt. No. 212 at 5.

Westport misstates the law. Bosch cites to *Grain Processing*, which holds that "The critical time period for determining the availability of an alternative is the period of infringement for which the patent owner claims damages, i.e., the accounting period." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999). Bosch argues the Hayes Patent remains an acceptable NIA, because it was available (expired) in the six-year prior to this declaratory action.

In its reply and sur-reply, Westport and Bosch dispute the relevance of *Grain Processing* to NIA availability in a *reasonable royalty* context. Westport argues that because *Grain Processing* was a lost profits case, it is not applicable to a reasonable royalty NIA analysis. Dkt. No. 238 at 4. Bosch argues that because *Grain Processing* merely discusses NIA availability during the damages period, regardless of the broader context, the relevant section is broadly applicable. Dkt. No. 251 at 4.

Westport has failed to explain why *Grain Processing* does not apply here. Westport's cited case, *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, merely holds that in a reasonable royalty analysis, availability is less important, because while NIAs *eliminate* lost profits, NIAs only *reduce* the reasonable royalty amount. 2012 WL 3686736, at *4 (W.D. Pa. Aug. 24, 2012). While this case holds that a reasonable royalty NIA analysis is not identical, it does not speak to whether a court can consider NIAs available during the damages period, but not available the time of a hypothetical negotiation. The Court finds that *Grain Processing* does apply to a reasonable royalty NIA analysis.

Under *Grain Processing*, the relevant time period for the negotiated reasonable royalty license begins at the start of the damages period. Therefore, the Court can consider NIAs not available at the time of negotiation, and available during the damages period. While the hypothetical negotiations were to occur in 2005, the damages period here began in 2017. Because

the Hayes Patent expired in 2016, it remains available as an NIA for either lost profits, or a reasonable royalty. Finally, because Dr. Klopp did not put forward the accused product as an NIA, and because his NIA specifically avoided the asserted patents in light of Hayes, his report did not improperly rely on the accused products as an NIA. Therefore, Dr. Klopp's NIA analysis is sufficiently reliable for admission.

### D.    Claim Construction

In its Motion, Westport argues that Dr. Klopp failed to apply the Court's constructions of the terms "valve needle" and "valve member," and that Dr. Klopp improperly performed claim construction on the term "during actuation," which does not appear in any asserted patent's claims. Dkt. No. 187 at 13-15. Westport argues that Dr. Klopp uses "dictionary definitions" or "alleged prior art" to "unilaterally narrow" the terms "valve needle" and "valve member." *Id.* at 14. Westport argues that because Dr. Klopp's interpretations further narrow the Court's prior constructions, they are improper and should be stricken. Finally, Westport argues that because the term "during actuation" does not appear anywhere in the patents, Dr. Klopp's use of the term is unreliable, and thus must be stricken.

Bosch argues that Dr. Klopp merely applies the Court's construction of the terms "valve needle" and "valve member," to illustrate that the accused CRI3 Injectors do not infringe. Dkt. No. 212 at 11-12. Bosch adds that for the term "lift," Dr. Klopp added additional commentary to opine to inconsistencies in the report of Westport's Technical Expert, Michael Leshner. *Id.* Finally, Bosch argues that for the non-claim terms, Dr. Klopp's interpretations merely seek to illustrate CRI3 Injectors' noninfringement, and to clarify how a person of ordinary skill would interpret the plain and ordinary meanings of the terms. *Id.* at 15.

8

The Court is not persuaded that Dr. Klopp's report performs improper claim construction in his discussion of valves. While claim construction is a role reserved to the court, experts may opine as to how a person of ordinary skill would apply the court's construction, or opine as to whether a product practices the patent. While Westport argues that Dr. Klopp improperly construes the terms "valve needle" and "valve member," as long as he applies the Court's constructions when discussing the requirements of the claims, his discussion of the technology is proper.  However, as pointed out in ruling on the motion for summary judgment of non-infringement, "Bosch and Dr. Klopp are not permitted to substitute different wording for the claim language, which is not based on any claim construction sanctioned by the Court or agreed to by the parties, including 'during actuation' and changing the tense of the verbs 'activated/actuated' to 'activating/actuating.'" (Dkt. No. 310 at 4.  The Court expects that Dr. Klopp will adhere to the claim construction, while staying within the scope of his report.

## IV.    CONCLUSION

Having considered the Motion, and for the reasons discussed above, the Court is of the opinion that the Motion be **GRANTED** as to Obviousness Type Double Patenting ("ODP") and otherwise **DENIED**.

 SIGNED this 2nd day of March, 2026.

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

9