IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROBERT BOSCH LLC, | § | |
| *Plaintiff,* | § | |
| | § | Case No. 2:23-cv-00038-JRG-RSP |
| v. | § | |
| WESTPORT FUEL SYSTEMS | § | |
| CANADA INC., | § | |
| *Defendant.* | § | |

**MEMORANDUM ORDER**

Before the Court is Defendant Westport Fuel Systems Canada Inc's Motion to Strike Certain Opinions of Douglas Kidder. **Dkt. No. 185**. Having considered the Motion, and for the reasons discussed below, the motion to strike is **GRANTED** as to the identified late-produced financial information, and is otherwise **DENIED.**

## I.    BACKGROUND

Bosch has filed a declaratory judgment action against Westport Fuel Systems Canada Inc. for non-infringement of U.S. Patent Nos. 6,298,829 ("'829 Patent") and 6,575,138 ("'138 Patent") (together, the "asserted patents"). The asserted patents are generally directed to a fuel injection valve for use in combustion engines. Dkt. No. 1 at 1-2. Westport counterclaims and seeks infringement damages, based on Bosch's CRI3 fuel injectors.

## II.    LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data;

1

(c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry— whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts

underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

III.    **ANALYSIS**

    A.    **Orbital Settlement**

        *1.    Reliability*

Westport seeks to strike Mr. Kidder's royalty rate calculation, because it impermissibly relies on a prior Bosch settlement agreement ("Orbital Settlement"). Dkt. No. 185 at 3. Westport argues that because there is "no royalty rate within the four corners of the Orbital settlement agreement," and no explanation to "how the parties arrived at this lump sum settlement amount," Mr. Kidder had "no information" from this agreement to calculate his royalty rate. *Id.* at 4. More specifically, Westport argues that because the Orbital Settlement does not directly cover Bosch's products, it is missing a necessary analytical link necessary to calculate a per-unit royalty rate. *Id.* Westport argues that because courts routinely strike such "speculative" conversions, the Court should strike Mr. Kidder's royalty rate calculation. *Id.* at 4-5.

Bosch argues that Westport's dispute boils down to how many units were sold under the Orbital Settlement. Dkt. No 209 at 3. Bosch disputes Westport's argument that Mr. Kidder's reliance on the Orbital Settlement is improper, insofar as it fails to identify the accused products. Bosch argues Mr. Kidder's methodology is proper, because he identified the accused products through other means.[1] *Id.* Bosch argues such identification comports with prior caselaw, where courts evaluated "whether an expert sufficiently explained how to convert a lump-sum agreement into a running royalty," because Mr. Kidder utilized his expertise to convert the outside information to a unit sales figure. *Id.*

The Court is not persuaded that Mr. Kidder's report insufficiently linked the Orbital Settlement with its per-unit royalty rate. While the Orbital Settlement did not contain any instruction to calculate such a rate, Mr. Kidder relied on external information, such as Bosch's 2009 sales, to calculate his final sales figure. Therefore, these sales figures sufficiently account for Mr. Kidder's deviation from the Orbital Settlement. Furthermore, any challenges to Mr. Kidder's "economic comparability" analysis speak to his report's ultimate reliability, not admissibility, and are "best addressed by cross examination and not by exclusion." *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1374 (Fed. Cir. 2020). Therefore, Westport's challenge thus fails.

---

[1] "(1) Orbital itself identified the accused products through the litigation and (2) the agreement is not limited to accused injectors, but covers any injectors." Dkt. No. 209 at 3.

>    *2.    Comparability - Time*

Westport argues the Orbital Settlement is not comparable, because it was entered in 2020, after hypothetical negotiations were to take place, and because the larger number of parties to the Orbital Agreement renders it dramatically different. Dkt. No. 185 at 7-8.

Bosch's brief argues that such incongruities are permissible, so long as the expert accounts for them. Dkt. No. 209 at 6. Bosch identifies portions of Mr. Kidder's report that address these differences. *Id.*

The Court is not persuaded that Westport has demonstrated the Orbital Settlement does not contain data points that will be helpful to the jury. Westport's primary authority, *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, did not find that such a time difference rendered a past agreement inadmissible. 694 F.3d 1312, 1332 (Fed. Cir. 2012). Instead, *ActiveVideo* found that the trial court did not abuse its discretion. This Court has held proper such considering licenses with similar differences so long as they are properly accounted for. *See Headwater Rsch. LLC v. Samsung Elecs. Co.*, 2024 WL 4730474, at *2 (E.D. Tex. Nov. 8, 2024). Here, Mr. Kidder addressed the differences between 2005, the time of the hypothetical negotiations and the Orbital Settlement's 2020 negotiations. Like *Headwater*, any dispute to whether Mr. Kidder properly considered the Orbital Settlement is best considered on cross-examination. Therefore, the Court denies Westport's Motion as to the Orbital Settlement.

## B.    Profit-Damages Cap

Westport argues that Mr. Kidder improperly "caps" damages at Bosch's profitability on sales of the accused injectors. Dkt. No. 185 at 9. Westport argues that Mr. Kidder

5

improperly relies solely on Bosch's profits, while ignoring the business relationship between Bosch and Robert Bosch GmbH, which effectively set Bosch's profit levels. *Id.* at 9-10. Westport concludes that this initial error renders this section wholly unreliable. *Id.*

In its response, Bosch argues that Mr. Kidder's methodology goes to the weight of the evidence, rather than its admissibility. Dkt. No. 209 at 7. Bosch argues that Mr. Kidder never used profits as a cap but instead used Bosch's profits as an input to his reasonable royalty calculation. *Id.* Bosch adds that no caselaw supports exclusion when profits are merely an input. Instead, Bosch argues that Westport's caselaw merely states that an infringer's profits cannot be the "absolute cap" for damages. *Id.* at 8.

The Court is of the opinion that because Bosch's profit figures are used for Mr. Kidder's *Georgia Pacific* factors analysis, they are admissible. Mr. Kidder's analysis does not *cap* damages at profitability. Instead, Mr. Kidder uses Bosch's profits to calculate damages. His analysis considers other factors, including sales and prior settlement information, and is not legally impermissible. Therefore, any dispute speaks to the weight Mr. Kidder's report should be given, rather than whether it should be admitted. Therefore, the Court denies Westport's Motion as to Mr. Kidder's use of Bosch's profit figures.

## C.    Late Disclosed Discovery

### 1.    Financial Information

Westport seeks to strike BOSCH_WP_0092027-37, "documents purporting to show Bosch's target profit margins from 2015 to 2020," because they were disclosed after the close of fact discovery. Dkt. No. 185 at 11. Westport argues this late disclosed evidence is not important, because Bosch can rely on profit figures from other documents properly

produced in discovery. *Id.* Westport argues this late disclosure prejudices them, because its damages expert could not properly analyze this document.

In its response, Bosch argues this document was timely produced in response to a motion to compel. Dkt. No. 209 at 10. Bosch adds this document complied with Westport's "evolved position," and that any timeliness objections should have been raised upon production. *Id.* Finally, Bosch argues that all four *Primrose* factors favor inclusion, and that if Westport's damages expert can testify to Robert Bosch GmbH's target profits, expert evidence on Bosch's target profits should be admitted. *Id.* at 11.

The fact that these documents were produced within the time ordered at the hearing on the motion to compel does not render them timely produced. They were produced after the deadline for completion of discovery and after initial expert reports. There is no suggestion that these documents were not readily available to Bosch years earlier. Rule 37(c) is straightforward: "if a party fails to provide information … the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial … ." Therefore, the motion to strike reliance by Mr. Kidder on BOSCH_WP_0092027-37 is granted.

### 2.   *Non-Infringing Alternatives (NIAs)*

In its Motion, Westport seeks to strike NIA opinions in Mr. Kidder's report that rely on portions of Dr. Klopp's report that they sought to strike. Dkt. No. 185 at 13. Because the Court denied Westport's Motion with respect to Dr. Klopp's NIA analysis, the Court likewise denies Westport's motion to strike these portions of Mr. Kidder's report.

### 3.    Non-Amplified Injectors

Westport argues that the portions of Mr. Kidder's report that distinguish between amplified and non-amplified injectors should be stricken, because Bosch failed to properly disclose this theory during discovery. *Id.* at 14. Westport argues this late-disclosed theory, unexplained by Bosch, is not important, because it only constitutes 8% of the alleged damages. *Id.* Westport adds this late disclosure was not "justified or harmless," and "prejudices" Westport because it alleges new differences that Westport is unable to rebut *Id.* at 14-15.

In its response, Bosch points to its second interrogatory responses, which identify the amplified and non-amplified injectors. Dkt. No. 209 at 12-13. Bosch argues that Westport's brief fails to acknowledge this second response, because it only cites Bosch's first interrogatory responses. *Id.* Bosch adds that this supplemental interrogatory response sought to correct a prior misunderstanding that all the accused CRI3 Injectors featured amplification. *Id.*

Because Bosch's second interrogatory responses came before the close of discovery, the Court finds that Bosch properly disclosed the non-amplified injectors. Therefore, the portions of Mr. Kidder's report that discuss non-amplified injectors should not be stricken.

## IV.    CONCLUSION

For the reasons discussed below, the motion to strike is **GRANTED** as to the identified late-produced financial information, and is otherwise **DENIED**.

**SIGNED** this 2nd day of March, 2026.

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

8